Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Frank A. Oswald
Lara R. Sheikh
James J. Lee

*Proposed Bankruptcy Counsel for
the Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                        :
In re:                                  :       Chapter 11
                                        :       Case No. 09-14398 (AJG)
CABRINI MEDICAL CENTER,                 :
                                        :
                        Debtor.         :
                                        :
-----------------------------------------------------------x

**DEBTOR'S APPLICATION FOR AN ORDER AUTHORIZING
THE RETENTION OF GRUBB & ELLIS NEW YORK, INC. AS
REAL ESTATE BROKER PURSUANT TO BANKRUPTCY CODE
SECTIONS 327(a) AND 328(a) AND BANKRUPTCY RULE 2014(a)**

Cabrini Medical Center, as a debtor and debtor in possession ("Cabrini" or the "Debtor"), by and through its undersigned counsel, respectfully represent:

**SUMMARY OF RELIEF REQUESTED**

1.  By this application (the " Application"), the Debtor seeks entry of an order authorizing the Debtor to retain Grubb & Ellis New York, Inc. (the "Broker ") as its exclusive real estate broker in this Chapter 11 case, as more fully described in the Engagement Agreement (as defined below), pursuant to Sections 327(a) and 328(a) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules "), and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules ") to assist

the Debtor with the sale, lease or other disposition of the certain parcels of Real Estate (the "Real Estate").

2. The terms and conditions of the Broker's proposed retention by the Debtor are set forth in that certain engagement agreement between the Broker and the Debtor, dated June 30, 2009 (the "Engagement Agreement")[1], a copy of which is annexed hereto as Exhibit "2". In support of this Application, the Debtor relies upon the declaration of David Arena, the president of the Broker, executed on July 7, 2009 (the "Arena Declaration "), a copy of which is annexed hereto as Exhibit "3".

3. This Court has jurisdiction over this Application under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The relief sought in this Application is based upon Section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## **BACKGROUND**[2]

5. On the date hereof, (the "Petition Date"), Cabrini filed a voluntary petition for reorganization under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

6. The Debtor remains in possession of its assets and continues to manage its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or creditors' committee has been appointed in this case.

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings given to them in the Engagement Agreement.

[2] A description of the Debtor's business and the reasons for filing this Chapter 11 case are set forth in the Affidavit of Diane Kniejski Pursuant to Local Bankruptcy Rule 1007-2 In Support of Chapter 11 Petition (the "Kniejski Affidavit") filed on July 9, 2009.

## BASIS FOR RELIEF REQUESTED

7. Having ceased all healthcare operations, the Debtor must continue winding down its affairs and determine how best to maximize the value of its remaining assets. Therefore, the Debtor has determined in its business judgment, that it requires the assistance of an experienced real estate broker to assist with the marketing and disposition of the Real Estate. To that end, the Debtor solicited proposals from a number of real estate brokerage firms. After review of the proposals received from such firms and meeting with the representatives thereof, the Debtor determined that the Broker is best suited to assist the Debtor with respect to disposition of the Real Estate due to the Broker's experience, reputation and competitive commission structure.

8. The Broker is a full-service real estate advisory company with substantial expertise in the disposition of health-care related real estate. The Broker has served as a real estate broker in procuring the sale of many such assets.

9. For the reasons set forth herein, the Debtor submits that the Broker is well-qualified to act as its exclusive real estate broker in this Chapter 11 case. The Debtor desires to use the Broker's professional services, and the Broker has agreed to perform such services, pursuant to the terms of the Engagement Agreement and consistent with Section 328 of the Bankruptcy Code. Given the Debtor's real estate-related needs and the Broker's extensive experience with the disposition of health-care related real estate, retaining the Broker will serve the best interests of the Debtor, its creditors and estate, and all parties in interest by enhancing the Debtor's ability to obtain or preserve optimal values for the Real Estate.

A. **Scope of Services**

10. In addition to the scope of services outlined below, the Broker was engaged in May 2009 by the Missionary Sisters of the Sacred Heart on behalf of Cabrini to appraise the Real Estate, which included a physical and financial analysis of the Real Estate to determine its market value based upon the highest and best use in the current market and economic environment. The Broker was paid $22,000 for these services.

11. In the instant matter, the Broker will perform services for the Debtor, upon the request of the Debtor, as set forth in the Engagement Agreement, including, but not limited to, the following:[3]

    (a)    marketing the Real Estate using such advertising, canvassing, solicitation of outside brokers and other promotional and marketing activities as agreed upon in consultation with the Debtor;

    (b)    providing assistance with negotiations regarding any potential transactions involving the Real Estate;

    (c)    analyzing and making recommendations regarding offers for transactions involving the Real Estate; and

    (d)    assisting with consummation of any transactions involving the Real Estate.

12. The Broker's real estate expertise, in particular, its understanding of health-care related real estate, will allow the Debtor to manage more efficiently any transactions relating to the Real Estate.

B. **Proposed Compensation**

13. Section 328(a) of the Bankruptcy Code provides that a debtor "with the court's approval, may employ or authorize the employment of a professional person

---

[3] The description of the services listed herein is a summary. To the extent that this Application and the terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement shall control.

under section 327... on any reasonable terms and conditions of employment . . . ." 11 U.S.C. § 328(a).

14. As recognized by numerous courts, Congress intended Section 328(a) to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to review if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." *See Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862-63 (5th Cir. 1997); *Henry A. Leonard & Co. v. United States Trustee (In re River Foal, Inc.)*, 161 B.R. 568, 569 (S.D.N.Y. 1993).

