# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CABRINI MEDICAL CENTER, | : | Case No. 09-14398 (AJG) |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |

### INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 364(c) AND 364(d); (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; (IV) GRANTING ADEQUATE PROTECTION TO THE SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364; AND (V) SCHEDULING A FINAL HEARING

Upon the motion (the "Motion"), dated July 9, 2009, of Cabrini Medical Center, as debtor and debtor in possession in the above-captioned bankruptcy case (the "Debtor"), (a) seeking this Court's authorization (i) pursuant to sections 364(c) and 364(d) of Title 11, United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), to obtain up to $5,000,000 of postpetition financing (the "DIP Financing") on the terms and conditions set forth in the Debtor-in-Possession Loan Agreement, dated as of July 29, 2009 (the "DIP Agreement") between the Debtor, on the one hand, and Missionary Sisters of the Sacred Heart, a not-for-profit corporation organized under the laws of the State of Illinois ("MSSH-ILL" or "Lender"), on the other hand; (ii) pursuant to Bankruptcy Code sections 361(a), 363(c) and 364(d)(1), permitting the Debtor to use Cash Collateral (as defined under Bankruptcy Code section 363); (iii) pursuant to Bankruptcy Code sections 364(c) and (d), to grant a first priority, valid, perfected, priming DIP Lien in the Postpetition Collateral (as hereinafter defined) and a superpriority administrative claim, subject only to the Carveout, as security for the Debtor's obligations to Lender in respect of the DIP Financing; and (iv) pursuant to sections 361, 362, 363 and 364 of the Bankruptcy

Code, to provide adequate protection to the New York City Water Board (the "NYC Water Board"), Sun Life Assurance Company of Canada, a Canadian corporation ("Sun Life"), East Nineteen Street LLC, a New York limited liability company ("East 19th Street"), Missionary Sisters of the Sacred Heart, a not-for-profit corporation organized under the laws of the State of New York ("MSSH-NY"), 1199 SEIU National Benefits Fund ("1199") and the Lender (collectively the "Secured Parties") with respect to any diminution in the value of the Secured Parties' interests in the Prepetition Collateral (as defined below), including Cash Collateral, and for the priming of the Lender's liens on the Prepetition Collateral by the granting of the DIP Liens as provided herein; and due and sufficient notice of the Motion and the hearing thereon ( the "Interim Hearing") having been given; and the Interim Hearing on the Motion having been held before this Court on July 29, 2009; and upon the entire record made by the Debtor at the Interim Hearing, and this Court having found good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND THAT:**

A. On July 9, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Chapter 11 Case"). This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of this Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). An official committee of unsecured creditors has been appointed in the Debtor's Chapter 11 case (the "Committee").

B. Among the property and assets owned by the Debtor is certain real property extending through the block from East 19th Street to East 20th Street, between Second and Third Avenues in the City of New York designated on the Tax Maps as Block 900, Lots 9, 18, 30 and

35 (the "<u>Real Property</u>", with the buildings situate on the Real Property known as, and referred to as the "<u>A, B, C, D and E Buildings</u>" respectively.)

C.        Pursuant to the various loan agreements between the Debtor and the Lender, as evidenced by those documents listed in **<u>Exhibit "A"</u>** annexed hereto (the "<u>Lender Loan Agreements</u>"), the Lender made loans to the Debtor. All such loans by Lender to the Debtor under, or in connection with, the Lender Loan Agreements, and all collateral and ancillary documentation executed in connection therewith (collectively, the "<u>Lender Loan Documents</u>"), are hereinafter referred to as the "<u>Lender Prepetition Obligations</u>."

D.        Pursuant to the various loan agreements between the Debtor and MSSH-NY, as evidenced by those documents listed in **<u>Exhibit "B"</u>** annexed hereto (the "<u>MSSH-NY Loan Agreements</u>"), MSSH-NY made loans to the Debtor. All such loans by MSSH-NY to Debtor under, or in connection with, the MSSH-NY Loan Agreements, and all collateral and ancillary documentation executed in connection therewith (collectively, the "<u>MSSH-NY Loan Documents</u>"), are hereinafter referred to as the "<u>MSSH-NY Prepetition Obligations</u>."

E.        Pursuant to the various loan agreements between the Debtor and Sun Life, as evidenced by those documents listed in **<u>Exhibit "C"</u>** annexed hereto (the "<u>Sun Life Loan Agreements</u>"), Sun Life made loans to the Debtor. All such loans by the Debtor to Sun Life under, or in connection with, the Sun Life Loan Agreements, and all collateral and ancillary documentation executed in connection therewith (collectively, the "<u>Sun Life Loan Documents</u>"), are hereinafter referred to as the "<u>Sun Life Prepetition Obligations</u>".

F.        Pursuant to the various loan agreements between the Debtor and East 19th Street, as evidenced by those documents listed in **<u>Exhibit "D"</u>** annexed hereto (the "<u>East 19th Street Loan Agreements</u>"), East 19th Street made loans to the Debtor. All such loans to the Debtor by

East 19th Street under, or in connection with, the East 19th Street Loan Agreements, and all collateral and ancillary documentation executed in connection therewith (collectively, the "East 19th Street Loan Documents", are hereinafter referred to as the "East 19th Street Prepetition Obligations").

G.      Without prejudice to the rights of any other party (but subject to the limitations thereon described below in decretal paragraph 13), the Debtor acknowledges that pursuant to that certain Affidavit of Confession of Judgment, dated November 30, 2006, and related Mortgage, dated December 4, 2006, the Debtor granted a certain mortgage lien in real property to 1199 SEIU National Benefits Fund ("1199") as evidenced by those documents listed in **Exhibit "E"** annexed hereto (the "1199 Mortgage Agreement", and together with the Lender Loan Documents, the MSSH-NY Loan Documents, and the Sun Life Loan Documents referred to as the "Prepetition Loan Documents"), and together with the Lender Prepetition Obligations, the MSSH-NY Prepetition Obligations, the Sun Life Prepetition Obligations and the East 19th Street Prepetiton Obligations referred to as the "Secured Prepetition Obligations."

H.      Without prejudice to the rights of any other party, the Debtor acknowledges that pursuant to a Pledge and Assignment Agreement (the "IDB Agreement"), dated as of October 7, 2007, by and between the Debtor and Israel Discount Bank of New York ("IDB"), the Debtor pledged to IDB certain collateral (the "IDB Collateral") comprised of the Debtor's interest in the HANYS Member Hospitals Self-Insurance Trust that was created under a trust agreement dated November 12, 1985, and the interest reserve account maintained by the Debtor at IDB under the IDB Agreement.

I.      Without prejudice to the rights of any other party, the Debtor acknowledges that pursuant to a Settlement Agreement, dated as of August 4, 2008, by and between the Debtor and

the NYC Water Board, and as otherwise provided by applicable statute and administrative regulation, the NYC Water Board holds a first lien and security interest on the Debtor's Real Property as security for unpaid water charges in the approximate amount of $2.223 million (the "NYC Water Board Lien").

J.        Without prejudice to the rights of any other party (but subject to the limitations thereon described below in decretal paragraph 13), the Debtor acknowledges and agrees that, in accordance with the terms of the Lender Loan Documents and the MSSH-NY Loan Documents, the Debtor is truly and justly indebted to the Lender and MSSH-NY, without defense, counterclaim or offset of any kind, and that as of the Petition Date the Debtor was liable to the Lender and MSSH-NY in respect of loans made pursuant to the Lender Loan Documents and MSSH-NY Loan Documents:

a.  To Lender in the aggregate principal amount of approximately $25,734,375, plus approximately $7,299,103 on account of accrued and unpaid interest thereon; and

b.  To MSSH-NY in the aggregate principal amount of approximately $18,080,653, plus approximately $659,161 on account of accrued and unpaid interest thereon.

K.        Without prejudice to the rights of any other party (but subject to the limitations thereon described below in decretal paragraph 13), the Debtor acknowledges and agrees that, in accordance with the terms of the Sun Life Loan Documents, the Debtor is truly and justly indebted to Sun Life in the approximate principal amount of $35,146,016 (inclusive of the prepayment of debt service in accordance with the Sun Life Loan Documents), without defense, counterclaim or offset of any kind, and that as of the Petition Date the Debtor was liable to Sun Life in respect of loans made pursuant to the Sun Life Loan Documents, and that, except for the NYC Water Board Lien, the liens and security interests granted by the Debtor pursuant to the Sun Life Loan Documents to secure the Sun Life Prepetition Obligations (the "Sun Life Liens")

5

are senior in right and priority to the liens and security interests granted by the Debtor to each of the other Secured Parties to secure the Secured Prepetition Obligations.

