UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                             :

In re:                                        :          Chapter 11
                                             :          Case No. 09-14398 (AJG)
CABRINI MEDICAL CENTER,        :
                                             :
                       Debtor.   :
                                             :
------------------------------------------------------------x

**ORDER (A) APPROVING (i) BIDDING PROCEDURES,
(ii) THE TIME, DATE, PLACE AND FORM OF NOTICE
FOR THE AUCTION AND SALE HEARING, AND
(iii) BREAK-UP FEE, TERMINATION RIGHTS AND RELATED
SECURITY INTEREST, AND (B) ESTABLISHING THE DATE
AND TIME FOR A SALE HEARING WITH RESPECT TO
THE DEBTOR'S REAL PROPERTY AND RELATED ASSETS**

Upon that portion (the "Procedures Motion") of the motion (the "Motion"), dated December 4, 2009, of Cabrini Medical Center ("Cabrini" or the "Debtor"), the debtor and debtor in possession herein, for entry of an order pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002(a)(2) and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) approving the proposed bidding procedures (the "Bidding Procedures") to be used in connection with the proposed sale (the "Sale") of the Debtor's real property and related assets (collectively, the "Assets") to Cabre Partners LLC (the "Purchaser") or to any competing bidder or bidders (the "Successful Bidder(s)") that submits or collectively submit a higher or better offer or offers for the Assets, (ii) approving payment of a Break-Up Fee, termination rights, granting a lien and certain overbid pro-

cedures in connection therewith, (iii) scheduling an auction (the "Auction") for the Assets and a hearing (the "Sale Hearing") to consider approval of the Sale, and (iv) approving the form and manner of notice of the Auction and the Sale Hearing; and this Court having reviewed the Procedures Motion; and this Court having held a hearing on the Procedures Motion on December 17, 2009 (the "Procedures Hearing"); and upon consideration of the limited objection filed by Sun Life Assurance Company of Canada ("Sun Life") and the objection filed by GPDDC, LLC; and no further objections having been filed to the Procedures Motion; and upon consideration of the Debtor's reply (the "Reply") and declaration of Vincent A. Carrega (the "Carrega Declaration") filed in response to the objections filed by Sun Life and GPDDC, LLC; and the Court having adjourned the Procedures Hearing; and the parties having reached an agreement to modify the proposed security for the Break-Up Fee, and the Debtor and Purchaser having entered into an amended Purchase Agreement to reflect such modifications; and based on the Procedures Motion, the Reply, the Carrega Declaration and the record of the Procedures Hearing, it now appearing that the relief requested in the Procedures Motion as modified by this Order is in the best interests of the Debtor, its estate, and all parties in interest; and after due deliberation thereon and good cause appearing therefor, it is[1]:

**FOUND AND DETERMINED THAT:[2]**

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures and/or the Purchase Agreement (defined below).

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, when appropriate. See Fed. R. Bankr. P. 7052.

A. This Court has jurisdiction over the Procedures Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Procedures Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Good and sufficient notice of the relief sought in the Procedures Motion has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief requested in the Procedures Motion has been afforded to all interested persons and entities, including (i) counsel to the statutory committee of unsecured creditors appointed in the Debtor's case (the "Creditors' Committee"); (ii) counsel to the Purchaser; (iii) counsel for the Debtor's post-petition lender (the "DIP Lender"); (iv) the approximately 38 other parties that toured or had expressed an interest in acquiring all or a substantial portion of the Assets; (v) the New York State Attorney General's Office – Charities Bureau; (vi) the Internal Revenue Service; (vii) the Office of New York State Attorney General; (viii) Corporation Counsel of the New York City Department of Finance; (ix) The New York State Department of Health; (x) New York State Department of Taxation; (xi) the Debtor's known secured creditors; (xii) the United States Attorney for the Southern District of New York; (xiii) the Office of the U.S. Trustee; (xiv) the Centers for Medicare and Medicaid Services; and (xv) all other parties that requested service by filing notices of appearance in this Chapter 11 case ((i)-(xv) are collectively referred to as the "Notice Parties").

