## Bidding Procedures

Set forth below are the bidding procedures (the "Bidding Procedures")[1] with respect to the sale by the Seller of the real property and related assets (collectively, the "Assets") described in that certain Contract of Sale (the "Purchase Agreement") by and between Cabrini Medical Center (the "Seller") and Cabre Partners LLC (the "Purchaser"), including but not limited to those assets described in Section 2.1.1 of the Purchase Agreement.

## Notice

The Seller shall provide notice of the Bidding Procedures and the date for a hearing to approve the sale of the Assets (the "Sale Hearing"), together with a copy of the Purchase Agreement, to all parties identified by the Seller as potentially having an interest in acquiring some or all of the Assets.

## Due Diligence

Parties interested in conducting due diligence should contact the Seller's real estate broker, Grubb & Ellis New York Inc. ("G&E"), attention Neil C. Helman at (212) 326-4999 or Vincent Carrega at (212) 326-4929. Any entity that wishes to conduct due diligence with respect to the Assets, other than the Purchaser must (i) deliver to the Seller or G&E an executed confidentiality agreement in form and substance satisfactory to the Seller in its sole and absolute discretion; (ii) deliver to the Seller or G&E a written non-binding expression of interest, reasonably acceptable to the Seller in its sole and absolute discretion, regarding the purchase of all or substantially all of the Assets, that includes a purchase price range, the proposed structure and financing, if any, of the transaction, any additional conditions to closing that such entity may wish to impose, and the nature and extent of additional due diligence such entity may wish to conduct; and (iii) be deemed by the Seller, in its sole and absolute discretion after consultation with (a) its legal counsel, (b) G&E, (c) the professionals of the statutory committee of unsecured creditors appointed in the Seller's Chapter 11 case (the "Creditors' Committee") and (d) Missionary Sisters of the Sacred Heart, a non-for-profit corporation organized under the laws of the State of Illinois, the post-petition lender (the "DIP Lender"), to be reasonably likely to be able to obtain necessary regulatory approvals, if any, and to be able to fund the consummation of its proposed transaction, if selected as the Successful Bidder (as defined below), within a time frame acceptable to the Seller (such person or entity, a "Potential Bidder").

After compliance with the foregoing, the Seller shall allow potential Bidders to conduct due diligence with respect to the Assets; <u>provided</u>, <u>however</u>, that the Seller shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined below).

---

[1]   Capitalized terms not defined herein shall have the meaning ascribed to them in the Purchase Agreement or Sale Motion.

## **Qualified Bid Requirements**

To be considered, any bid submitted by a Potential Bidder for some or all of the Assets must

1. include language

    a. stating that the bid is irrevocable through the earlier of the Closing Date and thirty (30) days after the entry of the Sale Order, provided, however, that (a) if the Qualified Bid becomes the Successful Bid, such bid shall be irrevocable through the Closing Date or such earlier date as the Purchase Agreement may be terminated in accordance with its terms and (b) and in the case of the Second Highest Bid (as defined in the Bidding Procedures), such bid shall remain irrevocable through the earlier of (A) the closing of the sale of all Covered Assets (as defined in the Bidding Procedures) covered by the Second Highest Bid and (B) thirty (30) days after the entry of the Sale Order in respect of the Successful Bid (as defined below), unless the Successful Bidder fails to close and the Seller shall have given notice to the Second Highest Bidder that it has decided to consummate the transaction contemplated by the Second Highest Bid in which case the Second Highest Bid shall remain open through the closing with such Second Highest Bidder;

    b. stating that the Potential Bidder (i) has had an opportunity to conduct due diligence regarding the Covered Assets prior to making its offer and does not require further due diligence, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Covered Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Covered Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures;

    c. describing the regulatory approvals the Potential Bidder will need, if any, and any discussions the Potential Bidder has had with regulatory agencies pertaining to the acquisition of the Covered Assets; and

    d. stating that the Potential Bidder has obtained all necessary organizational approvals to make its competing bid and to enter into and consummate the transaction set forth in the Purchase Agreement and to acquire the Covered Assets;

2. be submitted in writing to (a) the Seller, Cabrini Medical Center, 227 East 19th Street, New York, NY 10003 (Attn: Diane Kniejski, President); (b) counsel for the Seller, Togut, Segal & Segal LLP, One Penn Plaza, Suite

