| | |
|---|---|
| TOGUT, SEGAL & SEGAL LLP | **HEARING DATE:** Feb. 3, 2010 at 9:30 a.m. |
| Counsel for Debtor and Debtor in Possession | **OBJECTION DATE:** Jan. 29, 2010 at 4:00 p.m. |
| One Penn Plaza, Suite 3335 | |
| New York, New York 10119 | |
| (212) 594-5000 | |
| Frank A. Oswald | |
| James J. Lee | |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                  :

In re:                                           :      Chapter 11
                                               :      Case No. 09-14398 (AJG)
CABRINI MEDICAL CENTER,        :
                                               :
                        Debtor.      :
                                               :
-------------------------------------------------------------x

**DEBTOR'S APPLICATION FOR ENTRY
OF AN ORDER AUTHORIZING THE
DEBTOR TO RETAIN GREAT AMERICAN
GROUP, LLC AS LIQUIDATION CONSULTANT,
AND (b) SELL CERTAIN ASSETS LOCATED AT THE DEBTOR'S
<u>PREMISES FREE AND CLEAR OF LIENS, CLAIMS OR ENCUMBRANCES</u>**

Cabrini Medical Center (the "Debtor"), as debtor and debtor-in-possession, by and through its undersigned counsel, respectfully states as follows:

**<u>BACKGROUND</u>**

1. On July 9, 2009 (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed. On July 29, 2009, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code.

2. On the Petition Date, the Debtor sought authority to obtain post-petition financing and authority to use cash collateral so that it would have the liquidity necessary to pursue an orderly sale or other transaction (the "Sale") for some or all of the Debtor's real property (the "Real Property"). On July 31, 2009, the Bankruptcy Court entered an interim order authorizing the Debtor's use of cash collateral and authority to borrow up to $2.3 million under a post-petition financing agreement with Missionary Sisters of the Sacred Heart, a not-for-profit corporation organized under the laws of the State of Illinois ("MSSH-ILL"). On November 4, 2009, the Bankruptcy Court entered a final order (the "DIP Order") continuing the Debtor's use of cash collateral and authorizing the Debtor to borrow up to $5 million from MSSH-ILL.

3. Pursuant to the DIP Order, and subject to certain limitations described therein, MSSH-ILL was granted first priority priming liens on all present and after-acquired personal property of the Debtor, including, but not limited to, miscellaneous furniture, fixtures and equipment (the "Assets").

4. On December 4, 2009, the Debtor filed a motion to, <u>inter alia</u>, sell the Real Property and to establish certain bidding procedures. In connection therewith, the Bankruptcy Court entered an Order, dated December 30, 2009, establishing, among other things: (i) January 25, 2010 as the deadline for submitting competing bids, (ii) January 28, 2010 as the date of the auction for the Real Property, and (iii) February 3, 2010 as the hearing to consider, among other things, approval of the Sale to the successful purchaser (the "Sale Hearing").

5. As a condition to the Sale closing, the successful purchaser will necessarily require that the Debtor remove certain of the tangible property located in the Real Property, including the Assets, which are believed to have significant value.

Accordingly, the Debtor seeks to retain an experienced liquidator to assist the Debtor with the disposition of the Assets.

**SUMMARY OF RELIEF REQUESTED**

6.  The Assets consist of, but are not limited to: hospital beds, surgical equipment, instruments, supplies, IT equipment, and office furniture (i.e., desks, chairs, file cabinets and the like) that are no longer needed by the Debtor.

7.  The Debtor, in consultation with the Creditors' Committee and MSSH-ILL, has determined that it is in the best interest of its estate retain an experienced liquidator to market and auction the Assets. After soliciting the proposals of other liquidators and offers submitted by third parties to purchase the Assets, the Debtor has concluded that Great American Group, LLC ("Great American") has the experience and expertise to efficiently and effectively liquidate the Assets, and has offered to do so on terms most favorable to the Debtor than those offered by other parties.

8.  By this Application, the Debtor seeks entry of an order, in substantially the form attached hereto as Exhibit "1," approving (i) the retention of Great American, pursuant to the terms of the Liquidation Agreement (the "Agreement"), annexed hereto as Exhibit "2," as the Debtor's liquidation consultant pursuant to sections 327(a) and 328 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and (ii) the sale of the Assets free and clear of all liens, claims, encumbrances and other interests pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004. In support of the relief requested in this Application, and in particular the retention of Great American, the Debtor submits the declaration of Ross Ettin (the "Ettin Declaration"), attached hereto as Exhibit "3."

