Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Frank A. Oswald
Howard P. Magaliff

*Bankruptcy Counsel for
  the Debtor and Debtor in Possession*

Proposed Hearing Date: February 10, 2010
At: 9:30 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                              :
In re:                                        :   Chapter 11
                                              :   Case No. 09-14398 (AJG)
CABRINI MEDICAL CENTER,                       :
                                              :
                          Debtor.             :
                                              :
-------------------------------------------------------------x

**DEBTOR'S MOTION PURSUANT TO RULE 9019 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
FOR ORDER APPROVING A SETTLEMENT AND LEASE
SURRENDER AGREEMENT WITH GPDDC, L.L.C. AND
<u>RESOLVING OBJECTION TO THE DEBTOR'S SALE MOTION</u>**

TO THE HONORABLE ARTHUR J. GONZALEZ,
UNITED STATES BANKRUPTCY JUDGE:

    Cabrini Medical Center (the "Debtor"), as debtor and debtor in possession, by its attorneys Togut, Segal & Segal LLP, submits this motion for an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement and lease surrender agreement with GPDDC, L.L.C., a tenant in the Debtor's Building D, resolving GPDDC's objection to the Debtor's motion (the "Sale Motion")[1], *inter alia*, for an order authorizing the sale of the Debtor's assets

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Motion.

free and clear of liens, claims, encumbrances and other interests pursuant to section 363(f) of title 11, United States Code (the "Bankruptcy Code"), and respectfully states:

## BACKGROUND

1. Pursuant to this Court's Order, dated December 30, 2009, an auction for the Debtor's assets was held on January 28, 2010. SKI Realty was the successful bidder, with a bid of $83,100,000. A hearing on the Sale Motion to approve the successful bidder, originally scheduled for February 3, will be held on February 10 at 9:30 a.m. The successful bidder has conditioned its offer on the Debtor delivering the premises fee of existing tenancies. The Debtor has reached agreements in principal with its tenants to vacate their leased premises prior to closing of the sale.

2. GPDDC is the Debtor's largest tenant. It occupies approximately 5,170 square feet of space on the second floor of Building D (the "Leased Premises"), pursuant to a lease dated as of August 14, 2006. The lease is for a term of ten years from the later of (a) completion of GPDDC's construction and improvement of the leased premises, and (b) the date that GPDDC received its Certificate of Need. The lease provides for a five-year extension at GPDDC's option. GPDDC operates a digestive disease surgical center at the Leased Premises.[2]

3. GPDDC filed an objection (the "GPDDC Objection") to the Sale Motion, asserting, *inter alia,* that the Debtor could not sell its properties free and clear of GPDDC's lease pursuant to section 363(f) of the Bankruptcy Code without adequately protecting GPDDC's interest. GPDDC asserted that adequate protection pursuant to section 361 would require the Debtor to reimburse GPDDC for all costs incurred or to

---

[2] The majority member of GPDDC is Dr. Lawrence Ottaviano, who was a member of Cabrini's Board of Directors when the lease was entered into. Cabrini was a 25% LLC member of GPDDC until the spring of 2009.

2

be incurred by GPDDC in relocating to new space, including lost profits, in the total amount of approximately $5.5 million (the "Adequate Protection Claim").

4. The Debtor contested GPDDC's entitlement to the Adequate Protection Claim as asserted. In particular, the Debtor questioned whether certain components of the claim were properly included, such as lost revenue of $1.4 million, and whether the amounts of certain components were accurate or inflated, such as $300 per square foot for construction.

5. The Debtor acknowledges that pursuant to the applicable case law, GPDDC is entitled to adequate protection. GPDDC's leasehold interest is an interest in the Debtor's property for purposes of section 363(f), but the case law is not completely instructive as to what constitutes adequate protection when the debtor-lessor sells the leased premises free and clear of that interest.