15. The Debtor requests approval for the Broker to be compensated pursuant to the Engagement Agreement. The Engagement Agreement provides that if the Real Estate is sold, net leased or otherwise transferred, the Debtor will pay the Broker for services rendered in the following manner:

> (a) (i) For sale price up to and including $65,000,000, a fee of one and one-quarter percent (1.25%);
>
> (ii) for sale price $65,000,000 - $95,000,000, a fee of one and one-half percent (1.5%); and
>
> (iii) for sale price greater than $95,000,000, a fee of one and three-quarters percent (1.75%);
>
> (b) Three-quarters of one percent (0.75%) of the sale price if a contract for the Real Estate is entered into with St. Vincent Catholic Medical Center during the first sixty (60) days of the Broker's engagement. If a contract of sale is entered with St. Vincent Catholic Medical Center after the first 60 days of the Broker's engagement, the fee structure described in (a)(i) – (iii) above shall apply;
>
> (c) $100,000 if the Real Estate is sold to a secured creditor; and
>
> (d) In the event the Real Estate is leased, the commission shall be two percent (2%) of the capitalized value of the average

rent for the first twenty-five (25) years of the net lease, at a capitalization rate shall of eight percent (8%).

16. The Debtor respectfully submits that, inasmuch as the Broker's compensation is results-oriented and directly related to benefits received by the Debtor's estate in the sale transaction, requiring the Broker to file periodic fee applications pursuant to Sections 330 and 331 of the Bankruptcy Code and in compliance with Bankruptcy Rule 2016 and Local Rule 2016-1 is unnecessary. The Broker will be employed by the Debtor to perform highly-specialized tasks. The Broker will not be compensated based upon time and effort expended. Instead, the Broker will be compensated based upon percentages of the proceeds of any transactions relating to the Real Estate. Given the transactional nature of the Broker's engagement and the percentage-based fee structure, the Debtor submits that recording and submission of detailed time entries for services rendered in these cases is unnecessary and would be unduly burdensome to the Broker. Accordingly, the Debtor requests that such requirements be waived. The Broker will, however, file a final fee application, in accordance with applicable Bankruptcy Rules, Local Rules and any orders entered by the Court, describing the services performed in connection herewith, subject to review by the United States Trustee.

17. The retention of real estate advisors pursuant to the standard of review in Section 328(a) has been approved in other cases in this District and others. *See, e.g.*, *In re The Brooklyn Hospital Center, et al.*, No. 05-26990 (Bankr. E.D.N.Y. January 5, 2007) (CEC); *In re Harrow Stores, Inc.*, No. 06-72860 (Bankr. E.D.N.Y. December 15, 2006) (DTE); *In re TSIC, Inc., f/k/a Sharper Image Corporation*, No. 08-10322 (Bankr. D. Del. July 28, 2008) (KG).

C. **The Broker's Disinterestedness**

18. Section 327(a) of the Bankruptcy Code provides:

> [T]he trustee, with the court's approval, may employ one or more … appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

19. To the best of the Debtors' knowledge, and based on the Arena Declaration, (i) the Broker is a "disinterested person," as such term is defined in the Bankruptcy Code, and holds no interest adverse to the Debtor and its estate, and (ii) the Broker has no connection to the Debtor, its significant creditors, any other party in interest, its respective attorneys, accountants, or other advisors, or the United States Trustee or any person employed in the office thereof, except as may otherwise be set forth in the Arena Declaration.

20. Other than as set forth in the Arena Declaration and to the best of the Debtor's knowledge, information and belief, the Broker does not represent or hold any interest adverse to the Debtor's estate or its creditors in the matters upon which the Broker is to be engaged by the Debtor. The Broker is not owed any sums by the Debtor as of the Petition Date, and does not hold a claim against the Debtor's estate. The Debtor has been informed that the Broker will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and the Broker agrees that if it discovers any additional information that it determines requires disclosure, the Broker will supplement its disclosure to the Court promptly.

21. The Debtor also has been advised that the Broker has not agreed to share with any person or firm, other than its own members and employees, the

7

compensation to be paid for professional services rendered in connection with these cases.

22. The Debtor's retention of the Broker pursuant to the terms and conditions set forth herein is necessary and in the best interests of the Debtor, its creditors and its estate. Based on the foregoing, the Debtor requests that the Court enter an order, substantially in the form annexed hereto as Exhibit "1", approving the Broker's retention as exclusive real estate broker to the Debtor pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and approving the terms of the Engagement Agreement.

**NOTICE**

23. As of the filing of this Application, no trustee, examiner or creditors' committee has been appointed in this Chapter 11 case. Notice of this Application has been given to (i) the Debtor's twenty largest unsecured creditors; (ii) the Debtor's five largest pre-petition secured creditors or any agent therefor; (iii) the Debtor's proposed post-petition secured lender; (iv) the Office of the United States Attorney; (v) the Office of New York State Attorney General; (vi) the New York State Department of Health; (vii) the Internal Revenue Service; and (viii) the United States Trustee for this District. The Debtor submits that no other notice need be given.

**NO PRIOR REQUEST**

24. No prior Application for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, the Debtor respectfully requests that the Court grant the relief requested herein and grant such other and further relief as is just and proper.

Dated: New York, New York
July 10, 2009

    TOGUT, SEGAL & SEGAL LLP
    Proposed Bankruptcy Counsel for the
     Debtor and Debtor in Possession
    By:

    /s/ Frank A. Oswald
    FRANK A. OSWALD
    A Member of the Firm
    One Penn Plaza, Suite 3335
    New York, New York 10119
    (212) 594-5000