L.       Without prejudice to the rights of any other party (but subject to the limitations thereon described below in decretal paragraph 13), the Debtor acknowledges and agrees that it will not, and hereby waives any right to, challenge the validity, perfection, enforceability, or priority of the liens and security interests granted by the Debtor pursuant to the Lender Loan Documents, the MSSH-NY Loan Documents and the Sun Life Loan Documents to secure the Lender Prepetition Obligations, the MSSH-NY Prepetition Obligations, and the Sun Life Prepetition Obligations, respectively, upon the Debtor's assets and property, and other tangible and intangible personal property and the proceeds thereof (including any setoff rights described in the Loan Documents and arising by operation of law, collectively, inclusive of Cash Collateral, the "Prepetition Collateral"). The Debtor further acknowledges and agrees that the Secured Parties are entitled, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, to adequate protection of their interest in the Prepetition Collateral to the extent of the diminution in value thereof resulting from the priming of the Lender's liens on the Prepetition Collateral, including Cash Collateral, by the granting of the DIP Liens.

M.      Without prejudice to the rights of any other party (but subject to the limitations thereon described below in decretal paragraph 13), the Debtor acknowledges and agrees that all payments, if any, made to or for the benefit of the Lender until the entry of this Order (whether prior or subsequent to the Petition Date) constituted Cash Collateral or proceeds of the Lender's Prepetition Collateral and are not subject to any avoidance, disgorgement, recoupment or other action under Chapter 5 of the Bankruptcy Code.

N.      Prior to the Petition Date, the Debtor, in consultation with its financial and legal advisors, determined to pursue the sale and/or lease of substantially all of the Debtor's assets (the "Proposed Transaction").  The assets to be sold or leased pursuant to the Proposed Transaction constitute Prepetition Collateral.  In order to permit the maintenance and proper preservation of the Debtor's assets, and to satisfy other working capital and operations, financial and general corporate needs, and facilitate the Proposed Transaction, the Debtor requires the DIP Financing and the use of Cash Collateral.  The Lender and other Secured Parties have consented to the DIP Financing and the use of Cash Collateral to pay administrative expense claims incurred in the ordinary course of the Debtor's businesses in accordance with the Budget (defined below) through the earlier of the (i) date of consummation of the Proposed Transaction and (ii) the Termination Date (as defined below).

O.      The Lender and the Debtor have negotiated at arm's length and in good faith regarding the DIP Financing in order to fund the continued operation of the Debtor's businesses pending consummation of the Proposed Transaction.  The Debtor is unable to obtain sufficient financing from sources other than the Lender on terms more favorable than under the DIP Agreement.  The Debtor has been unable to obtain sufficient unsecured credit solely under Bankruptcy Code section 503(b)(1) as an administrative expense.  New credit is unavailable to the Debtor without providing the Lender the DIP Liens and the DIP Superpriority Claim.

P.      Notice of the relief requested in the Motion and the hearing thereon has been given to (i) the Office of the United States Trustee, (ii) the Secured Parties; (iii) those certain parties holding judgment liens and mechanics liens recorded of record against the Debtor's real property (collectively, the "Judgment Creditors"); (iv) the Committee; and (v) the Debtor's 20 largest unsecured creditors as set forth in the consolidated list accompanying the Debtor's

petitions. In view of the relief requested, such notice of the Interim Hearing complies with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b), and the local rules of this District.

Q.    Based on the record presented to this Court at the Interim Hearing, good cause has been shown for entry of this Order, and the terms of the DIP Financing appear to be fair and reasonable, and to reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

R.    Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1.    The Motion is granted as qualified by the terms of this Order. This Order shall control in the event of any inconsistency between the terms of the DIP Agreement, incorporated by reference herein and annexed hereto as Exhibit B, and the other terms of this Order.

2.    In respect of the DIP Agreement, the Debtor is hereby authorized and directed to pay to the Lender any and all fees, expenses and other charges set forth in the DIP Agreement; provided, that any such fees stated therein to be payable on a quarterly basis shall be paid on the last day of each calendar month after the Petition Date. In addition, the Debtor is hereby authorized and directed to indemnify and hold harmless the Lender from and against any and all obligations, losses, damages, costs and expenses of any kind or nature whatsoever with respect to the DIP Financing, except to the extent any such liabilities, losses, damages, costs and expenses are found by a final and nonappealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Lender.

3.      For all of the Debtor's obligations and indebtedness in respect of the DIP Financing, the Lender is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed administrative expense claim having priority over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code including, but not limited to, sections 326, 328, 330, 331, 503(b), 507(a), 507(b) and 726 of the Bankruptcy Code, subject only to the Carveout (the "DIP Superpriority Claim"), but excluding however causes of action arising under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code. No other claim having a priority superior to or pari passu with the DIP Superpriority Claim shall be granted while any portion of the DIP Financing remains outstanding or available to the Debtor.

4.      As security for the Debtor's obligations and indebtedness in respect of the DIP Financing, the Lender is hereby granted, in each case subject to the Carveout, pursuant to sections 364(c)(2) and (c)(3) and 364(d)(1) of the Bankruptcy Code, (x) a first priority, senior, priming, perfected lien upon all of the right, title and interest of the Debtor in, to and under: (i) the C, D and E Buildings and all rents, proceeds and profits thereof, subject only to the NYC Water Board Lien therein; and (ii) all present and after-acquired personal property of the Debtor of any nature whatsoever including, without limitation, all cash contained in any account of the Debtor, and the proceeds of all causes of action, but excluding however causes of action arising under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code and the proceeds thereof (collectively, with the proceeds and products of any and all of the foregoing, the "Postpetition Collateral"); and (y) a senior priority perfected lien upon all of the right, title and interest of the Debtor in and to the A and B Buildings, subject only to the NYC Water Board Lien and the Sun Life Liens, such lien being a priming lien senior in right and priority to the liens and security interests granted by the Debtor to all other Secured Parties to secure the Secured Prepetition

Obligations ( the "DIP Liens").  Subject to the Carveout, and except as otherwise expressly

provided above, the DIP Liens shall be prior and senior to all liens and encumbrances of all other

Secured Creditors and Judgment Creditors in and to such Postpetition Collateral granted or

arising after the Petition Date.  Notwithstanding anything to the contrary herein if IDB has a

perfected lien on the IDB Collateral then the Prepetition Collateral and the Postpetition

Collateral shall not include the IDB Collateral until such time as the Debtor has satisfied its

obligations to IDB under the IDB Agreement.

5.      Subject to decretal paragraph 10 below, the Debtor is hereby authorized to use the

DIP Financing in an amount not to exceed $2.3 million plus Cash Collateral for the payment of

the costs and expenses solely associated with the operation of the Debtor's businesses and the

conduct of the Chapter 11 Case, to the extent set forth in the budget prepared by the Debtor

annexed hereto as **Exhibit F** (the "Budget") and subject to a permitted weekly variance of up to

ten percent (10%) with respect to any one line item, provided the overall weekly disbursements

do not exceed one hundred and five percent (105%) of the budgeted expenses of the Debtor, as

reflected in the Budget (the "Permitted Weekly Variance").

6.      As adequate protection for, and to the extent of, any diminution in the value of the

Secured Parties' interests in the Prepetition Collateral resulting from the priming of the Lender's

security interests in and liens on the Prepetition Collateral by the granting of the DIP Liens and

any use of Cash Collateral (the amount of any such diminution being referred to hereinafter as

the "Adequate Protection Obligations"):

    a. The Secured Parties are hereby granted valid and perfected, replacement
security interests in, and liens (the "Replacement Liens") on the Postpetition
Collateral to the extent of the validity of their prepetition liens on the
Prepetition Collateral and in the same order of priority as existed on the
Petition Date (except as modified by this Order).

b. As further adequate protection hereunder, the Debtor shall provide to MSSH-NY, monthly payments in the amounts set forth in the Budget substantially equal to the interest payments due under certain of the MSSH-NY Loan Agreements, which payments shall be subject to being applied to the pre-petition principal amount owed to MSSH-NY or disgorgement if it turns out that MSSH-NY is not over-secured.