C. The proposed notice of the Sale (including, without limitation, the sale of the Assets and the assumption and assignment of the Assumed Contracts) and the Bidding Procedures, as set forth in the Procedures Motion and the Purchase Agreement, is good, appropriate, adequate, and sufficient, and is reasonably calculated to provide all interested parties with timely and proper notice of the Sale and the Bidding Procedures, and no other or further notice of the Sale of the Assets, the assumption and assignment of the Assumed Contracts, or the Bidding Procedures, as set forth herein and in the Procedures Motion, is required.

D. The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Procedures Motion, including this Court's (i) approval of the Bidding Procedures, attached hereto as Exhibit "A," (ii) approval of payment of the Break-Up Fee (as defined in the Purchase Agreement and described below), termination rights as set forth in the Purchase Agreement, and granting certain liens to secure payment of the Break-Up Fee, (iii) determination of final Cure Amounts in the manner described herein, and (iv) approval of the form and manner of service of the notice of the Auction, the Motion and Sale Hearing, attached hereto as Exhibit "B" (the "Notice of Auction and Sale Hearing").

E. The Debtor has articulated good and sufficient reasons for, and the best interests of its estate will be served by, this Court scheduling a subsequent hearing to consider whether to grant the remainder of the relief requested in the Motion, including approval of the proposed Sale in accordance with either (i) the contract of sale by and between the Debtor and the Purchaser, as amended (together with all exhibits,

schedules and agreements attached thereto, the "Purchase Agreement"), attached hereto as Exhibit "C", or (ii) such other agreement or agreements by and between the Debtor and the Successful Bidder or Successful Bidders, in each case, free and clear of, among other things, all liens, claims, encumbrances, and interests, including possessory leasehold interests (collectively, "Liens") (with the same to attach to the proceeds therefrom) other than the Permitted Exceptions pursuant to section 363 of the Bankruptcy Code.

    F.  The Break-Up Fee to be paid under the circumstances set forth in the Purchase Agreement, including, without limitation, upon the termination of the Purchase Agreement by the Purchaser, and the liens granted with respect thereto, is (i) an actual and necessary cost and expense of preserving the Debtor's estate, (ii) commensurate to the real and substantial benefit conferred upon the Debtor's estate by the Purchaser, (iii) reasonable and appropriate in light of the size and nature of the proposed Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Purchaser, and (iv) necessary to induce the Purchaser to continue to pursue the Sale and to continue to be bound by the Purchase Agreement.

    G.  The Debtor's authorization to pay the Break-Up Fee and grant liens encumbering the Assets as herein provided is an essential inducement and condition relating to the Purchaser's entry into, and continuing obligations under, the Purchase Agreement. Unless the Purchaser is assured that the Break-Up Fee will be paid in each of the circumstances described in the Purchase Agreement, including, without limita-

tion, upon the termination of the Purchase Agreement, the Purchaser is unwilling to remain obligated to purchase the Assets or to be otherwise bound under the Purchase Agreement (including the obligation to remain committed to its offer for the Assets while such offer is subjected to higher or otherwise better offers as contemplated by the Bidding Procedures). The Debtor's promise to pay the Break-Up Fee, which has induced the Purchaser to submit a bid that will serve as a minimum or floor bid on which the Debtor, its creditors, and other bidders can rely. The Purchaser has provided a material benefit to the Debtor and its creditors by increasing the likelihood that the best possible purchase price for the Assets will be received. Accordingly, the Bidding Procedures, the Break-Up Fee, the termination rights in the Purchase Agreement and lien granted on the Assets are reasonable and appropriate.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Procedures Motion is GRANTED to the extent provided in this Order.

2. All objections to entry of this Order or to the relief provided herein and requested in the Procedures Motion that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled in their entirety.

**The Bidding Procedures**

3. The Bidding Procedures, as set forth on Exhibit "A" and incorporated herein by reference, are approved in all respects and shall govern all bids and bid

proceedings relating to the Assets.  Notwithstanding the above, any party in interest may object at the Sale Hearing to the criteria used by the Debtor to select the highest or otherwise best offer for the Assets, and this Order shall not be construed as approving or disapproving of the criteria set forth in the Bidding Procedures.