2

      3335 (Attn: Frank A. Oswald); (c) Grubb & Ellis New York, Inc., real estate broker for the Seller, 1177 Avenue of the Americas, New York, NY 10036 (Attn: Neil C. Helman and Vincent Carrega); and (d) Alston & Bird, LLP, counsel for the Creditors' Committee, 90 Park Avenue, New York, New York 10016 (Attn: Martin Bunin, Esq.) and (e) Klestadt & Winters, LLP, counsel for the DIP Lender, 292 Madison Avenue, 17th Floor, New York, NY 10017 (Attn: Sean C. Southard), so as to be received no later than **January 25, 2010** at 4:00 p.m. (the "Bid Deadline") or such other date established by the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the Bidding Procedures Order. Upon receipt of a bid, the Seller shall deliver a copy thereof to counsel for the Purchaser (Attn: Jeffrey Levitan, Esq.).

In addition to the foregoing, a "Qualified Bidder" is a Potential Bidder that delivers a binding bid that satisfies the following:

      1.      the bid must be for assets (the "Covered Assets") on the same (or better) terms and conditions as those set forth in the Purchase Agreement, and must include two copies of an agreement substantially similar to the Purchase Agreement, one marked to show any changes thereto and the other clean and fully executed by the Potential Bidder;

      2.      includes a bid for a price and under terms which the Seller believes to be higher or better than the Purchaser's bid, in cash or other value, including cash equivalents if for all of the Assets;

      3.      is accompanied by a deposit (the "Bid Deposit") in an amount equal to at least 10% of the purchase price proposed by the Potential Bidder, in the form of a certified check, cash deposit, letter of credit from a rated institution in form satisfactory to the Seller or in such other form as is acceptable to the Seller;

      4.      is accompanied by sufficient information, including to demonstrate, in the Seller's sole discretion, after consultation with the Creditors' Committee and the DIP Lender, that the Potential Bidder has the financial ability to timely consummate the proposed transaction, including, but not limited to, current bank account statements, current audited financial statements, commitments or other proof of available financing, and such other forms of financial disclosure and credit quality in support of such Potential Bidder (including financial information from any entities that will finance or guarantee the obligations of such Potential Bidder);

      5.      discloses the organizational form, and briefly describes the business conducted by, the Potential Bidder;

      6.      provides evidence of the Potential Bidder's ability to provide adequate assurance of future performance, including such adequate assurance as may be required under section 365 of the Bankruptcy Code, to counterparties under contracts and leases proposed by the Potential Bidder to be assumed by the Seller and assigned to the Potential Bidder;

      7.    is firm and unconditional and not subject to any contingencies (other than satisfaction of any financing requirements as referred to above) that are not also applicable to the Purchase Agreement including, without limitation, further due diligence review or receipt of less than fully committed and unconditional grants or other subsidies.

      Following entry of the Bidding Procedures Order, the Seller, in its sole and absolute discretion after consultation with its professionals and the DIP Lender and the Creditors' Committee, may reject any competing bid that is on terms that are more burdensome or conditional than the terms of the Purchase Agreement; requires any indemnification of the Potential Bidder other than as set forth in the Purchase Agreement; includes non-cash or non-cash equivalent consideration; is contingent on receiving uncommitted funds from a governmental authority; entitles the Potential Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment; is not in conformity with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the Local Bankruptcy Rules of the Bankruptcy Court; is from an entity that the Seller, in its sole and absolute discretion, after consultation with the DIP Lender and the Creditors' Committee, concludes does not have the financial ability to consummate the transaction or fulfill financial commitments under its proposal; or is contrary to the best interests of the Seller and its estate. Notwithstanding the foregoing, a Potential Bidder may submit a bid (a "Partial Bid") for a portion of the Assets, and the Seller may consider such Partial Bid. In addition, notwithstanding anything contained herein to the contrary, except for the provisions requiring the submission of a 10% deposit which shall not be modified or amended, the Seller shall have the right to entertain bids that do not conform to one or more of the requirements set forth herein and, notwithstanding anything herein or in the Bidding Procedures Order to the contrary, shall consult with the Creditors' Committee and the DIP Lender with respect to material decisions contemplated by the Bidding Procedures.

      The Seller may, in its sole and absolute discretion, communicate prior to the Auction or Sale Hearing with any Potential Bidder and may request any additional information reasonably required by the Seller in connection with the Seller's evaluation of such Potential Bidder's bid.

      Within two (2) business days after the Bid Deadline, the Seller shall inform each Potential Bidder that has submitted a bid whether it is a Qualified Bidder and shall contemporaneously advise the Purchaser of such determination(s). As soon as reasonably practicable after the Bid Deadline, but in any case prior to the Auction (as defined below), the Seller shall give the Purchaser and all Qualified Bidders a copy of all Qualified Bid(s) received to date.