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this application (the "Application") pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The statutory predicates for the relief sought herein are sections 105, 327, 328 and 363(b) and (f) of the Bankruptcy Code and Bankruptcy Rules 2002, 2014 and 6004.

## THE DEBTOR SHOULD BE AUTHORIZED TO RETAIN GREAT AMERICAN PURSUANT TO SECTIONS 327(a) AND 328 OF THE BANKRUPTCY CODE

11. The Debtor has no experience in liquidating large quantities of assets, and attempting to do so without the assistance of an experienced liquidator would require the Debtor's management, which consist of only two employees, to dedicate a significant amount of time and effort to the sale of the Assets.

12. Accordingly, the Debtor, after consultation with the Creditors' Committee and MSSH-ILL, seeks to employ and retain Great American pursuant to Bankruptcy Code sections 327(a) and 328, Bankruptcy Rule 2014(a), and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York ("LBR"), to assist the Debtor with the sale of the Assets.

13. Great American is one of the country's leading asset disposition firms. In addition to helping companies maximize the value of their assets, Great American manages human resources, real estate relationships, and other critical areas that are affected when companies liquidate assets. Great American's management team and partners have managed thousands of stores and billions of dollars in inventory, and have many years of experience in obtaining maximum value for assets. Significantly,

4

Great American's management team has managed several recent healthcare-related asset sales, including those of Doctors' Hospital in Springfield, Illinois; St. Agnes Hospital in White Plains, New York; Osteopathic Medical Center in Fort Worth, Texas; Granada Hills Community Hospital in Granada Hills, California; Edgewater Medical Center in Chicago, Illinois; Waltham Hospital in Waltham, Massachusetts; Franciscan Medical Center in Dayton, Ohio; Weinberger Surgical Center in Merrillville, Indiana; Brea Community Hospital in Brea, California; and Elastar Community Hospital in East Los Angeles, California. Moreover, Great American has been involved in numerous chapter 11 cases of large healthcare providers in New York, including, among others, Saint Vincents Catholic Medical Centers of New York (S.D.N.Y., Case No. 05-14945), Victory Memorial Hospital (E.D.N.Y., Case No. 06-44387), and The New York United Hospital Medical Center (S.D.N.Y., Case No. 04-23889).

14. Furthermore, as described below, the compensation arrangement with Great American is structured to provide Great American with the incentive to obtain the highest possible price for the Assets while still minimizing the risk to the Debtor that is inherent in any private sale. In addition, the Debtor will not be required to pay Great American any compensation until the Assets are actually sold. As such, the retention of Great American pursuant to the terms of the Agreement will allow the Debtor to convert assets that are not generating revenue for its estate (in fact, the Debtor's possession of the Assets may delay the timely closing of the Sale of the Real Property upon the anticipated Bankruptcy Court approval of such Sale) into potentially hundreds of thousands of dollars, at a relatively low cost and risk to the Debtor.

Scope of Great American's Services

15. Subject to the Bankruptcy Court's authorization, the Debtor will engage and retain Great American as its sole and exclusive liquidator with regard to the

5

sale of the Assets. Pursuant to the Agreement, Great American will sell the Assets live and on an online format, which Great American anticipates will occur on or about 45 days after entry of an Order approving Great American's retention as liquidation consultant, and the sold Assets will be removed prior to March 31, 2010 (the "Removal Date").

16. In furtherance of this goal, Great American will perform the services set forth in the Agreement, including the following:

    a. supervise the inspection of the Assets and conduct the sale;

    b. implement advertising (including brochures and web site listings) to sell the Assets;

    c. provide such other related services deemed necessary or prudent by the Debtor and Great American under the circumstances; and

    d. provide the Debtor with reporting and reconciliation of all accounting information in a form reasonably acceptable to the Debtor.

17. Great American shall be responsible for obtaining, in the name of and with the assistance of the Debtor, any permits or licenses necessary to conduct the sale. Any purchaser of the Assets will be required to remove the purchased Assets from the Debtor's premises, at the purchaser's cost, by the Removal Date. Great American will supervise the removal of Assets to ensure that it is completed without damage to the Assets or the Debtor's real or personal property.

18. All services provided by Great American will be, and have been, performed at the request of the Debtor and in consultation with the Creditors' Committee and MSSH-ILL.