6. Accordingly, the Debtor, in consultation with the DIP Lender and the Committee, and GPDDC had many discussions, meetings and other communications over the past few weeks in an effort to consensually resolve the Adequate Protection Claim. In addition, counsel for the Debtor and counsel for GPDDC had discussions with the New York State Department of Health to explore whether the process for GPDDC to obtain DOH approval, which is a condition of GPDDC's licensure, could be expedited.[3]

7. The failure to resolve the Adequate Protection Claim could result in a delay of the sale approval or at a minimum a sale closing past February, and much longer if there are appeals. Moreover, the Debtor's DIP facility expires on February 28, 2010, at which time the Debtor will have no funds with which to operate and maintain

---

[3] The process typically can take between 8 and 14 months.

the property, absent an additional infusion of funds from the DIP Lender or another source.

8. After concerted effort, the Debtor has reached an agreement with GPDDC to resolve the GPDDC Adequate Protection Claim.[4] As part of the proposed resolution, GPDDC will withdraw its objection to the sale and agree to surrender its lease and vacate the Leased Premises.

9. The terms of the agreement are set forth in a Settlement and Lease Surrender Agreement (the "Agreement"), a copy of which is attached as Exhibit "1." In summary terms, the Agreement provides as follows:

Timing:
- Scheduled Vacate Date - September 1, 2010
- Outside Vacate Date - December 1, 2010

Payment to GPDDC:
- $2,250,000 if Tenant vacates by the Vacate Date (the "Settlement Amount")

- Payment to be made if Actual Vacate Date is on or before:

    | 9/1/10: | $2,250,000 |
    | 10/1/10: | $2,200,000 |
    | 11/1/10: | $2,000,000 |
    | 12/1/10 | $1,750,000 |
    | after 12/1: | $1,400,000 minus costs to enforce eviction |

- GPDDC acknowledges that the Settlement Amount shall be payable solely out of the proceeds of the Sale and that the Agreement shall not give rise to any lien or claim against any asset of Debtor other than the proceeds of a Sale, provided that the Settlement Amount shall be paid as an initial disbursement of the gross Sale proceeds as a necessary cost of closing. In the event that the Sale shall not occur then the Settlement Amount shall be paid as an initial disbursement of the gross proceeds of, and a necessary cost of closing, any subsequent sale of the Property.

---

[4] The DIP Lender has expressed its consent to this agreement.

4

| | |
|---|---|
| Payment to Debtor: | In lieu of the payment of rent under Section 4.02 of the Initial Lease, GPDDC shall pay the amounts provided for under Article 4 of the Initial Lease on the first day of each month for use and occupancy (subject to such right of offset as may be provided for under the terms of the Initial Lease to the extent GPDDC shall have obtained directly services or utilities that Debtor was to provide under the terms of the Initial Lease as a result of Debtor's failure to do so). |
| Security: | • Payment out of sale proceeds to be provided for in Sale Order<br><br>    • if sale occurs before Tenant vacates then applicable portion of sale proceeds to be held in escrow<br><br>• Stipulation and Order - enforcement of eviction stayed until Outside Vacate Date<br><br>• "Bad Boy Guaranty" if enforcement of settlement, including the eviction order, is stayed by GPDDC's bankruptcy |
| Early Access to Funds: | If the sale closes prior to Tenant vacating and sale proceeds are escrowed pursuant to separate Escrow Agreement, then Tenant may access those funds for costs of relocation as follows:<br><br>• up to $100,000 upon execution of a lease for new location and submission of package for DOH approval;<br><br>• up to $350,000 (cumulative with any prior draw) upon issuance of building permit for build-out;<br><br>• up to $600,000 (cumulative with any prior draw) upon 50% completion of the build-out<br><br>• up to $850,000 (cumulative with any prior draws) upon issuance of temporary certificate of occupancy for new space<br><br>• balance to be paid upon Tenant's vacating |
| Misc: | • Mutual releases between Landlord and Tenant.[5] |

---

[5] Any claim that the Debtor's estate or the Creditors' Committee may have against any officer or director of the Debtor or former officer or director of the Debtor, relating to the Debtor's entry into the pre-petition and post-petition leases between the Debtor and Tenant, the occupancy of the Leased Premises by the Tenant or the administration of the leases, including but not limited to any officer or director of the Debtor, or former officer or director of the Debtor, who is or was a member, principal, principal of a member, or officer or director of Tenant..