c. As further adequate protection hereunder, the Debtor shall provide to the Secured Parties, reporting as reasonably requested by the Secured Parties (the "Reporting Requirements"), each in form satisfactory to the Lender, including: commencing on Friday, August 7, 2009, and every Friday thereafter, (A) eight-week rolling cash flow projections for the Debtor showing on a weekly basis for the current week and the succeeding seven weeks (x) beginning and ending liquidity on a consolidated basis, (y) weekly receipts by significant category and (z) weekly disbursements by significant category, and (B) a consolidated comparison of actual weekly cash flows for the week preceding the week in which such comparison is being delivered to the projected cash flows for such week as shown in the most recent eight-week rolling cash flow projections delivered to the Lender. In addition, upon prior reasonable notice to the Debtor, the Debtor shall permit representatives, agents and/ or employees of the Lender to have reasonable access to its premises and non privileged records during normal business hours (without unreasonable interference with the proper operation of the Debtor's businesses) and shall cooperate, consult with and provide to such persons all such non-privileged information as they may reasonably request from time to time.

d. In consideration of the DIP Financing, the consent of MSSH-NY and Sun Life to being primed with respect to the C, D, and E Buildings and the consent of MSSH-NY to being primed with respect to the A and B Buildings, the Debtor is authorized and directed, after 20 days of the submission of invoices therefor to the Debtor, the United States Trustee and counsel to the Committee, if no objection is raised or later sustained to the payment of all or a portion thereof, to pay or reimburse all, or the non-objectionable portion of: (i) the Lender's reasonable fees, costs and charges incurred after July 1, 2009 (including, without limitation, the reasonable fees and out-of-pocket disbursements of respective counsel to the Lender) in connection with matters relating to the DIP Financing or the enforcement and protection of the rights and interests of the Lender in respect of the DIP Financing (the "Lender DIP Fees"), and (ii) the reasonable postpetition fees, costs and charges of Lender, MSSH-NY and Sun Life (including, without limitation, the reasonable fees and out-of-pocket disbursements of respective counsel to the Lender, MSSH-NY and Sun Life) in connection with matters relating to their respective Prepetition Obligations (the "Lender's Other Fees" "MSSH-NY Fees" or "Sun Life's Fees", as the case may be).  None of the fees, costs and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees, costs and

expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. Notwithstanding anything to the contrary herein contained, the maximum amount payable during the term of this Order to Sun Life on account of Sun Life's Fees shall not exceed $45,000. Any amount of Sun Life's Fee in excess of such amount shall be paid in accordance with Section 506(b) upon the closing of a Property Transaction upon five (05) days notice to the U.S. Trustee and the Committee. Any payment of Lender's Other Fees, MSSH-NY Fees, or Sun Life's Fees shall be subject to being applied to the pre-petition principal amount of the Prepetition Obligations owed to Lender, MSSH-NY or Sun Life or disgorgement if it turns out that Lender, MSSH-NY or Sun Life, as the case may be, is not over-secured with respect to their respective Prepetition Obligations.

Based upon the contemplated sale and/or lease of the Prepetition Collateral pursuant to the Proposed Transaction, and the consent of the Lender, MSSH-NY, Sun Life and other Secured Parties to the DIP Financing and use of Cash Collateral on an interim basis, the adequate protection provided herein is reasonable under the circumstances to protect the interests of the Lender, MSSH-NY, Sun Life and other Secured Parties for the interim period covered by this Order. The grant of adequate protection to the Lender pursuant hereto is without prejudice to the right of the Lender to seek modification of the grant of adequate protection provided hereby or to seek any other relief in the Chapter 11 Case, and without prejudice to the right of the Debtor or any other party in interest to contest any such modification or relief, as applicable.

7.      As used in this Order, "Carveout" means as of the Termination Date (a) the unpaid fees of the clerk of the Bankruptcy Court and of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and (b) and 31 U.S.C. § 3717 (the "Statutory Fees"), (b) the payment of allowed professional fees and disbursements (the "Professional Fees and Disbursements") incurred by the professionals retained by the Debtor or the Committee not to exceed $500,000 in the aggregate plus any accrued and unpaid Professional Fees and Disbursements arising prior to the Termination Date that are not in excess of the budgeted amounts for such professionals contained in the Budget for the period up to the Termination Date, (c) the costs and

administrative expenses not to exceed $25,000 in the aggregate that are permitted to be incurred by any chapter 7 trustee pursuant to an order of this Court following any conversion of any of the Chapter 11 Case pursuant to section 1112 of the Bankruptcy Code. So long as written notice of the occurrence of an Event of Default shall not have been delivered to the Debtor and such committee, or any such Event of Default shall have been waived by the Lender or cured, the Debtor shall be permitted to pay without reduction of the Carveout (x) the Statutory Fees and (y) the Professional Fees and Disbursements, as the same may be due and payable. Nothing herein shall be construed as a waiver of the right of the Lender to object to the allowance of any Professional Fees and Disbursements. The Carveout shall be senior to the DIP Liens and the Replacement Liens. Notwithstanding anything herein to the contrary, no Cash Collateral or any portion of the Carveout may be used to assert any claims or causes of action against the Lender, MSSH-NY or Sun Life or object to or contest in any manner, or raise any defenses to, the validity, perfection, priority, extent or enforceability of the Lender Prepetition Obligations, the MSSH-NY Prepetition Obligations, the Sun Life Prepetition Obligations or Replacement Liens granted herein, or to assert any claims or causes of action against the Lender or MSSH-NY, but Cash Collateral and the Carveout may be used for the Committee to investigate such matters. Other than the Carveout, the Debtor shall not assert a claim under section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Lender or Sun Life upon the Prepetition Collateral.

8.      Except as expressly set forth in this Order, the liens granted pursuant to this Order shall not be (i) subject to any lien that is avoided and preserved for the benefit of the Debtor's estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with

any other lien under sections 363 and 364 of the Bankruptcy Code. Subject to the Carveout and the DIP Superpriority Claim, no cost or expense of administration under sections 503(b) or 507(b) of the Bankruptcy Code or otherwise, including those resulting from the conversion of the Chapter 11 Case pursuant to section 1112 of the Bankruptcy Code, shall be senior to any section 507(b) claims of the Lender arising out of the Adequate Protection Obligations.

9.      The DIP Liens and the Replacement Liens granted pursuant to this Order shall constitute valid and duly perfected security interests and liens effective upon the date of this Order, and the Lender or other Secured Parties shall not be required to file or serve financing statements, notices of lien or similar instruments or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the DIP Liens and/or Replacement Liens shall in no way affect the validity, perfection or priority of such DIP Liens and/or Replacement Liens, provided, however, that the automatic stay is hereby modified, pursuant to section 362 of the Bankruptcy Code and Bankruptcy Rule 4001, to permit the Lender, in its sole discretion (a) to file financing statements, deeds of trust, mortgages or other similar documents to evidence its security interests under the DIP Financing and under the Final Order, and (b) to take other actions required or permitted by the DIP Loan Documents.

10.      As used in this Order, "Termination Date" means the earliest to occur of (i) February 28, 2010 (or such later date if the Lender and Sun Life consent, subject to Court approval), provided, however, that notwithstanding the preceding, the Debtor shall not be permitted, from and after November 9, 2009, to make any further borrowings under the DIP Agreement absent Lender's and Sun Life's consent, or (ii) upon five (5) business days' written notice to the Debtor (with a copy to the Committee and the United States Trustee) after the

occurrence and continuance of any of the following events (unless waived by the Lender,

"<u>Events of Default</u>") beyond any applicable grace period set forth below:

      a.  Failure of the Debtor to reimburse any drawing under any DIP Agreement, or failure of the Debtor to make any other payment to the Lender as and when required by the DIP Agreement or this Order, which failure is not cured within five (5) business days after written notice of such default has be received by the Debtor;

      b.  Failure of the Debtor to comply with any term of this Order or any other covenant or agreement specified in this Order, including any Reporting Requirements, and such failure shall continue unremedied for more than ten (10) business days;

      c.  A Default shall have occurred under the DIP Agreement or the Debtor fails to comply with any material term of the DIP Agreement or any other covenant or agreement specified in the DIP Agreement, and such failure shall continue unremedied for more than ten (10) business days;

      d.  The Chapter 11 Case shall be dismissed or converted to a chapter 7 case; or a chapter 11 trustee with plenary powers, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of the Debtor (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in any of the Chapter 11 Case;

      e.  The Debtor shall assume or reject any lease of an interest in the Real Property without the prior written consent of the Lender and Sun Life;

      f.  The Debtor shall not have obtained entry of an order of the Bankruptcy Court retaining a broker to market the Debtor's real property and related assets on terms reasonably acceptable to the Lender and Sun Life within 15 days of the appointment of the Committee.

      g.  The Debtor shall fail, within one (1) business day after the closing of the Proposed Transaction, to pay to the Lender on account of the Prepetition Obligations;

      h.  The Debtor's expenditures shall exceed those forecast in the Budget by more than the Permitted Weekly Variance during any weekly period;

      i.  This Court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of the Debtor which have an aggregate value in excess of $500,000;

j. An order shall be entered reversing, amending, supplementing, staying for a period in excess of three (3) days, vacating or otherwise modifying this Order without the consent of the Lender and Sun Life; and

k. Any judgment in excess of $250,000 as to any postpetition obligation not covered by insurance shall be rendered against the Debtor and the enforcement thereof shall not be stayed; or there shall be rendered against the Debtor a non-monetary judgment with respect to a postpetition event which has or could reasonably be expected to have a material adverse effect on the Proposed Transaction or the ability of the Debtor to perform its obligations under this Order.