4. The deadline for submitting bids for the Assets (the "Bid Deadline") shall be **January 25, 2010** at 4:00 p.m., unless otherwise extended by Court Order. If the Bid Deadline is extended, the Court shall establish new dates for: (i) the Auction; (ii) the Sale Hearing; and (iii) the deadline for objections to the Motion.

5. Except as may be limited by the Purchase Agreement, the Debtor, after consultation with the DIP Lender and the Creditors' Committee's professionals, is authorized to extend the deadlines set forth in this Order and/or adjourn, continue or suspend the Auction and/or the Sale Hearing for any reason, without further order of this Court, by filing a notice with this Court and serving such notice on all Potential Bidders.

6. The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

### The Auction

7. The Auction shall commence at 10:00 a.m. New York Time on Thursday, **January 28, 2010** at Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York, or such later time or other place, within New York City, as decided by the Debtor, and the Debtor shall notify all Qualified Bidders of such later time

7

or place; provided, however, that if no Qualified Bids (other than that submitted by the Purchaser) are received by the Bid Deadline or if the aggregate value of the highest Qualified Bids that have been submitted for various components of the Assets together with the value of any components of Assets for which no Qualified Bids have been received (as determined by the Debtor in its sole and absolute discretion after consultation with counsel for the DIP Lender and the Creditors' Committee) is for a price and under terms which the Debtor believes not to be higher or better than the Purchaser's bid then the Debtor shall not be required to conduct an Auction, and in such event the Debtor shall proceed with the approval of the Purchase Agreement.

**Break-Up Fee and Lien Grant**

8. Payment of the Break-Up Fee in the amount of $3,000,000, payable at such times and under the circumstances set forth in and in accordance with the terms of the Purchase Agreement, including, without limitation, upon the termination of the Purchase Agreement by the Purchaser, is hereby approved. Notwithstanding anything contained herein to the contrary, the Break-Up Fee shall be paid in accordance with the terms of the Purchase Agreement. Purchaser shall be entitled to interest in the per annum amount of 6% on the unpaid portion of the Break-Up Fee, to accrue beginning on the date the Break-Up Fee becomes due and payable under the Purchase Agreement.

9. To secure the obligation to pay the Break-Up Fee (including interest as provided in the Purchase Agreement), the Purchaser is hereby granted: (i) a priming first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically

8

perfected post-petition security interest and lien on Buildings C, D and E, senior and superior in priority to all other secured and unsecured creditors of the Debtor's estate, upon and to the Assets, and (ii) a second priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interest and lien on Buildings A and B, subject and subordinate to the liens of Sun Life Assurance Company of Canada ("Sun Life") (including Sun Life's Replacement Liens (as defined in the Court's Order, dated November 4, 2009 (the "DIP Order"), authorizing the Debtor to incur debtor-in-possession financing)) (collectively, the "Sun Life Liens") securing the Sun Life Prepetition Obligations and Sun Life's Adequate Protection Obligations (each as defined in the DIP Order) (all such liens, collectively the "Break-Up Fee Liens"), and in each case such Break-Up Fee Liens shall be subject and subordinate to the statutory lien and administrative claims held by the City of New York for real estate taxes, water charges and other statutory amounts in the aggregate amount of no more than $3.2 million (the "Real Estate Tax Liens") and the Carveout (as that term is currently defined in the DIP Order, authorizing the Debtor to incur debtor-in-possession financing, provided that none of the amounts or obligations currently included in the Carveout, to which the Protections (defined below) are subordinate, shall be increased by any amendment of the DIP Order). With the exception of the Real Estate Tax Liens, the Sun Life Liens with respect to Buildings A and B, and the Carveout, the Break-Up Fee Liens shall not be made subject to, subordinate to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Case; and shall be valid and enforceable against any trustee appointed in the Case, upon the conversion of the Case

9

to a case under Chapter 7 of the Bankruptcy Code or in any other proceeding related to any of the foregoing, and/or upon the dismissal of the Case. The Break-Up Fee Liens shall not be subject to Section 506(c), 510, 549, 550, or 551 of the Bankruptcy Code. Notwithstanding the foregoing, in the event the Break-Up Fee becomes due and payable, (a) payment thereof shall be made in accordance with, and at the times specified in, the Purchase Agreement, and (b) upon payment, the Purchaser shall have no obligation or liability under this Order or otherwise in respect of the Carveout.