      The Purchase Agreement executed by the Purchaser is a Qualified Bid and the Purchaser is a Qualified Bidder for all purposes, <u>provided</u>, <u>however</u>, notwithstanding anything herein to the contrary, the bid of the Purchaser shall terminate only in accordance with the Purchase Agreement.

### Sale to The Purchaser

If (i) no Qualified Bids have been submitted (other than that submitted by the Purchaser) by the Bid Deadline or (ii) the aggregate value of the highest Qualified Bid submitted by the Bid Deadline for the various Covered Assets (as determined by the Seller in its sole and absolute discretion, after consultation with its professionals and the DIP Lender and the Creditors' Committee) is for a price and under terms which the Seller believes to not be higher and/or better than the purchase price in the Purchase Agreement, the Seller will report the same to the Bankruptcy Court and proceed to seek approval of the Purchase Agreement and the transactions contemplated thereby.

### Auction

If the aggregate value of the highest or best Qualified Bid submitted (other than that submitted by the Purchaser) by the Bid Deadline for the various Assets (as determined by the Seller in its sole and absolute discretion) is for a price and under terms the Seller believes to be higher or better than the purchase price set forth in the Purchase agreement, an auction (the "Auction") for the Assets will take place on a date to be determined by the Bankruptcy Court and set forth in the Bidding Procedures Order. Subject to the terms of the Purchase Agreement, the Seller may, after consultation with its professionals and the DIP Lender and the Creditors' Committee, extend the deadlines set forth in the Bidding Procedures Order and/or adjourn, continue or suspend the Auction and/or the Sale Hearing for any reason, including to seek further clarification from the Bankruptcy Court regarding the Seller's right to assign certain contracts or leases, without further order of the Bankruptcy Court, by filing a notice with the Bankruptcy Court and serving such notice on all Potential Bidders.

Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction. The Seller will evaluate all Qualified Bids received and, after consultation with its professionals and the DIP Lender and the Creditors' Committee, will select the Qualified Bid that reflects the highest or best offer for the Assets as the "Starting Auction Bid." The Seller may choose more than one Qualified Bid as a Starting Auction Bid if such Qualified Bids are for different Assets. In considering which Qualified Bid shall be the Starting Auction Bid, the Seller will consider, among other things, the Qualified Bid, the changes to the Purchase Agreement required by the Qualified Bid, the Qualified Bidder's ability to finance and timely consummate (including the likelihood of regulatory approval, if any, in the Seller's judgment) the purchase of the Covered Assets.

The following rules shall apply at the Auction: (i) the minimum initial overbid(s) must be, in the aggregate, at least $100,000 greater than the Starting Auction Bid(s), (ii) subsequent overbids must be, in the aggregate, in increments of at least $100,000. For purposes of determining whether the minimum overbid requirement has been satisfied, the Seller may aggregate bids for components of the Assets. From time to time, the Seller will, in an open forum, advise Qualified Bidders participating in the Auction of its determination as to the terms of the then highest or otherwise best bid for the Covered Assets. The Seller shall also consider the impact of the Break-Up Fee and the potential costs of satisfying the conditions of any bid.

Subject to the Purchase Agreement, the Seller, in its sole and absolute discretion after consultation with its professionals and the DIP Lender and the Creditors' Committee, may adopt other rules for the Auction at the Auction that, in its reasonable judgment, will better promote the goals of the Auction, provided, however, that the requirement of a 10% deposit shall not be modified or amended. All such rules will provide that: (i) the procedures must be fair and open, with no participating Qualified Bidder disadvantaged in any material way as compared to any other Qualified Bidder and (ii) all bids shall be made and received in one room, on an open basis, and all bidders shall be entitled to be present for all bidding with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each Qualified Bid shall be fully disclosed to all other bidders throughout the entire Auction. Nothing herein shall prohibit the Seller from meeting privately with any Qualified Bidder to negotiate the terms of a bid or overbid.