## Great American's Disinterestedness

19. To the best of the Debtor's knowledge, Great American and its employees are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code. Great American and its professionals do not have any connection with or hold any interest adverse to the Debtor, its creditors or any other party in interest, or its respective attorneys and other professionals, except as may be set forth in the Ettin Declaration. Specifically, Great American and its employees:

   a. are not creditors, equity security holders or insiders of the Debtor;

   b. is not and was not, within two years before the date of the filing of the petition, a director, officer or employee of the Debtor;

   c. do not have an interest materially adverse to the interest of the estate or of any class of creditors, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

20. Great American will conduct an ongoing review of its files for the duration of its retention, and if any new relevant facts or relationships are discovered, Great American will supplement its disclosure to the Bankruptcy Court.

21. The Debtor's knowledge, information and belief regarding the matters set forth in this Application are based, and made in reliance upon, the Ettin Declaration and other information provided by Great American.

## Compensation

22. Pursuant to the terms of the Agreement, Great American has guaranteed a minimum $200,000 in proceeds from the sale of the Assets (the "Guaranteed Amount"). The next $60,000 in available proceeds (the "Proceeds") shall

be paid to Great American as reimbursement of its expenses. Any additional Proceeds after $260,000 shall be divided eighty-five percent (85%) to the Debtor and fifteen percent (15%) to Great American (the "Commission"). Great American shall be allowed to charge purchasers of the Assets a fee of up to thirteen percent (13%) (the "Buyer's Premium"). Any Buyer's Premium collected shall not be considered Proceeds for the purpose of calculating the Commission.

23. The Debtor, in consultation with the Creditors' Committee and MSSH-ILL, have determined that the proposed commission structure, given the Guaranteed Amount and the nature, age and value of the individual Assets, properly reflects the valuation and the risk involved in the sale of the Assets.

24. Pursuant to the Agreement, Great American shall keep records of the sale price and Proceeds of the Assets, as well as any expenses it incurs. Within twenty (20) business days following the completion of the sale of the Assets, Great American shall provide the Debtor with a final written accounting of the Proceeds and a statement of the balance due to Great American. Such summary shall satisfy any requirements of Great American regarding requirements with Bankruptcy Code under sections 327, 328, 330, 331 and 363 of the Bankruptcy Code and Bankruptcy Rule 2016 with respect to Great American's compensation.

25. The compensation terms described above and addressed more fully in the Agreement is subject to approval of the Bankruptcy Court. However, the Debtor requests that Great American not be required to file formal applications for approval of its compensation. Instead, within thirty (30) days after the Removal Date, the Debtor shall file a summary (the "Summary") of Proceeds and Buyer's Premiums realized from the sales of the Assets, and serve notice of the Summary on all parties that received notice of this Application. The Summary shall be in full satisfaction of any and all

requirements for the filing of an application for the payment of fees and other filings required of professionals, including but not limited to those imposed by section 327, 328, 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016. Great American is required to prepare and provide the Debtor with such data, reports and related information and materials as the Debtor shall reasonably require from Great American in order to complete and file the Summary in a timely manner.

26. Any party in interest may object to the Debtor's payment to Great American of the compensation due under the terms of the Agreement, as described in the Summary, within fifteen (15) days of the Debtor filing the Summary. If no objections to the Summary are timely filed, or if an objection is filed and is ultimately resolved by the Debtor, the Debtor requests that it be authorized to pay to Great American all sums due under the terms of the Agreement as stated in the Summary. If an objection to the Summary is filed and not resolved by the Debtor, the Debtor will schedule a hearing before the Bankruptcy Court to request approval of all fees earned by Great American.

27. The Debtor submits that the retention of Great American on the terms and conditions set forth in the Agreement, as summarized herein, is fair, reasonable, and in the best interests of the Debtor and its estate. The Agreement is a commercially reasonable compensation and retention agreement for a liquidator. Bankruptcy courts have approved the retention of liquidators on similar terms in other cases. See e.g., In re Saint Vincents Catholic Medical Centers of New York, Chapter 11 Case No. 0514945 (ASH) (Bankr. S.D.N.Y. July 7, 2005) (authorizing the employment and retention of liquidator as exclusive agent and auctioneer of the debtors' surplus assets); In re Parmalat USA Corp. et al., Chapter 11 Case No. 04-11139 (RDD) (Bankr.

S.D.N.Y. June 25, 2004) (same); In re Victory Memorial Hospital, et al., Chapter 11 Case No. 06-44387 (CEC) (Bankr. E.D.N.Y. November 15, 2006) (same).

28. Accordingly, the Debtor requests that the Agreement, and the retention of Great American, pursuant to section 327 and 328 of the Bankruptcy Code, Bankruptcy Rule 2014(a) and LBR 2014-1, be approved.