## BASIS FOR THE RELIEF REQUESTED

10. Bankruptcy Rule 9019(a) provides, in relevant part, that: "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (*quoting Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

11. To approve a compromise and settlement under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise and settlement is fair and equitable, reasonable and in the best interests of the debtor's estate. *See, e.g., In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). In *Motorola, Inc. v. Official Committee of Unsecured Creditors, et al. (In re Iridium Operating, LLC)*, 478 F.3d 452 (2d Cir. 2007), the Second Circuit held that the phrase "fair and equitable" in the context of a settlement means that distributions of estate assets pursuant to a pre-plan settlement must generally satisfy the absolute priority rule that is codified in section 1129(b)(2)(B)(ii) of the Bankruptcy Code, but that strict compliance with the rule is not always required. The Court said:

> In the Chapter 11 context, whether a settlement's distribution plan complies with the Bankruptcy Code's priority scheme will often be the dispositive factor. However, where the remaining factors weigh heavily in favor of approving a settlement, the bankruptcy court, in its discretion, could endorse a settlement that does not comply in some minor respects with the priority rule if the parties to the settlement justify, and the reviewing court clearly articulates the reasons for approving, a settlement that deviates from the priority rule.

*Id.* at 464-65. The Second Circuit left intact the Bankruptcy Court's wide discretion to examine a proposed settlement within the framework of the myriad factors courts nor-

mally consider, including: (i) the balance between the litigation's possibility of success and the settlement's future benefits; (ii) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (iii) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (iv) whether other parties in interest support the settlement; (v) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (vi) "the nature and breadth of releases to be obtained by officers and directors"; and (vii) "the extent to which the settlement is the product of arm's length bargaining." *In re Iridium Operating, LLC*, 478 F.3d at 462, *citing In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006).

12. In exercising its discretion about whether to approve a settlement, the bankruptcy court must make an independent determination that the settlement is fair and reasonable. *Nellis v. Shugrue*, 165 B.R. 115, 122-23 (S.D.N.Y. 1994). The court may consider the opinions of the trustee or debtor in possession that the settlement is fair and reasonable. *Id.; accord In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993). In addition, the bankruptcy court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see Shugrue*, 165 B.R. at 123 ("the general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above"). A bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983).

7

13. The Debtor submits that the adequate protection payment, in the maximum amount of $2,250,000 if GPDDC vacates the Leased Premises by September 1, and decreasing thereafter until GPDDC is actually out of the space, is reasonable. In evaluating the $5.5 million Adequate Protection Claim, the Debtor consulted with several experts in the construction and real estate industries, and professionals knowledgeable about the DOH approval process, to determine whether the various components of the claim were appropriately stated or subject to challenge. Based on the Debtor's consultations and diligence, the Debtor concluded that many components of GPDDC's claim were either overstated in amount (*i.e.,* $300 per square foot for construction), unreasonable (*i.e.,* $1.4 million in lost revenue), or too long in timing (*i.e.,* nine months for construction). The Debtor, in consultation with the DIP Lender and the Committee, communicated its conclusions to GPDDC, which helped build a consensus about an appropriate settlement amount.