The Debtor shall promptly provide notice to the Lender and Sun Life (with a copy to counsel for the Committee and the United States Trustee) of the occurrence of any Event of Default.

11.     On the Termination Date, upon five (5) business days' written notice to the Debtor (with a copy to counsel for the Committee and the United States Trustee) (i) the Adequate Protection Obligations shall become immediately due and payable, and (ii) the Lender may exercise the rights and remedies available under the Loan Documents, this Order or applicable law, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Postpetition Collateral (excluding, however, Buildings A and B) in order to: first, cash collateralize 100% of the face amount outstanding under the DIP Agreement; second, to fund a reserve to pay up to the full amount of the Carveout; and third, to pay the Secured Prepetition Obligations in the order of their priority.  The actions described in clause (ii) above may be taken only upon further order of this Court upon five (05) days notice and motion by Lender to the Court. In no event shall the Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral, the Postpetition Collateral or otherwise.

12.     The provisions of this Order and any actions taken pursuant hereto shall survive the Termination Date and entry of any order which may be entered (a) confirming any plan of reorganization or plan of liquidation in the Chapter 11 Case; (b) converting the Chapter 11 Case

to a chapter 7 case; or (c) dismissing the Chapter 11 Case. If an order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with section 349 of the Bankruptcy Code) that (a) the DIP Liens and the Replacement Liens shall continue in full force and effect and shall remain binding on all parties in interest notwithstanding such dismissal until the obligations secured thereby shall have been paid and satisfied in full and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the limited purposes of enforcing such DIP Liens and Replacement Liens. The provisions of this Order shall be binding upon and inure to the benefit of the Lender, MSSH-NY, Sun Life, the Debtor, and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Case as a legal representative of the Debtor or the Debtor's estate.

13.     The acknowledgments and agreements contained in paragraphs J, K, L and M shall be binding upon the Debtor in all circumstances, and shall be binding upon all other parties in interest, including without limitation, the Committee, unless (a) any party in interest including the Committee has properly filed, and the Committee is hereby granted standing and authority to file on behalf of the estate, and any party in interest can file on its own behalf, an adversary proceeding or contested matter challenging the validity, enforceability or priority of the Secured Prepetition Obligations or the Secured Parties' liens on the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action (including, but not limited to, equitable subordination or recharacterization of any Secured Prepetiton Obligation) against: (i) the Lender, MSSH-NY or Sun Life no later than the date that is 90 days after the entry of this Order; or (ii) any other Secured Parties no later than the date that is 120 days after the entry of this Order (the "Challenge Deadline"), and (b) this Court rules in favor of the plaintiff in any

such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is commenced by the Challenge Deadline, the Secured Prepetition Obligations shall constitute allowed claims, not subject to subordination or recharacterization and otherwise unavoidable, for all purposes in the Chapter 11 Case or any subsequent chapter 7 cases, the Secured Parties' liens on the Prepetition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination or recharacterization and otherwise shall be unavoidable, and the Secured Parties, the Secured Prepetition Obligations and the Secured Parties' liens on the Prepetition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estates, including without limitation, any successor thereto. If any such adversary proceeding or contested matter is timely commenced as of such date, the acknowledgements and agreements contained in paragraphs J, K, L and M shall nonetheless remain binding and preclusive (as provided in this paragraph) except to the extent that such acknowledgements and agreements were expressly challenged in such adversary proceeding or contested matter.

14.     Pursuant to section 364 of the Bankruptcy Code, the Secured Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Order.

15.     The Challenge Deadline may be extended as to one or more of the Secured Parties by the consent of the affected Secured Parties, or by Order of the Court upon a motion filed on or before the Challenge Deadline for cause shown. The Secured Parties and the Debtor shall reasonably cooperate with the Committee in its investigation of the challenges, claims and causes of action covered by the Challenge Deadline and shall promptly provide to the Committee the

documents listed in the exhibits to this Order, as well as copies of all recorded mortgages and other real estate and UCC filings related thereto.

16.     A final hearing (the "Final Hearing") on the Motion shall be held before this court on November 4, 2009 at 10:00 a.m., provided, however, that upon the consent of the Lender, the Secured Parties and the Committee, the parties may extend the term of the DIP Financing beyond October 31, 2009 through and including the Termination Date otherwise subject to terms herein contained without further Order of this Court.

Dated: July 30, 2009
       New York, New York

                                                  **s/Arthur J. Gonzalez**
                                                  Honorable Arthur J. Gonzalez
                                                  United States Bankruptcy Judge

1239845v.15

# EXHIBIT "A"

## LOAN AGREEMENTS SCHEDULE FOR

## MISSIONARY SISTERS OF THE

## SACRED HEART, ILLINOIS

1239845v.15

| DOCUMENT | DESCRIPTION | DATE |
|---|---|---|
| Restated Loan Agreement | Among the MSSH-IL, the MSSH-NY and CMC | January 1, 1983 |
| 1983 Substituted Note, Series 1 (Amount - $23,178,491) | By CMC to the MSSH-IL | January 1, 1983 |
| 1983 Substituted Note, Series 2 (Amount - $7,901,301) | By CMC to the MSSH-IL | January 1, 1983 |
| 1983 Release Agreement | Between CMC, MSSH-IL, Blue Cross Blue Shield of Greater New York, MSSH-NY and other relevant parties | November 9, 1983 |
| 1987 Substituted Note, Series 1 (Amount - $13,717,314) | By CMC to the MSSH-IL | January 1, 1987 |
| Agreement | Between MSSH-ILL, MSSH-NY and CMC | January 1, 1987 |
| Property Exchange and Loan Reduction Agreement | Among CDC, the MSSH-IL, and the MSSH-NY | December 31, 1994 |
| Modification Agreement | Among CDC, the MSSH-IL, and the MSSH-NY | December 31, 1994 |
| Second Restated Loan Agreement | Among the MSSH-IL, the MSSH-NY and CMC | December 31, 1994 |
| 1994 Substituted Note, Series 1 (Amount - $13,617,313) | By CMC to the MSSH-IL | December 31, 1994 |
| Indenture | Issued by Cabrini Development Council to MSSH-IL | December 1994 |
| Mortgage Note (Amount | $1,281,500) From Stuyvesant Polyclinic to the MSSH NY | April 1, 1982 |
| Mortgage Note (Amount - $1,281,500) | From Stuyvesant Polyclinic to the MSSH-ILL | December 5, 1984 |
| Indenture (Amount - $1,281,500) | From Stuyvesant Polyclinic to the MSSH-NY | April 1, 1982 |
| Subordinate Mortgage and Security Agreement | Between CMC and the MSSH-IL | July 27, 2005 |
| Intercreditor Agreement | Among the MSSH-ILL, the MSSH-NY and East Nineteenth Street LLC | July 28, 2008 |
| Secured Demand Note (Amount - $2,934,261) | Between Cabrini Medical Center and MSSH-IL | July 27, 2005 |
| Assignment | By CMC to MSSH-IL | September 23, 1985 |

1239845v.15

# EXHIBIT "B"

## LOAN AGREEMENTS SCHEDULE FOR

## MISSIONARY SISTERS OF THE

## SACRED HEART, NEW YORK

1239845v.15

| DOCUMENT | DESCRIPTION | DATE |
|---|---|---|
| Promissory Note (Amount - $19,200,000) | Consolidated, Amended and Restated by CMC to the MSSH-NY | August 19, 2004 |
| Intercreditor Agreement | Among the MSSH-ILL, the MSSH-NY and East Nineteenth Street LLC | July 28, 2008 |
| Subordinate Mortgage and Security Agreement | Between CMC and MSSH-NY | July 27, 2005 |
| Revolving Loan Note (Amount - $2,000,000) | By CMC to the MSSH-NY | April 20, 2006 |
| Revolving Loan Agreement | Between CMC and the MSSH-NY | June 30, 2006 |
| First Amendment to Revolving Loan Agreement | Between CMC and the MSSH-NY | September 22, 2006 |
| Promissory Note (Amount - $1,200,000) | From CMC to the MSSH-NY | January 31, 2007 |
| Amended Restate Revolving Loan Note (Amount - $3,000,000) | By CMC to the MSSH-NY | April 17, 2007 |
| Subordination Agreement | Between Sun Life Assurance Company of Canada, the MSSH-NY, and the MSSH-IL | August 8, 2008 |