10. This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Break-Up Fee Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or credit card agreement) to validate or perfect the Break-Up Fee Liens or to entitle the Break-Up Fee Liens to the priorities granted herein. Notwithstanding the foregoing, the Purchaser may, in its sole discretion, file such financing statements, mortgages, if any, notices of liens and other similar documents, and all such financing statements, mortgages, if any, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Case.

11. The Debtor shall execute and deliver to the Purchaser all such financing statements, mortgages, if any, notices and other documents as the Purchaser may reasonably request to evidence, confirm, validate, or perfect, or to insure the con-

templated priority of, the Break-Up Fee Liens granted pursuant hereto. The Purchaser, in its discretion, may file a photocopy of this Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Order.

12. Subject to the terms and provisions of this Order, the automatic stay imposed under Bankruptcy Code Section 362(a) is hereby modified to the extent necessary to (i) permit the Debtor to grant the Break-Up Fee Liens and to incur the liabilities in connection with the Break-Up Fee and in connection with this Order, and (ii) permit the Purchaser to file, record, and otherwise perfect the Break-Up Fee Liens and any other security interests granted and created herein.

13. In addition to the Break-Up Fee Liens, subject and subordinate only to the Carveout, the Purchaser shall have an allowed superpriority administrative expense claim (the "Superpriority Claim" and together with the Break-Up Fee Liens, the "Protections") with respect to the Debtor's obligation to pay the Break-Up Fee with priority over all administrative expense claims and unsecured claims against the Debtor and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b), 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-

consensual lien, levy or attachment. No costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code Sections 328, 330, and 331, or otherwise, that have been or may be incurred in this proceeding, or in any successor case, and no priority claims are, or will be, senior to, prior to, or on a parity with the Break-Up Fee obligations arising hereunder. Notwithstanding the foregoing, in the event the Break-Up Fee becomes due and payable, (a) payment thereof shall be made in accordance with, and at the times specified in, the Purchase Agreement, and (b) upon payment, the Purchaser shall have no obligation or liability under this Order or otherwise in respect of the Carveout.

14. The terms of the Purchase Agreement shall govern (i) the conditions under which the Purchaser's bid and the Purchase Agreement are terminable (which are terms and conditions for termination of the Purchase Agreement), and (ii) payment or other disposition of the Break-Up Fee.

15. The Purchaser shall not be entitled to the Break-Up Fee if the Sale closes with the Purchaser, provided, however, that if an Auction is conducted and the Purchaser is the Successful Bidder at such Auction, or becomes the Successful Bidder after such Auction, the Purchaser shall be entitled to a credit against the purchase price in the amount of the Break-Up Fee.

16. The provisions of this Order respecting the grant of the Protections shall survive entry of any order which may be entered (i) approving the Sale, or (ii) confirming any Plan in the Case, or (iii) converting the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, or (iv) dismissing the Chapter 11 case, or (v) with-

drawing of the reference of the Chapter 11 case from this Court, or (vi) providing for abstention from handling or retaining of jurisdiction of this Chapter 11 case in this Court, and the terms and provisions of this Order as well as the Protections granted pursuant to this Order and in the Purchase Agreement shall continue in full force and effect notwithstanding the entry of such order, and such Protections shall maintain their priority as provided by this Order and the Purchase Agreement until all the obligations of the Debtor to and the Purchaser pursuant to Purchase Agreement respecting the Break-Up Fee have been satisfied. To the extent the Debtor's obligations with respect to the Break-Up Fee are otherwise still in effect, the obligations to pay the Break-Up Fee shall not be discharged by the entry of an order confirming a Plan, the Debtor having waived such discharge pursuant to Section 1141(d)(4) of the Bankruptcy Code. To the extent the Debtor's obligations respecting the Break-Up Fee are otherwise still in effect, the Debtor shall not propose or support any Plan that is not conditioned upon the payment in full in cash of the Break-Up Fee, on or prior to earlier of (i) the effective date of such Plan, if the Break-Up Fee shall then be due and owing and (ii) the date such Break-Up Fee shall become due and owing.