During the Auction, the Seller will review each bid or overbid submitted by a Qualified Bidder in order to identify, in its sole and absolute discretion after consultation with its professionals and the DIP Lender and the Creditors' Committee, the bid or overbid that constitutes the highest or otherwise best bid for some or all of the Assets. The Seller will consider, among other things, (i) the amount of consideration offered under the Qualified Bid; (ii) the amount and nature of liabilities assumed; (iii) the changes to the Purchase Agreement required by the Qualified Bid; and (iv) the Qualified Bidder's ability to finance and timely consummate (including the likelihood of regulatory approval if any, in the Seller's judgment) the purchase of the Covered Assets. The Seller will also consider the Qualified Bid's impact on the ability to minimize the Seller's losses incurred before the Closing Date based on the terms and timing provided in the bid. The bid that is selected by the Seller as the highest or otherwise best bid for the Assets will be considered the "Successful Bid" and such bidder the "Successful Bidder." Subject to the provisions of the Purchase Agreement, within forty-eight (48) hours of the conclusion of the Auction, the Successful Bidder shall increase its deposit to 10% of the purchase price set forth in the Successful Bid.

Any bid submitted after the conclusion of the Auction shall not be considered for any purpose unless an order of the Bankruptcy Court is entered directing that such bid be considered, and neither the Seller nor any other person shall have any obligation to seek such an order from the Bankruptcy Court.

Except as provided in the Purchase Agreement, the second highest or otherwise best bid (the "Second Highest Bid" and such bidder, the "Second Highest Bidder"), as determined by the Seller at the conclusion of the Auction and approved by the Bankruptcy Court at the Sale Hearing, shall remain open and irrevocable until the earlier of (a) the closing of the sale to the Successful Bidder or (b) thirty (30) days after entry of the Sale Order. In the event that, for any reason, the Successful Bidder fails to close the transaction contemplated by its Successful Bid within thirty (30) days after entry of the Sale Order, the Seller, in its sole and absolute discretion, may elect to regard the Second Highest Bid as the highest or best bid for the Assets, and the Seller will be authorized to consummate the transaction contemplated by the Second Highest Bid without further order of the Bankruptcy Court.

### The Sale Hearing and Return of Deposits

The Sale Hearing will be held at a date and time established by the Bankruptcy Court in the Bidding Procedures Order. At the Sale Hearing, the Seller will seek entry of a Sale Order, among other things, authorizing and approving a proposed transaction: (i) if no Auction is held or if the Purchase Agreement is the Successful Bid, with the Purchaser pursuant to the terms and conditions set forth in the Purchase Agreement, or (ii) if a Qualified Bid other than the Purchase Agreement is determined by the Seller after the Auction to be the Successful Bid, with the Successful Bidder pursuant to the terms and conditions set forth in the Successful Bid. Subject to the Purchase Agreement and the terms of the Successful Bid, the Sale Hearing may be adjourned or rescheduled at the Seller's sole and absolute discretion and the Seller will notify all relevant parties of such adjournment or rescheduling in an appropriate manner, including by an announcement of the adjourned date at the Sale Hearing.

No offer shall be deemed accepted unless and until it is approved by the Bankruptcy Court.

In the event the Purchaser or any Successful Bidder fails to consummate the purchase of the Assets because of a breach or failure to perform on the part of such bidder, the bidder's Bid Deposit shall be forfeited to the Seller provided that the Seller reserves the right to seek all available damages from the defaulting bidder, *provided however* that in the case of the Purchaser's Bid Deposit, the treatment thereof shall be governed by the terms of the Purchase Agreement and the Seller's right to seek additional damages will be subject to the terms of the Purchase Agreement.

Except as provided in the Purchase Agreement, all Bid Deposits, other than the Bid Deposit of the Successful Bidder and the Second Highest Bidder, will be returned within three (3) business days following entry of the Sale Order. Except as provided in the Purchase Agreement, the Bid Deposit of the Second Highest Bidder will be returned as soon as practicable following the earlier of (A) the closing of the sale with the Successful Bidder pursuant to the Successful Bid and (B) thirty (30) days after entry of the Sale Order, unless the Seller has elected to regard the Second Highest Bid as the highest or best bid for the Assets, as described above. Except as otherwise provided in the Purchase Agreement, the Seller will not be required to maintain any Bid Deposit in an interest bearing account, but any interest earned on any Bid Deposit will be remitted to the appropriate Qualified Bidder if the Bid Deposit is returned to the Qualified Bidder pursuant to the above. Subject to the Purchase Agreement in the case of the Purchaser's Bid Deposit, Bid Deposits may only be used in accordance with the terms of these Bidding Procedures.

### Jurisdiction

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the sale of the Assets, the Bidding Procedures, the Sale Hearing, the Auction, the Purchase Agreement, and/or any other matter that in any way relates to the foregoing.