**THE DEBTOR SHOULD BE AUTHORIZED TO SELL
THE ASSETS BY PRIVATE SALE, FREE AND CLEAR OF
ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

29. By this Application, the Debtor further seeks, pursuant to Bankruptcy Code sections 363(b) and (f) and Bankruptcy Rule 6004, authorization to sell the Assets by private sale, free and clear of all liens, claims, encumbrances and other interests.

Sale of Assets by Private Sale

30. Bankruptcy Code section 363(b) governs transactions outside the ordinary course of business involving property of the debtor's estate. Specifically, that section provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…." 11 U.S.C. § 363(b).

31. Under applicable case law, a transaction must represent a reasonable exercise of business judgment on the part of the debtor in possession to be approved under section 363(b) of the Bankruptcy Code. See e.g., In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1992); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 772 F.2d 1063 (2d Cir. 1983); In re Adelphia Communications Corp., No. 02-41729 (REG) (Bankr. S.D.N.Y. July 31, 2002). See also In re Integrated Res., Inc., 147 B.R. 650 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 29 (2d Cir. 1993), quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985) ("the business judgment rule 'is a

presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company,'" which has continued applicability in bankruptcy).

32. Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Courts often allow a chapter 11 debtor to sell assets outside the ordinary course of business by private sale when the debtor demonstrates that the sale is permissible pursuant to section 363(b) of the Bankruptcy Code. See, e.g., Palermo v. Pritam Realty, Inc. (In re Pritam Realty, Inc.), 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); In re Condere Corp., 228 B.R. 615 (Bankr. S.D. Miss. 1998) (approving a private sale of a chapter 11 debtor's assets where the standards of section 363(b) were met); In re Wieboldt Stores, Inc., 92 B.R. 309 (N.D. Ill. 1988) (affirming the right of a chapter 11 debtor to transfer assets by private sale). Cf. In re Embrace Systems Corp., 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) (holding that a private sale of a chapter 11 debtor's assets is appropriate if all provisions of section 363 are followed, the bid is fair and the sale is in the best interests of the estate and its creditors).

33. In addition, Bankruptcy Code section 105(a) grants the Bankruptcy Court the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This provision is "the basis for a broad exercise of power [by the Bankruptcy Court] in the administration of the bankruptcy case." In re Flores, 291 B.R. 44, 54 (Bankr. S.D.N.Y. 2003) (quoting 2 COLLIER ON BANKRUPTCY, ¶ 105 at 105-5 (Lawrence P. King, et al. eds., 15th ed. Rev. rel. 2000)).

34. The Debtor's decision to liquidate the Assets through a private sale squarely falls within the ambit of the Debtor's exercise of sound and reasonable business judgment. As noted above, the Assets are no longer needed; they have become obsolete and burdensome to the Debtor and currently generate no revenue for the Debtor's estate. More importantly, the Debtor fully anticipates Bankruptcy Court approval of the Sale of the Real Property after consideration at the Sale Hearing. The Assets need to be properly and timely removed from the Debtor's premises prior to the closing of the Sale. The sale of the Assets will allow the Debtor to obtain value from the Assets, while saving it the administrative expense of having them removed from the premises.

35. The sale of the Assets pursuant to a private sale process, rather than through a court-approved auction process, will enable the Debtor to maximize the value of the Assets. Given the number and *de minimis* value of the Assets that will be liquidated, selling the Assets through a public auction pursuant to traditional court-approved bidding procedures would be costly and burdensome, and would consume a substantial amount of the proceeds of the sale of the Assets. In contrast, the private sale process provided for in the Agreement will generate an aggregate sale price substantially similar to that which could be expected form a sale of the Assets at a court-approved auction, at a fraction of the cost to the Debtor's estate. In fact, as further described below, Great American will offer the assets for sale through an auction, where appropriate, which largely obviates any concern regarding the possibility of obtaining a higher price for the Assets at auction rather than private sale. Further, Great American will prepare the Assets for auction, and conduct the auction, at far less cost to the Debtor's estate than that imposed by a court-approved auction process. Great American will put together advertising materials with respect to the Assets, clean,

organize, and otherwise prepare the Assets for sale, lot the Assets for auction, provide for an inspection of the Assets, and hold an auction for the Assets. To the extent Assets are not sold at auction, Great American will attempt to liquidate such assets through other means, bringing further value to the Debtor's estate from the Assets.

36. As such, the sale of the Assets pursuant to the Agreement with Great American represents the most efficient use of the Debtor's resources and will generate the greatest value from the Assets. The sale process set forth in the Agreement is appropriate given the limited aggregate value of the Assets and the high cost of selling assets by court-approved auction under section 363(b) of the Bankruptcy Code.