14. In exchange for the adequate protection payment, GPDDC is providing security to the Debtor to ensure that it will actually vacate the Leased Premises and comply with its obligations under the Agreement. <u>First</u>, GPDDC will only be paid out of the sale proceeds. <u>Second</u>, GPDDC is consenting to the immediate entry of an order of eviction, the enforcement of which will be stayed until December 1, 2010, the Outside Vacate Date under the Agreement. <u>Third</u>, GPDDC is providing the several guaranties of its principal members, to guarantee GPDDC's performance and all other obligations under the Agreement in the event of a GPDDC bankruptcy.

15. Under the sliding scale of decreasing payments to GPDDC pursuant to the Agreement, if GPDDC does not vacate the Leased Premises by December 1, 2010, the payment of $1,400,000 will further decrease by the amount of the costs and expenses incurred to evict GPDDC. The Debtor also recognizes that if GPDDC were to

file for bankruptcy, the Debtor's eviction of GPDDC could be stayed by section 362(a) of the Bankruptcy Code. The guaranty described above is intended to protect the estate in both cases. The guaranty covers not only GPDDC's failure to vacate, but also the failure to cause the Actual Vacate Date (as such term is defined in the Agreement) to occur on or prior to December 1, 2010. The guarantors will be responsible for sums, costs and charges to be paid by GPDDC, including damages suffered or incurred by the Debtor or its successor in interest as owner of the Leased Premises arising from the failure of GPDDC to perform under the Agreement in the event of a GPDDC bankruptcy.

16. The leading Circuit case that addresses a debtor-landlord's sale of its property free and clear of leasehold interests is *Precision Industries, Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537 (7th Cir. 2003). *Precision Industries* held that section 363(f) permits the sale of estate property free and clear of a lessee's possessory interest, but that the lessee is entitled to adequate protection under section 363(e). *See also In re Downtown Athletic Club of New York City, Inc.*, 2000 WL 744126 (S.D.N.Y.). The limited case law that addresses the issue, however, does not provide clear guidance about either the form or means of providing adequate protection, particularly in the case where, as here, the secured debt exceeds the purchase price for the assets. *Precision Industries* instructs only that: "'Adequate protection' does not necessarily guarantee a lessee's continued possession of the property, but it does demand, in the alternative, that the lessee be compensated for the value of its leasehold-typically from the proceeds of the sale." 327 F.3d at 548. If the Court feels adequate protection of an interest is required in favor of a certain party under section 363(e), the Court could compel the Debtor to make a cash payment or periodic cash payments to such party, grant an additional lien, or

"such other relief … as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." *See* 11 U.S.C. § 361.

17. The Debtor submits, under the foregoing factors and authorities, that the proposed settlement should be approved. The settlement will: (a) enable the Debtor to satisfy the closing condition of delivering vacant premises (if Cabrini cannot close because it is unable to deliver vacant possession, it must pay a $3 million break-up fee); (b) satisfy the Debtor's adequate protection obligations (without the need for up-front cash payments that would require additional DIP financing and create additional priming liens); (c) avoid litigation that could delay the sale process; (d) relieve the estate of carrying costs for the property of approximately $250,000-400,000 per month (the sooner Cabrini can close the sooner it can cut off these obligations); and (e) relieve the estate of future liabilities and obligations arising under or in connection with the lease via the surrender agreement and releases.

18. It should also be recognized that the Missionary Sisters of the Sacred Heart, a not-for-profit corporation organized under the laws of the State of New York ("MSSH-NY") and the Missionary Sisters of the Sacred Heart, a not-for-profit corporation organized under the laws of the State of Illinois ("MSSH-ILL", and together with MSSH-NY, the "MSSH Entities"), may bear a disproportionate share of the adequate protection payment to GPDDC if the same is paid as a cost of sale off the top at closing. The Leased Premises are in Building D, but the MSSH Entities do not have a prepetition lien on Building D. Nonetheless, to facilitate the sale of the property to SKI Realty, the Debtor understands that the MSSH Entities are willing to consent to *pro rat*a sharing of the adequate protection obligations across the five parcels that comprise the Debtor's property. Such sharing would result in approximately 80% of the amount of

such payment being made from the proceeds of the sale allocated to Buildings A, B and C. The Debtor submits that it is appropriate in the circumstances that the adequate protection payment is made out of the sale proceeds prior to any distributions to secured creditors.