1239845v.15

**EXHIBIT "C"**

**LOAN AGREEMENTs SCHEDULE FOR**

**SUN LIFE ASSURANCE COMPANY OF CANADA**

1239845v.15

| DOCUMENT | DESCRIPTION | LOAN NUMBER | DATE |
|---|---|---|---|
| Substitute Mortgage A | Transaction Documents – Buildings A & B | 716623 | August 8, 2008 |
| Substitute Note A | Transaction Documents – Buildings A & B | 716623 | August 8, 2008 |
| Assignment of Leases and Rents | Transaction Documents – Buildings A & B | 716623 | August 8, 2008 |
| Guaranty of Non-Recourse Carve-Outs | Transaction Documents – Buildings A & B | 716623 | August 8, 2008 |
| Environmental Indemnity | Transaction Documents – Buildings A & B | 716623 | August 8, 2008 |
| Consolidation, Modification and Restatement of Mortgages and Security Agmnt. | Transaction Documents – Buildings C, D and E | 716622 | August 8, 2008 |
| Consolidation, Modification and Restatement of Notes | Transaction Documents – Buildings C, D and E | 716622 | August 8, 2008 |
| Assignment of Leases and Rents | Transaction Documents – Buildings C, D and E | 716622 | August 8, 2008 |
| Guarantee of Non-Recourse Carve-Outs | Transaction Documents – Buildings C, D and E | 716622 | August 8, 2008 |
| Environmental Indemnity | Transaction Documents – Buildings C, D and E | 716622 | August 8, 2008 |
| Master Lease | Real Estate Documents – Buildings A & B | 716623 | August 8, 2008 |
| Master Lease | Real Estate Documents, Buildings C, D and E | 716622 | August 8, 2008 |
| Subordination Agreement – East Nineteenth Street, LLC | Third Party Agreements | 716622 & 716623 | August 8, 2008 |
| Subordination Agreement – Missionary Sisters of the Sacred Heart, New York and Illinois | Third Party Agreements | 716622 & 716623 | August 8, 2008 |

1239845v.15

| DOCUMENT | DESCRIPTION | LOAN NUMBER | DATE |
|---|---|---|---|
| Subordination Agreement – 1199SEIU – United Healthcare Workers East | Third Party Agreements | 716622 & 716623 | August 8, 2008 |
| Escrow Agreement | Miscellaneous | 716622 & 716623 | August 8, 2008 |
| Letter Agreement Regarding Transfers of Mortgaged Property | Miscellaneous | 716622 & 716623 | August 8, 2008 |
| Letter Agreement Regarding Permitted Subordinate Mortgage | Miscellaneous | 716622 & 716623 | August 8, 2008 |
| Letter Agreement Regarding Property Insurance Escrow | Miscellaneous | 716622 & 716623 | August 8, 2008 |
| Letter Agreement Regarding Tenant Estoppel Certificate | Miscellaneous | 716622 & 716623 | August 8, 2008 |
| Letter Agreement Regarding Violations | Miscellaneous | 716622 & 716623 | August 8, 2008 |

# EXHIBIT "D"

## LOAN AGREEMENTS SCHEDULE FOR

## EAST NINETEENTH STREET, LLC,

## AN AFFILIATE OF

## SAINT VINCENT'S CATHOLIC MEDICAL CENTER

| DOCUMENT | DESCRIPTION | DATE |
|---|---|---|
| Loan Agreement | Loan Document | July 28, 2008 |
| Promissory Note | Loan Document | July 28, 2008 |
| Subordinate Fee and Leasehold Mortgage and Security Agreement | Loan Document | July 28, 2008 |
| Letter Agreement Regarding Financial Advisors | Loan Document | July 28, 2008 |
| Post Closing Obligations Letter | Loan Document | July 28, 2008 |
| Intercreditor Agreement | Intercreditor Document | July 28, 2008 |
| Irrevocable Instructions – Missionary Sisters Loans | Intercreditor Document | July 28, 2008 |
| Irrevocable Instructions – East Nineteenth Street LLC | Intercreditor Document | July 28, 2008 |
| Consent and Agreement of Sun Life Assurance Company of Canada | Intercreditor Document | July 28, 2008 |

1239845v.15

**EXHIBIT "E"**

**MORTGAGE AGREEMENT**

**SCHEDULE FOR**

**1199 SEIU NATIONAL BENEFITS FUND**

1239845v.15

| DOCUMENT | DESCRIPTION | DATE | AMOUNT |
|---|---|---|---|
| Mortgage Agreement | Mortgage Agreement for 212 East 20th Street | December 4, 2006 | $6,531,049.54 |
| Mortgage Modification Agreement | Mortgage Modification Agreement for 212 East 20th Street | January 28, 2008 | $6,531,049.54 |
| Certificate of Incorporation of Cabrini Medical Center | Original Certificate and Amendments | January 10, 2008 | N/A |

1239845v.15

# EXHIBIT "F"

## BUDGET





*Cabrini Medical Center*

Cash Flow Projection and DIP Budget
July 9, 2009

Turnarounds | Workouts | Crisis Management | Interim Management | Bankruptcy & Financial Advisory | Distressed M&A
Performance Improvement | Technology Services | Sales & Marketing Strategy | Post-merger Integration



## Table of Contents

1) Introduction …………………………………………………………………………………………………… 3

2) Notes and Assumptions………………………………………………………………………………… 4

3) Debtor In Possession Budget…………………………………………………………………………… Appendix Page 1

4) Debt Schedule…………………………………………………………………………………………….. Appendix Page 2

5) Other Schedules………………………………………………………………………………………… Appendix Page 3




## Introduction

This cash flow ("CF") projection for Cabrini Medical Center ("CMC") is based on the collaborative work of Getzler Henrich & Associates LLC ("GH") and CMC's management team.  This projection reflects detailed projections of CMC's current operations in weekly increments for the 13 weeks, and monthly increments thereafter for the 6 months after the event of a chapter 11 filing occurring during the week ending Saturday July 11, 2009. This projection also reflects extensive discussions with the management team including identification and removal of extraordinary and non-recurring historical events as well as expectations regarding the timing and impact of future events.

GH has relied on the accuracy of the data provided as well as management's input in preparing these projections.  GH is not an accounting firm, does not provide assurance or auditing services, and has not undertaken any activities to verify the accuracy of historical results. This projection has **not** been prepared in accordance with Generally Accepted Accounting Principles (GAAP).

In preparing the Notes & Assumptions to the Projection GH has attempted to reflect the information utilized as well as any additional context that may be helpful in understanding the methodology and nature of projected events.  However, notwithstanding GH's best judgment, this projection remains subject to management's adherence to prepared budgets as well as the uncertainty associated with both the timing and magnitude of future events.





 Notes & Assumptions

o **General**
  o Chapter 11 filing assumed to occur the week ending Saturday July 11, 2009.
  o The DIP budget projects needs of approximately $4.8mm through 1/02/2009, and $6.4mm through 3/31/2010, and assumes 9.75% fixed interest (6.5% + 3.25% Prime) on the DIP loan.

o **Collections**
  o Each month includes rental income and AR that is expected to be received. Statues of limitations of 12-18 months exist on Medicare and Medicaid claims, so CMC won't be able to collect AR at the same rate as it has historically. $50k /month is an estimate provided by the CFO and signed off by The Gaeta Company, who is helping with collections.
  o CMC is receiving rental income from various tenants in the amount of $147k/month, which require certain levels of maintenance and ancillary services such as IT, phone, etc.

o **Disbursements**
  o **IT services –** Considers a contract information systems consultant and fees related to information systems.
  o **Phone / Internet –** Paetec is the phone provider at $5.2k/month. Matrix is the internet provider at $0.9k/month. Management is attempting to reduce the phone bill by citing unused lines, but the antiquated phone system prohibits switching to another phone provider without significant capital outlay.
  o **Elevators –** Monthly cost to maintain elevators for tenants.
  o **Water –** $45k paid quarterly is estimated based on historical use.
  o **Insurance –** General insurance is $23k/month and Directors and Officers Insurance is $6k/month. General insurance must be renewed each December, which requires a one month fee.