## Sale Hearing

17.     The Sale Hearing shall be held before the Honorable Arthur J. Gonzalez, United States Bankruptcy Judge, on **February 3, 2010** at 9:30 a.m. at the United States Bankruptcy Court, Courtroom 523, One Bowling Green, New York, New York, at which time this Court shall (i) consider approval of the Sale to the Purchaser or other

Successful Bidder(s); (ii) consider the proposed assumption and assignment of the Assumed Contracts, if any, and related cure claims in connection with the Sale; (iii) consider the entry of the proposed sale order, substantially in the form attached to the Motion as Exhibit "3" (the "Sale Order"); (iv) consider any issues or objections that are timely interposed by any parties; and (v) grant such other or further relief as this Court may deem just or proper.

18. Except as may be limited by the Purchase Agreement, the Sale Hearing may be adjourned by the Debtor, after consultation with the Purchaser or other Successful Bidder(s), as applicable, and the DIP Lender and the Creditors' Committee, from time to time without further order of this Court, by filing a notice with this Court and serving such notice on all Qualified Bidders.

### Notice

19. The Notice of Auction and Sale Hearing substantially in the form attached hereto as Exhibit "B" is hereby approved.

20. The Debtor shall cause a copy of the Bidding Procedures, the Notice of Auction and Sale Hearing, and this Order to be served upon the Notice Parties via first class mail not later than **January 7, 2010**.

21. Within three (3) business days after the entry of this Order, the Debtor shall have caused a copy of the Notice of Auction and Sale Hearing to be served upon all known creditors, including, without limitation, all lienors of record, and counterparties to executory contracts and leases with the Debtor.

14

22. As soon as practicable after entry of this Order, the Debtor shall submit the Notice of Auction and Sale Hearing for publication once in the *New York Times* and *Crain's New York Business* pursuant to Bankruptcy Rule 2002(l).

23. No later than twenty (20) days prior to the Sale Hearing, the Debtor shall supplement service by causing a copy of the Notice of Auction and Sale Hearing to be served upon all entities listed in the title report obtained by the Purchaser, to be provided to the Debtor by the Purchaser, as having a lien on, interest in, or encumbrance of the Assets.

24. The notice as set forth in the preceding paragraphs shall constitute good and sufficient notice of the Motion, the Auction, the Sale Hearing and the proposed Sale Order, and no other or further notice of the Motion, the Auction, the Sale Hearing and/or the proposed Sale Order shall be necessary or required.

**Objections to Motion**

25. Objections, if any, to the Motion, other than with respect to the relief granted herein, shall be filed with this Court and served so as to be **received** no later than 4:00 p.m. prevailing Eastern Time on **January 27, 2010** (the "Objection Deadline"), by: (i) Togut, Segal & Segal LLP, attorneys for the Debtor and Debtor in Possession, One Penn Plaza, Suite 3335, New York, New York 10119, Attn.: Frank A. Oswald, Esq. and Howard P. Magaliff, Esq.; (ii) Garfunkel, Wild & Travis, P.C., 111 Great Neck Road, Great Neck, New York 11021, Special Corporate Counsel to the Debtor, Attn.: Burton Weston, Esq.; (iii) the Office of the United States Trustee for the Southern Dis-

15

trict of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn.: Andrea B. Schwartz, Esq.; (iv) Alston & Bird, LLP, counsel to the Official Committee of Unsecured Creditors, 90 Park Avenue, New York, New York 10016, Attn.: Martin Bunin, Esq. and Craig Freeman, Esq.; (v) Klestadt & Winters, LLP, counsel to DIP Lender, 292 Madison Avenue, New York, New York 10017, Attn.: Tracy Klestadt, Esq. and Sean Southard, Esq.; (vi) Proskauer Rose LLP, attorneys for the Purchaser, 1585 Broadway, New York, New York 10036, Attn.: Jeffrey Levitan, Esq.; and (vii) all other parties that requested notice by filing notices of appearance in this Chapter 11 case. Only timely filed and served responses, objections, and other pleadings will be considered by this Court at the Sale Hearing.

26. The failure of any person or entity to timely file its objection to the Motion shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion or the relief requested therein, or to the consummation of the Sale contemplated by the Purchase Agreement or agreement with the Successful Bidder(s), if any (including the transfer of the Assets free and clear of Liens).