37. Given the high cost of conducting a court-approved auction process, and the fact that the Agreement contemplates a private sale process that includes an auction, the sale of the Assets through a private sale pursuant to the terms of the Agreement is clearly in the best interest of the Debtor and its estate. The Debtor, through the Agreement, has structured a sale process that will maximize the return for the Assets while minimizing the cost and impact on the Debtor of selling the Assets. Selling the Assets through the private sale process described in the Agreement is therefore within the Debtor's sound business judgment.

<u>Sale Free and Clear of Liens, claims, Encumbrances and Other Interests</u>

38. Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property under Bankruptcy Code section 363(b) free and clear of liens, claims, encumbrances, and other interests if one of the following conditions is satisfied: (i) applicable nonbankruptcy law permits the sale of the property free and clear of such interest; (ii) the entity holding the lien, claim, encumbrance or other interest consents to the sale; (iii) the interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property; (iv) the interest is in a bona

fide dispute; or (v) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. 11 U.S.C. § 363(f). See In re Smart World Tech., LLC, 423 F.3d 166, 169 n. 3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests. It thus allows purchasers … to acquire assets [from a debtor] without any accompanying liabilities."); In re Dundee Equity Corp., No. 89-B-10233, 1992 WL 53743, at *3 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

39. Bankruptcy Rule 6004(c) requires that a motion pursuant to section 363(f) of the Bankruptcy Code for authority to sell property free and clear of liens or other interests "shall be served on the parties who have liens or other interest in the property to be sold." Fed. R. Bankr. P. 6004(c).

40. The Assets are subject to a first priority priming lien in favor of MSSH-ILL pursuant to the DIP Order. MSSH-ILL has consented to the sale of the Assets free and clear of liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the proceeds of sale. Accordingly, the Debtor is entitled to seek approval of the sale under section 363(f)(2) of the Bankruptcy Code, free and clear of all liens, claims and encumbrances.

41. Additionally, the sale of the Assets pursuant to the Agreement will satisfy section 363(f) of the Bankruptcy Code because any entities holding liens on the Assets will have received notice of this Application. All parties in interest will be given sufficient opportunity to object to the relief requested in this Application, and any such entity that does not object to the auction and sale of the Assets free and clear of its lien(s) should be deemed to have consented. See Futuresource LLC v. Reuters Ltd., 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions

under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who *might* have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); Hargrave v. Township of Pemberton (In re Tabone, Inc.), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); Citicorp Homewoners Serv., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988) (same); see also In re Enron Corp., 2003 WL 21755006 at *2 (AJG) (Bankr. S.D.N.Y. 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)). As such, to the extent that no party holding a lien objects to the relief requested in this Application, the auction and sale of the Assets free and clear of all liens satisfied section 363(f)(2) of the Bankruptcy Code.

42. Further, the Debtor submits that section 363(f)(5) is satisfied by the auction and sale of the Assets, as the Debtor proposes that any liens on any Assets sold pursuant to the relief requested in this Application shall attach to the net proceeds of the sale of that Asset, subject to any claims and defenses the Debtor may possess with respect thereto. As such, the sale of the Assets free and clear of all liens satisfies section 363(f)(5) of the Bankruptcy Code.

43. Finally, as noted above, the Debtor has served notice of this Application on all parties that hold or claim to hold liens, including judgment liens, on the Assets. The Debtor submits that such service satisfies the notice requirements of Bankruptcy Rule 6004(c). The Debtor should therefore be authorized to sell the Assets free and clear of all liens, which such liens to attach to the proceeds of the sale of the applicable Asset.

## NOTICE

44. The Debtor has provided notice of this Application to (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel to the Creditors' Committee, (iii) counsel to MSSH-ILL, (iv) all parties asserting a lien or security interest against the Assets, and (v) those parties who have filed a notice of appearance in this case. The Debtor submits that given the circumstances and the notice of the relief requested herein, no other or further notice is required.

**WHEREFORE**, the Debtor requests entry of an Order (i) authorizing the retention of Great American Group, LLC as liquidation consultant pursuant to the terms of the Liquidation Agreement, and (ii) authorizing the Debtor to sell the Assets free and clear of liens, claims and encumbrances, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
January 12, 2010

TOGUT, SEGAL & SEGAL LLP,
Counsel for Debtor
 and Debtor in Possession,
By:

/s/ Frank A. Oswald
FRANK A. OSWALD
A Member of the Firm
One Penn Plaza, Suite 3335
New York, New York  10119
(212) 594-5000