19. The Debtor also submits that approval of the settlement is consistent with the Second Circuit's *Iridium* decision. Unlike the contemplated distribution in *Iridium*, the payment in this case is being made in fulfillment of the statutory mandates of sections 361 and 363(e) and (f), *i.e.*, as adequate protection of GPDDC's possessory leasehold interest which the Debtor seeks to sell free and clear of. The Debtor believes that on its face, *Iridium* is not relevant because the absolute priority rule is not implicated.

## NOTICE OF APPROVAL HEARING

20. The Debtor seeks entry of the Scheduling Order in the form attached as Exhibit "2" limiting the time and notice requirements for the hearing on the GPDDC Settlement Motion. The Debtor requests that notice be sufficient if the Scheduling Order and this Motion are served within two (2) business days of entry of the Scheduling Order by overnight mail or electronic transmission, on (i) counsel to the Creditors' Committee; (ii) counsel for the DIP Lender; (iii) the Office of the U.S. Trustee; and (iv) counsel for GPDDC; and by first class mail upon all other parties that filed notices of appearance in this Chapter 11 case (the foregoing are collectively referred to as the "Notice Parties").

21. This shortened notice is necessary given that the Sale Hearing will take place on February 3, 2010, and it is necessary that the resolution of the GPDDC Objection be approved and the objection withdrawn before an order approving the sale can be entered.

22. The Debtor proposes that responses, if any, to the GPDDC Settlement Motion must be made in writing, must state with particularity the reasons for the objection or response, and must be filed with the Clerk of the Bankruptcy Court, with copies delivered to the Bankruptcy Court and received by the Chambers of the Honorable Arthur J. Gonzalez, United States Bankruptcy Judge, United States Bankruptcy Court, One Bowling Green, Room 528, New York, New York 10004-1408, must conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, must set forth the name of the objecting party, the basis for the objection and the specific grounds therefor, and must be served upon: (i) the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn.: Andrea Schwartz, Esq.; (ii) Togut, Segal & Segal LLP, attorneys for the Debtor, One Penn Plaza, Suite 3335, New York, New York 10119, Attn.: Frank A. Oswald, Esq. and Howard P. Magaliff, Esq.; (iii) Garfunkel, Wild & Travis P.C., special counsel for the Debtor, 111 Great Neck Road, Great Neck, New York 11021, Attn.: Burton Weston, Esq.; (iv) Alston & Bird, LLP, attorneys for the Official Committee of the Unsecured Creditors, 90 Park Avenue, New York, New York 10016, Attn.: Martin Bunin, Esq. and Craig Freeman, Esq.; (v) Klestadt & Winters, LLP, counsel to the post-petition lender, 292 Madison Avenue, New York, NY 10017, Attn.: Tracy Klestadt, Esq. and Sean C. Southard, Esq.; and (vii) Cozen O'Connor, counsel to GPDDC, 457 Haddonfield Road, Suite 300, Cherry Hill, New Jersey 08002, Attn.: Arthur J. Abramowitz, Esq., so that they are filed and actually received by them not later than 4:00 p.m. on February 9, 2010. Only timely filed and served responses and objections should be considered by the Court at the hearing.

WHEREFORE, the Debtor respectfully requests that the Court enter an order in the form of Exhibit "3" approving the settlement with GPDDC, and grant such other and further relief as the Court considers appropriate.

Dated: New York, New York
February 2, 2010

CABRINI MEDICAL CENTER
Debtor and Debtor in Possession
By its attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

/s/ Frank A. Oswald
FRANK A. OSWALD
HOWARD P. MAGALIFF
One Penn Plaza, Suite 3335
New York, New York 10019
(212) 594-5000