 Notes & Assumptions (Cont'd)

o **Disbursements (Cont'd)**

   o **Utilities –** Assumes average monthly volume based on historical use, increases in winter, summer and decreases in off months.

   o **Audit –** $40k in September is the contracted rate for the current audit required by Sun Life Mortgage, and $40k in March will be a final stub audit for 2009, close out and tax accounting.

   o **Linear Accelerator Staff –** $5k/month for Radiation Safety Expert.

   o **Principal –** No principal will be paid on MSSH Debt. The Sun Life mortgage will receive principal payments, which will be deducted from the prepaid Sun Life Rent, and not affect the DIP Budget cash flows.

      o $60k/month is related to a settlement with the NY City water board, who has agreed to forgo back payments for water service.

   o **Interest –** Applicable interest rates and payments are detailed in the Debt Schedule.

   o **Bankruptcy Related Items**

      o **Legal and Professionals –** In chapter 11, management has estimated fees for legal and other professionals involved in the case and in the ordinary course of the entity.

      o **Utilities and Water –** CMC may be required to pay one time deposits for continuing use of Utilities and Water.

      o **Claims Agent –** A claims agent has been contacted and requires $20k up front (paid the week ending 7/4/2009) and $10k each month.

      o **US Trustee –** The amount is as suggested by Bankruptcy Counsel

      o **Medical Records Movement –** Disposal of extensive amount of medical records stored in the basement of CMC

      o **Other Building Closure and Disposal –** Disposal of radioactive material related to removal of cancer machine and other hazardous waste.





 Notes & Assumptions (Cont'd)

o **Risks to Cash Flow**
  o **Hospice Rent –** $89k a month of incoming rent from St. Vincent's Hospice is a source of cash equaling $801k through 3/31/2009. Failure to pay would cause an unbudgeted risk to the cash flow model.

  o **Prime Rate –** The prime rate is 3.25% as of 7/8/2009 according to Bloomberg.com. Should this rate increase significantly, it will cause an unbudgeted risk to cash flow.

  o **Collections –** Approximately $291k in cash flow is budgeted to be collected from aged A/R. Should the Gaeta company become less successful in collections, it would cause an unbudgeted risk to cash flow.




# Appendix



**Cabrini Medical Center**
**13 Week Cash Flow**
*(dollars in thousands)*

| | NOTES | BUDGET Week Ending 7/11/09 | BUDGET Week Ending 7/18/09 | BUDGET Week Ending 7/25/09 | BUDGET Week Ending 8/1/09 | BUDGET Week Ending 8/8/09 | BUDGET Week Ending 8/15/09 | BUDGET Week Ending 8/22/09 | BUDGET Week Ending 8/29/09 | BUDGET Week Ending 9/5/09 | BUDGET Week Ending 9/12/09 | BUDGET Week Ending 9/19/09 | BUDGET Week Ending 9/26/09 | BUDGET Week Ending 10/3/09 | BUDGET Week Ending 10/10/09 | BUDGET Week Ending 10/17/09 | BUDGET Week Ending 10/24/09 | BUDGET Week Ending 10/31/09 | BUDGET Month Ending 11/30/09 | BUDGET Month Ending 12/31/09 | BUDGET Month Ending 1/31/10 | BUDGET Month Ending 2/28/10 | BUDGET Month Ending 3/31/10 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 002 Week Ending | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | | | | | | |
| 009 | | | | | | | | | | | | | | | | | | | | | | | | |
| 011 Beginning Cash Balance | 1 | 250.0 | | | | | | | | | | | | | | | | | | | | | | 250.0 |
| 012 | | | | | | | | | | | | | | | | | | | | | | | | |
| 013 COLLECTIONS | | | | | | | | | | | | | | | | | | | | | | | | |
| 014  Old A/R Cash | | 12.5 | 12.5 | 16.7 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 12.5 | 12.5 | 12.5 | 12.5 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 50.0 | 50.0 | - | - | - | 291.7 |
|  Rental Income Breakdown | | | | | | | | | | | | | | | | | | | | | | | | |
| 016  Dr Verrone | | - | - | - | - | - | 1.0 | - | - | - | - | 1.0 | - | - | - | 1.0 | - | - | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 8.0 |
| 017  ITU Rent | | - | - | - | - | - | 19.1 | - | - | - | - | 19.1 | - | - | - | 19.1 | - | - | 19.1 | 19.1 | 19.1 | 19.1 | 19.1 | 152.6 |
| 018  ITU Research | | - | - | - | - | - | 0.5 | - | - | - | - | 0.5 | - | - | - | 0.5 | - | - | 0.5 | 0.5 | 0.5 | 0.5 | 0.5 | 4.4 |
| 019  Detox | | - | - | - | - | - | 10.4 | - | - | - | - | 10.4 | - | - | - | 10.4 | - | - | 10.4 | 10.4 | 10.4 | 10.4 | 10.4 | 82.9 |
| 020  Dr. Auerbach | | - | - | - | - | - | 2.2 | - | - | - | - | 2.2 | - | - | - | 2.2 | - | - | 2.2 | 2.2 | 2.2 | 2.2 | 2.2 | 17.6 |
| 021  GPDDC | | - | - | - | - | - | 25.0 | - | - | - | - | 25.0 | - | - | - | 25.0 | - | - | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 200.3 |
|  Other Rental Income | | - | - | - | - | - | 58.2 | - | - | - | - | 58.2 | - | - | - | 58.2 | - | - | 58.2 | 58.2 | 58.2 | 58.2 | 58.2 | 465.7 |
| 023  St. Vincent's Hospice | | - | 89.0 | - | - | - | 89.0 | - | - | - | - | 89.0 | - | - | - | 89.0 | - | - | 89.0 | 89.0 | 89.0 | 89.0 | 89.0 | 801.0 |
| 024  Total Rental Income-Current | | - | 89.0 | - | - | - | 147.2 | - | - | - | - | 147.2 | - | - | - | 147.2 | - | - | 147.2 | 147.2 | 147.2 | 147.2 | 147.2 | 1,266.7 |
| 026 Total Collections | | 12.5 | 101.5 | 16.7 | 10.0 | 10.0 | 157.2 | 10.0 | 10.0 | 12.5 | 12.5 | 159.7 | 12.5 | 10.0 | 10.0 | 157.2 | 10.0 | 10.0 | 197.2 | 197.2 | 147.2 | 147.2 | 147.2 | 1,558.4 |
| 027 | | | | | | | | | | | | | | | | | | | | | | | | |
| 028 DISBURSEMENTS | | | | | | | | | | | | | | | | | | | | | | | | |
| 029 Operational Disbursements | | | | | | | | | | | | | | | | | | | | | | | | |