**Assumed Contracts and Leases**

27. The Debtor shall file a copy of a schedule of contracts to be assumed and assigned under the Purchase Agreement (the "Assumption Schedule") with the Court no later than 15 days prior to the Objection Deadline and shall concurrently serve notice of such schedule upon all counterparties to the Assumed Contracts and the Notice Parties. All non-Debtor parties to the Assumed Contracts shall have until the

16

Objection Deadline to file an objection (an "Assumption Objection") to the assumption and assignment of the Assumed Contracts listed on the Assumption Schedule to which they are parties, or to the Cure Amounts listed for those Assumed Contracts. Any party filing an Assumption Objection shall state with specificity the basis of the objection and what Cure Amount it asserts, and shall include appropriate documentation in support thereof.

28. The Assumption Schedule shall identify the proposed Assumed Contracts and the corresponding cure amounts required by section 365 of the Bankruptcy Code (the "Cure Amounts"), if any. The Debtor, with the consent of the Purchaser or the Successful Bidder(s), as applicable, in the Purchaser's or the Successful Bidder(s) sole and absolute discretion, unless otherwise provided with the submission of a Bid, shall have the right to amend the Assumption Schedule before the fifteenth (15th) business day prior to the closing of the Sale to add or remove contracts or leases to the Assumption Schedule.

29. The Debtor shall file and serve notice of any such amendment (an "Amendment Notice") on all non-Debtor parties to the Assumed Contracts added to the Assumption Schedule by that amendment. All non-Debtor parties to the Assumed Contracts added to the Assumption Schedule pursuant to this paragraph shall have until fifteen (15) days after the date of service of the applicable Amendment Notice to file an objection.

30. If an Assumption Objection is timely filed and not consensually resolved, this Court may hold a hearing with respect to such Assumption Objection either

at the Sale Hearing or at such other date as this Court shall designate. If the Assumption Objection relates only to the Cure Amount of an Assumed Contract, that Assumed Contract may be assumed by the Debtor and assigned to the Purchaser or the Successful Bidder(s), as applicable, <u>provided</u>, <u>however</u>, that the amount asserted by the objecting party as the proper Cure Amount, or a different amount set by this Court, shall be held in escrow pending further order of this Court or mutual agreement of the parties as to the proper Cure Amount for that Assumed Contract. The Debtor (after consultation with the Creditors' Committee) and the Purchaser or the Successful Bidder(s), as the case may be, are hereby authorized to settle, compromise, or otherwise resolve any disputed Cure Amounts with the relevant non-Debtor party to any Assumed Contract without Court approval or notice to any party.

31. If no Assumption Objection is timely filed and served, and subject to entry of an Order by this Court at the Sale Hearing approving the Sale and proposed assumption and assignment of the Assumed Contracts in connection therewith, the Cure Amounts set forth in the Assumption Schedule, as amended, shall be controlling notwithstanding anything to the contrary in such Assumed Contracts, and the non-Debtor parties to the Assumed Contracts shall be barred from asserting against the Debtor or the Purchaser (or the Successful Bidder(s)) any other claim arising from the applicable Assumed Contracts.

32. The effective date of any assumption and assignment of any Assumed Contract shall be the date on which the Sale closes. Any Cure Amounts to be paid under any Assumed Contract shall be paid by the Purchaser (or Successful Bid-

der(s), as applicable) either prior to, upon, or promptly following the closing of the Sale or as otherwise agreed to by the parties to the Assumed Contract.

### **Additional Provisions**

33. The Debtor is authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the notice requirements established by this Order.

34. Nothing contained in this Order precludes any party in interest from objecting to the Sale in accordance with the objections procedures set forth herein and no party shall be deemed to have consented to the Sale by virtue of not having objected to the Procedures Motion.

35. This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order, including jurisdiction to allocate the consideration paid for some or all of the Assets to each individual asset, as necessary, to determine the proceeds to which a Lien attached.

Dated: New York, New York
December 30, 2009

                                                  **s/Arthur J. Gonzalez**
                                                  HONORABLE ARTHUR J. GONZALEZ
                                                  UNITED STATES BANKRUPTCY JUDGE