| 030  IT Services | | 1.3 | 1.3 | 1.7 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 1.3 | 1.3 | 1.3 | 1.3 | 1.0 | 1.0 | 1.0 | 1.0 | 1.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 44.2 |
| 031  Phone/Internet | | - | 1.5 | - | 6.1 | - | - | - | - | - | 6.1 | - | - | - | 6.1 | - | - | - | 6.1 | 6.1 | 6.1 | 6.1 | 6.1 | 50.3 |
| 032  Misc Expenses/repairs/cleaning | | - | - | - | 25.0 | - | - | - | - | 25.0 | - | - | - | 25.0 | - | - | - | - | 25.0 | 25.0 | 25.0 | 25.0 | 25.0 | 200.0 |
| 033  NY Elevators | | - | 12.5 | - | - | - | 12.5 | - | - | - | - | 12.5 | - | - | - | 12.5 | - | - | 12.5 | 12.5 | 12.5 | 12.5 | 12.5 | 112.5 |
| 034  Water- Current estimated | | - | - | - | 45.0 | - | - | - | - | - | - | - | - | 45.0 | - | - | - | - | 45.0 | - | - | - | - | 135.0 |
| 035  Insurance-Property/General/Director | | - | - | - | 29.4 | - | - | - | - | 29.4 | - | - | - | 29.4 | - | - | - | - | 29.4 | 50.4 | 29.4 | 29.4 | 29.4 | 256.0 |
| 036  Staff/ Outside Staff | 2 | 27.3 | 27.3 | 27.3 | 27.3 | 27.3 | 27.3 | 27.3 | 27.3 | 27.3 | 27.3 | 27.3 | 27.3 | 47.3 | 27.3 | 27.3 | 27.3 | 27.3 | 109.2 | 109.2 | 379.0 | 109.2 | 109.2 | 1,299.9 |
| 037  Utilities | | - | - | - | 250.0 | - | - | - | - | 200.0 | - | - | - | 200.0 | - | - | - | - | 200.0 | 250.0 | 250.0 | 250.0 | 200.0 | 1,800.0 |
| 038  Audit | | - | - | - | - | - | - | - | - | 40.0 | - | - | - | - | - | - | - | - | 80.0 |
| 039  Linear Accelerator Staff | | - | - | - | - | - | 5.0 | - | - | - | - | 5.0 | - | - | - | 5.0 | - | - | 5.0 | 5.0 | 5.0 | 5.0 | - | 40.0 |
| 040  Collections Agent | | - | - | - | 20.0 | - | - | - | - | 20.0 | - | - | - | 15.0 | - | - | - | - | 15.0 | 15.0 | 15.0 | 15.0 | - | 115.0 |
| 041 Total Operating Disbursements | | 28.6 | 42.6 | 29.0 | 403.8 | 28.3 | 40.8 | 33.3 | 28.3 | 349.0 | 28.6 | 41.1 | 33.6 | 323.8 | 28.3 | 40.8 | 33.3 | 28.3 | 452.2 | 478.2 | 727.0 | 502.2 | 432.2 | 4,132.9 |
| 042 | | | | | | | | | | | | | | | | | | | | | | | | |
| 043 Cash Flow from Operations | | (16.1) | 59.0 | (12.3) | (393.8) | (18.3) | 116.4 | (23.3) | (18.3) | (336.5) | (16.1) | 118.7 | (21.1) | (313.8) | (18.3) | 116.4 | (23.3) | (18.3) | (255.0) | (281.0) | (579.8) | (355.0) | (285.0) | (2,574.5) |
| 044 | | | | | | | | | | | | | | | | | | | | | | | | |
| 045 Debt Payments | | | | | | | | | | | | | | | | | | | | | | | | |
| 047  Principal payments | | - | - | - | 59.8 | - | - | - | - | 59.8 | - | - | - | 59.8 | - | - | - | - | 59.8 | 59.8 | 59.8 | 59.8 | 59.8 | 478.7 |
| 048  Interest payments | 3 | - | - | - | 81.0 | - | - | - | - | 101.2 | - | - | - | 81.0 | - | - | - | - | 101.2 | 81.0 | 81.0 | 101.2 | 81.0 | 708.7 |
| 049 Total Debt Service | | - | - | - | 140.8 | - | - | - | - | 161.1 | - | - | - | 140.8 | - | - | - | - | 161.1 | 140.8 | 140.8 | 161.1 | 140.8 | 1,187.3 |
| 050 | | | | | | | | | | | | | | | | | | | | | | | | |
| 051 Cash Flow after Debt Service | | (16.1) | 59.0 | (12.3) | (534.6) | (18.3) | 116.4 | (23.3) | (18.3) | (497.6) | (16.1) | 118.7 | (21.1) | (454.6) | (18.3) | 116.4 | (23.3) | (18.3) | (416.0) | (421.8) | (720.6) | (516.0) | (425.8) | (3,761.8) |
| 052 | | | | | | | | | | | | | | | | | | | | | | | | |
| 053 Bankruptcy Related Items | | | | | | | | | | | | | | | | | | | | | | | | |
| 054  Legal fees/Garfunkel/Garrant | | - | - | - | 50.0 | - | - | - | - | 50.0 | - | - | - | 50.0 | - | - | - | - | 50.0 | 50.0 | 50.0 | 50.0 | 50.0 | 400.0 |
| 055  Bankrupcy Counsel | | 50.0 | - | - | 75.0 | - | - | - | - | 75.0 | - | - | - | 150.0 | - | - | - | - | 75.0 | 75.0 | 75.0 | 75.0 | 75.0 | 725.0 |
| 056  Professionals for Credit Committee | | - | - | - | 40.0 | - | - | - | - | 40.0 | - | - | - | 40.0 | - | - | - | - | 40.0 | 40.0 | 40.0 | 40.0 | 40.0 | 320.0 |
| 057  Claims Agent | | - | - | - | - | - | 10.0 | - | - | - | 10.0 | - | - | - | 10.0 | - | - | - | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 80.0 |
| 058  US Trustee | | - | - | - | - | - | - | - | - | 30.0 | - | - | - | - | - | - | - | - | - | 30.0 | - | - | 30.0 | 90.0 |
| 059  Potential Utilities Deposit | | - | - | - | 225.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 225.0 |
| 060  Water Board Security Deposit | | - | - | - | 45.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 45.0 |
| 061  Medical Records Movement | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 300.0 | - | - | - | - | 300.0 |
| 062  Other Building Closure and Disposal | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 50.0 | - | - | - | - | 50.0 |
| 063  DIP Fee | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 064  DIP Interest | 4 | - | - | - | - | - | - | - | - | 72.8 | - | - | - | 48.5 | - | - | - | - | 60.7 | 48.5 | 48.5 | 60.7 | 48.5 | 388.3 |
| 065 | | | | | | | | | | | | | | | | | | | | | | | | |
| 066 Total BK Related Items | | - | - | - | 435.0 | - | 10.0 | - | - | 267.8 | 10.0 | - | - | 288.5 | 10.0 | - | - | - | 585.7 | 253.5 | 223.5 | 235.7 | 253.5 | 2,623.3 |
| 067 | | | | | | | | | | | | | | | | | | | | | | | | |
| 068 Total Disbursements | | 29 | 43 | 29 | 980 | 28 | 51 | 33 | 28 | 778 | 39 | 41 | 34 | 753 | 38 | 41 | 33 | 28 | 1,199 | 873 | 1,091 | 899 | 827 | 7,943 |
| 069 | | | | | | | | | | | | | | | | | | | | | | | | |
| 070 Net Change in Cash | | (16) | 59 | (12) | (970) | (18) | 106 | (23) | (18) | (765) | (26) | 119 | (21) | (743) | (28) | 116 | (23) | (18) | (1,002) | (675) | (944) | (752) | (679) | (6,385) |
| 071 Cumulative (deficit)/surplus | | 234 | 293 | 281 | (689) | (707) | (601) | (624) | (642) | (1,408) | (1,434) | (1,315) | (1,336) | (2,079) | (2,108) | (1,991) | (2,015) | (2,033) | (3,085) | (3,760) | (4,704) | (5,456) | (6,135) | (6,135) |
| 072 | | | | | | | | | | | | | | | | | | | | | | | | |

073 NOTES

074  1 Cash balance estimated as of 7/7/2009 and cash disbursements paid in week of 7/11/2009 assumed paid after 7/7/2009.

075  2 Payroll considers both outside consultants and full time staff.

076  3 Interest payments are calculated weekly. Monthly interest takes due to 4 and 5 week months. October interest contains September interest paid in the week ending 10/3/09.

077  4 DIP of $6.4mm instituted last week of July 2009 and 1st interest payment includes one extra week of accrual.

**Cabrini Medical Center**
**Debt Schedule**
*(dollars in thousands)*

| | Debt Listing | Current Payment[1] | Pay in BK? | BK Pmt | Interest | Pmt Date | Comment | Background |
|---|---|---|---|---|---|---|---|---|
| 012 | **Debt Listing** | | | | | | | |
| 013 | | | | | | | | |
| 014 | **SECURED DEBT** | | | | | | | |
| 015 | | | | | | | | |
| 016 | DIP Loan | $ 6,400 | - | yes | Interest | 9.75% | 1st | | Includes approximately $250k of cushion. |
| 017 | | | | | | | | |
| 018 | Sun Life Building A and B | $ 21,085 | 157.15 | yes | 157.15 | 6.25% | | | Mortgage on Buildings. |
| 019 | Sun Life Building C, D AND E | 14,220 | 105.98 | yes | 105.98 | 6.25% | 1st | | Mortgage on Buildings. |
| 020 | Prepaid Sun Life Rent | (4,289) | | | | | | | To be debited as Sun Life Interest is due. |
| 021 | **Total Sun Life Secured Debt** | 31,016 | | | | | | | |
| 022 | | | | | | | | |
| 023 | MSSH-New York Province secured | 1,282 | | no | | 8.00% | end | | Extended credit in the 1980's revolving year to year. Hasn't paid interest since early nineties. |
| 024 | MSSH-New York Province secured | 18,695 | 109.86 | yes | Interest | 5.57% | 1st | | 7 months behind on interest, but still paying. |
| 025 | MSSH - Working Capital loan | 13,617 | | no | | | | No Interest Loan | Extended credit in the 1980's, revolving year to year. |
| 026 | MSSH - Capital Lease loan | 7,975 | | no | | 3.25% | | Interest is Prime - assumed to be 3.25% as per Bloomberg.com on 7/8/2009 | Generatalre extended credit in the 1980's related to capital assets. Hasn't paid interest since mid nineties. |
| 027 | MSSH - Loan Payable | 2,934 | | no | | | | No Interest Loan | Extended credit in the 1980's, revolving year to year. |
| 028 | MSSH-New York/ Generatalre-INTEREST | 7,435 | | no | | 8.00% | end | Don't have breakdown of accrued interest between tranches | Accrued interest from 8% province loan and prime generatale Capital Lease Loan. Has been accruing since early to mid 90's. |
| | **Total MSSH Secured Debt** | 51,938 | | | | | | | |
| 029 | | | | | | | | |
| 030 | New York City Water Board | 2,343 | 59.83 | yes | 59.83 | | 1st | Paying in BK. | Back payments for Water service. NYC Water won't charge late fees if CMC makes monthly payments. |
| 031 | United States of America (ACI) | 2,487 | $70k until 1/28/2010 then $80k | no | | 4.61% | 25th | | Settlement of federal whistle blowing lawsuit alleging placement of homeless in Detox unit. |
| 032 | Jack Rodgion Estate (Di Giacomo) | 50 | 50 | no | | | | | Malpractice of $1.1mm which is now $50k, only one more payment. Judgment providing lien on building. |
| 033 | Med-One Capital | 49 | 4 | no | | | | | Lien on bank account. Have a settlement agreement to pay $4k a month. |
| 034 | Commissioner of Labor (Unemployment) | 2,000 | | no | | | | | Tax Warrant. |
| 035 | 1199 Confession of Judgment Interest | 4,800 | | no | | | | | 1199 Union who represents hospital workers. Have a confession of judgment. If confession of judgment is executed, lien on building is granted. Assumed unsecured until lien recorded. |
| 036 | St. Vincent's Loan-Secured | 4,000 | | no | | 4.00% | | | Secured - Intercreditor agreement between MSSH and SV providing pari passu ranking. Never collected interest, but should be receiving 4% interest. |
| 037 | Loan Payable IDB | 1,641 | | no | | 4.75% | 1st | | Secured by HANY's Trust Receivable. |
| 038 | **Total Other Secured Debt** | 17,370 | | | | | | | |
| 039 | | | | | | | | |
| 040 | **Total Secured Debt** | **106,724** | | | | | | | |
| 041 | | | | | | | | |
| 042 | **UNSECURED DEBT** | | | | | | | |
| 043 | | | | | | | | |
| 044 | MSSH NY Province (Unsecured) | 1,200 | | no | | 7.00% | | | January 2007 Financing Agreement collateralized by the "Bad Debt Charity Care Pool." CMC is no longer eligible for bad debt payments for the Charity Care Pool. |
| 045 | MSSH NY Province (Unsecured) | 2,900 | | no | | 4.75% | | Interest is Prime + 1.50% - Prime assumed to be 3.25% as per Bloomberg.com on 7/8/2009 | 2006 Financing agreement with MSSH. |
| 046 | MSSH NY Province Loan Payable-Heal | 1,620 | | no | | | | | Advances from MSSH in 2007 - no interest due. |
| 047 | MSSH NY Province Health insurance advance | 566 | | no | | | | | Advances from MSSH in 2007 - no interest due. |
| 048 | MSSH NY Province - Apt and garage rentals | 600 | | no | | | | | Balance of payments owed to MSSH related to apartment building CMC utilized for residents. |
| 049 | MSSH - Allied Irish (under CDC) | 3,000 | | no | | 2.00% | 10th | | Loan between Allied Irish and CDC, backed by MSSH. |
| 050 | **Total MSSH Unsecured Debt** | 9,886 | | | | | | | |
| 051 | | | | | | | | |
| 052 | Health Facility Restructuring Pool Loan - DASNY | 2,622 | | no | | | | | Unsecured - NY State loan for working capital in 2005. |
| 053 | Other Unsecured Claims | 48,592 | | no | | | | | Supporting Schedule available upon request. |
| 054 | **Total Unsecured Debt** | 61,100 | | | | | | | |
| 055 | | | | | | | | |
| 056 | **Capital Equipment Leases** | | | | | | | |
| 057 | Various Leases | 1,233 | | | | | | | Secured by equipment (copiers, lab equip, etc.). |
| 058 | **Total Capital Equipment Leases** | 1,233 | | | | | | | |
| 059 | | | | | | | | |
| 060 | **Total CMC Debt** | **169,057** | | | | | | | |
| 061 | | | | | | | | |
| 062 | 1 Current payment is the pre-petition scheduled payment, which contains principal and interest. Post-petition, principal will cease to be paid. | | | | | | | | |

**Cabrini Medical Center**
**Other Schedules**
*(dollars in thousands)*

**Contingent Receipts / Payments**

| 001 | Item | Expected Amount | Description |
|---|---|---|---|
| 002 | Heal Grant | $ 1,100 | Applied against $4mm of accrued wages and salaries from financial statements |
| 003 | Medicare Appeals 2004 | 813 | Should receive by December 2009 |
| 004 | Medicare Appeals 2005 | (500) | Will be offset by 2006 Medicare appeals |
| 005 | Medicare Appeals 2006 | 500 | Will be offset by 2005 Medicare appeals |
| 006 | Appeal Bonds | 353 | Uncertain if CMC will receive at all. Waiting for second appeal. |
| 007 | Appeal Bonds | 553 | Uncertain if CMC will receive at all. "Risk Management Fees" of $32k/year since 1994. |
| 008 | Estate Money | 85 | Estate of Lawrence Henderson - bequest by year end |
| 009 | Medicare Appeals 2007 | 1,000 | Won't likely get through administration until mid to late 2010 |
| 010 | Medicare Appeals 2008 | 500 | Won't likely get through administration until early 2011 |
| 011 | Net Liquidation of Hard assets in the building | 250 | After fees, estimated FOLV of hospital contents |
| 012 | **Total** | $ 4,654 | |
| 013 | | | |
| 014 | | | |
| 015 | | | |

| 016 | **Other Unsecured Claims** | Amount | Notes |
|---|---|---|---|
| 017 | Con Edison | $ 4,500 | Con Edison Payable (includes May, June) |
| 018 | Deferred Compensation Liability | 3,000 | |
| 019 | Malpractice Liability | 5,300 | |
| 020 | Employee Severance and Vacation | 4,240 | |
| 021 | Mgt Pension Liab | 1,300 | |
| 022 | St Vincent's Advances | 2,987 | St. Vincent's advanced cash for operations over the last year. |
| 023 | A/P vendor Debt 5/31/2009 | 27,265 | |
| 024 | **Total** | $ 48,592 | |
| 025 | | | |
| 026 | | | |
| 027 | | | |

| 028 | **Other Miscellaneous Cash in Escrow** | Amount | Description |
|---|---|---|---|
| | Title Escrow refund | $ 1,400 | When refinancing Sun Life mortgage in March, CMC was unsure of tax liability. Sun Life determined that until this issue is resolved, $1.4mm would be deposited. The agreement stipulates that until the facility is rented to a certain capacity, the funds would not be released. |
| 029 | | | |
| | Escrow for IDB | 69 | |
| 030 | | | Balance of $150k escrow for interest IDB is drawing on. (Debt is secured by HANY's Trust.) |
| 031 | Cash Account for Deferred Compensation Liab | 16 | Cash put in the account in order to pay the distribution. |
| 032 | Con Edison Security Deposit | 177 | Con Ed is holding security deposit (though CMC owes $4.5mm) |
| | Codogno | 309 | Self insured Corporation in Bermuda for payment of malpractice claims. Stopped using it in 2001. Still have general malpractice claims of $1.8mm prior to 2001 against the hospital related to this fund. Assets of $309k are in trust for the benefit of Cabrini and PRI Insurance (claims processor). |
| 033 | | | |
| 034 | **Total** | 1,970 | |

**Getzler Henrich & Associates LLC**
Getzler Henrich is one of the most respected names in middle-market turnarounds and corporate restructuring. Our broad business experience, unique professional insights, creativity and unmatched implementation skills form the foundation of our industry leadership.

Getzler Henrich provides management and financial consulting in turnaround and workout situations as well as technology solutions, sales and marketing strategy, operational improvement, and post-merger integration services.

**New York**
295 Madison Avenue
20th Floor
New York, NY 10017
(212) 697 2400

**Boston**
60 State Street
7th Floor
Boston, MA 02109
(617) 742 1230

**Charlotte**
401 N. Tryon Street
10th Floor
Charlotte, NC 28202
(704) 998 5546

**Chicago**
10 South Riverside Plaza
Suite 1800
Chicago, IL 60606
(312) 474 6117

**Irvine**
2030 Main Street
Suite 1300
Irvine, CA 92614
(949) 260 4776

www.GetzlerHenrich.com