UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
: 
In re: : Chapter 11
: Case No. 09-14398 (AJG)
CABRINI MEDICAL CENTER, :
:
Debtor. :
:
------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE APPROVING SALE OF DEBTOR'S REAL PROPERTY AND RELATED ASSETS TO S.K.I. REALTY, INC.

Upon that portion of the motion dated December 4, 2009 (the "Sale Motion") of Cabrini Medical Center ("Cabrini" or the "Debtor"), the debtor and debtor in possession herein, for entry of an order, *inter alia*, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002(a)(2) and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the sale (the "Sale") of all of the Debtor's real property (collectively, the "Assets") to Cabre Partners, LLC or the successful bidder at auction (the "Purchaser") as defined and described in the Motion; and upon this Court's prior order, dated December 30, 2009 approving the Bidding Procedures (the "Bidding Procedures Order"); and due notice of the Sale Motion, the Bidding Procedures Order and the auction conducted in connection therewith (the "Auction") having been given to all parties entitled thereto; and the Auction having been held on January 28, 2010; and S.K.I. Realty, Inc. having made the highest and best offer and having been designated the successful bidder and the Purchaser at the conclusion of the Auction;  and this Court having reviewed the Sale

Motion and the Contract of Sale between the Debtor and the Purchaser attached as Exhibit "1" (the "Purchase Agreement");[1]

NOW, THEREFORE, upon the entire record of the Procedures Hearing, the Sale Hearing (each as defined in the Bidding Procedures Order) and this case, and after due deliberation thereon and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     This Court has jurisdiction over the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.), and this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (N).  Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     The predicates for the relief sought in the Sale Motion are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

C.     Proper, timely, adequate and sufficient notice of the Sale Motion and the relief requested therein, the Auction, the Sale Hearing, the Sale, and related transactions described in the Purchase Agreement, including any termination rights contained in the Purchase Agreement (all such transactions being collectively referred to as the "Sale Transaction"), has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 and in compli-

---

[1]     Unless otherwise defined in this Order, capitalized terms used herein shall have the meanings ascribed to such terms in the Motion or the Purchase Agreement, as applicable.

ance with the Bidding Procedures Order to all interested persons and entities, including (i) counsel to the statutory committee of unsecured creditors appointed in the Debtor's case (the "Creditors' Committee");  (ii) counsel to the Purchaser;  (iii) counsel for the Debtor's post-petition lender;  (iv) all parties who are known to have liens or assert interests upon the Assets;  (v) the Internal Revenue Service;  (vii) the Office of New York State Attorney General;  (vii) Corporation Counsel of the State of New York;  (viii) New York City Department of Finance;  (ix) New York State Department of Taxation;  (x) the Center for Medicare and Medicaid Services;  (xi) the New York State Department of Health, the New York State Attorney General's office-Charities Bureau;  (xii) the Office of the United States Attorney;  (xiii) the Office of the U.S. Trustee;  (xiv) the Dormitory Authority of the State of New York;  (xv) all other parties that have requested notice by filing a notice of appearance in this chapter 11 case;  and (xvi) all known creditors and counterparties to executory contracts and leases with the Debtor.

D.    As demonstrated by (i) the testimony and/or other evidence proffered or adduced at the Procedures Hearing and/or the Sale Hearing and (ii) the representations of counsel made on the record at the Procedures Hearing and/or the Sale Hearing, the Debtor has marketed the Assets and conducted the sale process in compliance with the Bidding Procedures Order.

E.    Creditors, parties in interest and other entities have been afforded a reasonable opportunity to bid for the Assets.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities.  Limited objections to the Sale (collectively, the

"Objections") were filed by (1) GPDDC, L.L.C., (2) John F. Reilly, and (3) Philips Medical Systems (Cleveland), Inc.

F.     The GPDDC Objection was resolved pursuant to a Settlement and Leasehold Surrender Agreement dated as of January 28, 2010 and approved by the Court by Order dated on or about February 11, 2010 pursuant to Bankruptcy Rule 9019. The GPDDC Objection has been withdrawn.  The Objections of John F. Reilly and Philips Medical Systems (Cleveland), Inc. address the allocation of the Sale proceeds and are not objections to the Sale.

G.     The Debtor has full corporate power and authority to consummate the Sale Transaction pursuant to the Purchase Agreement and all other documents contemplated thereby, and no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtor to consummate the Sale Transaction.

H.     Approval of the Purchase Agreement and consummation of the Sale Transaction are in the best interests of the Debtor, its creditors, its estate, and other parties in interest.

I.     The Debtor has demonstrated (i) good, sufficient, and sound business purpose and justification and (ii) compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy Code.

J.     The Purchase Agreement was negotiated, proposed and entered into by and between the Debtor and the Purchaser, without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtor nor the Purchaser has en-

4

gaged in any conduct that would cause or permit the avoidance of the Purchase

Agreement or the consummation of the Sale Transaction, nor the imposition of costs or

damages under section 363(n) of the Bankruptcy Code. The Purchaser is not an "in-

sider" or "affiliate" of the Debtor (as those terms are defined in the Bankruptcy Code);

K. The Purchaser is a good faith purchaser under section 363(m) of the

Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby in

that: (a) the Purchaser recognized that the Debtor was free to deal with any other party

interested in a transaction regarding the Sale; (b) the Purchaser agreed to provisions in

the Purchase Agreement that would enable the Debtor to accept a higher and better of-

fer for the Assets; (c) the Purchaser made the highest and best bid in respect of the Sale;

(d) all payments to be made by or to the Purchaser and other agreements or arrange-

ments entered into by the Purchaser in connection with the transactions have been dis-

closed; and (e) the negotiation and execution of the Purchase Agreement and any other

agreements or instruments related thereto was in good faith and an arm's-length trans-

action between the Purchaser and the Debtor. The Purchaser has at all times acted in

good faith and will continue to be acting in good faith within the meaning of section

363(m) of the Bankruptcy Code in closing the transactions contemplated by the Pur-

chase Agreement.

L. The Transfer of the Assets is exempt from New York State real es-

tate transfer tax, as it is a conveyance pursuant to the Bankruptcy Code. *See* N.Y. Tax

law § 1405(b)(8) (2009). The Transfer of the Assets is exempt from New York City real

property transfer tax, as it is a conveyance by a not-for-profit corporation. *See* N.Y. Admin. Code § 11-2106(b)(2) (2009).

M.     The terms and conditions of the Purchase Agreement are fair and reasonable. The consideration provided by the Purchaser for the Assets pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) is the highest or best offer for the Assets, (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

N.     Except as set forth in the Purchase Agreement, the Purchaser is not and will not be liable to any agent, broker, person or firm acting or purporting to act on behalf of either the Debtor or the Purchaser for any commission, broker's fee or finder's fee respecting the Sale Transaction.

O.     The Assets constitute property of the Debtor's estate and the Debtor is the sole and lawful owner of the Assets, and holds good title thereto (subject to the Permitted Exceptions). The transfer of the Assets to the Purchaser will be a legal, valid, and effective transfer of the Assets, and will vest the Purchaser with all right, title, and interest of the Debtor in and to the Assets free and clear of all liens, claims, interests, obligations, rights, charges and encumbrances, except for Permitted Exceptions as specifically provided in the Purchase Agreement. The Purchaser shall have no liability for any claims against the Debtor or its estate or any liabilities or obligation of the Debtor or its estate.

P.	The Debtor may sell the Assets free and clear of all, liens, interests, obligations, rights, encumbrances, pledges, mortgages, deeds of trust, security interests, claims (including, any "claim" as defined in Section 101(5) of the Bankruptcy Code), leases, possessory leasehold interests, charges, options, rights of first refusal, easements, servitudes, transfer restrictions under any agreement, judgments, hypothecations, demands, licenses, sublicenses, assignments, debts, obligations, guaranties, options, contractual commitments, restrictions, environmental liabilities, options to purchase, and options, in each case of whatever kind, nature, or description in, against or with respect to any of the Assets, having arisen, existed or accrued prior to and through the Closing, whether direct or indirect, absolute or contingent, choate or inchoate, fixed or contingent, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute or otherwise and whether arising prior to, on or after the Petition Date (collectively, "Liens, Claims and/or Interests"), except for Permitted Exceptions as expressly provided in the Purchase Agreement, because one or more of the standards set forth in section 363(f)(1) – (5) has been satisfied with regard to each such Lien, Claim and/or Interest. Those non-debtor parties with Liens, Claims and/or Interests in or with respect to the Assets who did not object, or who withdrew their objections to the Sale Transaction or the Sale Motion are deemed to have consented to the sale of the Assets free and clear of those non-Debtor parties' Liens, Claims and/or Interests in the Assets pursuant to section 363(f)(2) of the Bankruptcy Code. Those non-debtor parties with Liens, Claims and/or Interests in or with respect to the Assets who objected to the Motion, but who did not withdraw any such objection, can

be compelled to accept a monetary satisfaction of their liens, claims or interests within the meaning of Section 363(f)(5) of the Bankruptcy Code.

Q.     The provisions of section 363 of the Bankruptcy Code as applicable to the transfer of the Purchased Assets have been complied with.

R.     The transfer of the Assets to the Purchaser (i) does not constitute an avoidable transfer under the Bankruptcy Code or under applicable bankruptcy or non-bankruptcy law and (ii) does not and will not subject the Purchaser to any liability whatsoever with respect to the operation of the Debtor's business prior to the closing of the Sale Transaction (the "Closing") or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting successor, transferee or vicarious liability.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### General Provisions

1.     The Sale Motion is granted in its entirety.

2.     The findings of fact set forth above and conclusions of law stated herein shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3.     All Objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in the Objections, are hereby overruled on the merits with prejudice, and in each case the objectors are enjoined from taking any action against the Purchaser or, its affiliates or any agent of the foregoing to recover any claim which such person or entity has solely against the Debtor, or any of its affiliates.

**Approval of the Purchase Agreement**

4.     The Sale Transaction, and all of the terms and conditions and transactions contemplated by the Purchase Agreement, are hereby authorized and approved pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

5.     Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized and directed to (a) consummate the Sale Transaction pursuant to and in accordance with the terms and conditions of the Purchase Agreement with S.K.I. Realty, Inc. and the Debtor shall at all times act in accordance with the terms thereof, and (b) pay the Break-Up Fee in accordance with the terms of that amended and restated contract of sale (the "Stalking Horse Contract") by and between Cabre Partners LLC and the Debtor, a copy of which is annexed to the Bidding Procedures Order [Docket No. 224].

6.     The Debtor is authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary, convenient or desirable to implement the Purchase Agreement and consummate

9

the Sale Transaction pursuant thereto and effectuate the provisions of this Order and the transactions approved hereby, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement.

### Transfer of the Assets

7. Except for Permitted Exceptions only as expressly provided in the Purchase Agreement, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the Assets (and good and marketable title to such Assets) and all of the Debtor's rights, title and interest therein shall be transferred to the Purchaser free and clear of all Liens, Claims and/or Interests, with all such Liens, Claims and/or Interests to attach to the net cash proceeds of the Sale Transaction in the order of their priority, with the same validity, force and effect which they now have as against the respective Assets, subject to any claims and defenses, setoffs or rights of recoupment the Debtor or the Debtor's estate (including claims brought by the Committee on behalf of the Debtor's estate) may possess with respect thereto. This Court shall retain jurisdiction to allocate the consideration paid for some or all of the Assets to each individual asset, as necessary, to determine the proceeds to which a Lien, Claim and/or Interest attached.

8. Except for Permitted Exceptions, as expressly provided in the Purchase Agreement, all persons and entities (and their respective successors and assigns)

including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Liens, Claims and/or Interests (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) against, in or with respect to the Debtor and/or the Assets arising or accruing under or out of, in connection with, or in any way relating to, the Debtor, the Assets, the operation of the Debtor's business prior to the Closing, or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Liens, Claims and/or Interests against the Assets or the Purchaser or any of the Purchaser's successors or assigns. Following the Closing Date, no holder of a Lien, Claim and/or Interest shall interfere with the Purchaser's title to or use and enjoyment of the Assets based on or related to such Lien, Claim and/or Interest or any actions that the Debtor have taken or may take in its Chapter 11 case. Effective upon the Closing, the Purchaser shall have no liability for any Claims (as defined in section 101(5) of the Bankruptcy Code) against the Debtor or its estate.

9. The transfer of the Assets to the Purchaser pursuant to the Purchase Agreement constitutes a legal, valid, and effective transfer of the Assets, and shall vest the Purchaser with all right, title, and interest of the Debtor in and to the Assets.

10. The Debtor is hereby authorized and directed to assign all licenses and permits used in connection with the Assets to the Purchaser in accordance with the terms of the Purchase Agreement.

**Additional Provisions**

11.     Without limiting the other terms of this Order, prior to or upon the Closing of the Sale Transaction, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their interests, if any, in the Assets as such Liens, Claims and/or Interests may have been recorded or may otherwise exist.

12.     If an entity has a pre-petition lien on only certain of the parcels while another entity has a pre-petition lien on multiple parcels, all parties reserve the right to assert how the proceeds of sale should be applied in satisfaction of such liens and rights, all without prejudice to the rights of the senior lienholders under any applicable loan, security and intercreditor agreements and related documents.

13.     Except for Permitted Exceptions, only as expressly provided in the Purchase Agreement, this Order (a) shall be effective as a determination that, upon the Closing, all Liens, Claims and/or Interests existing with respect to the Debtor and/or the Assets prior to the Closing have been unconditionally released, discharged and terminated as to the Purchaser and the Assets, and that the conveyances described herein have been effected, and (b) shall be binding upon all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record

or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

14. Each and every federal, state, and local governmental agency or department or office is hereby directed to accept this Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement, all without imposition or payments of any stamp tax, transfer tax or similar tax.

15. Without limiting the other provisions of this Order, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing interests with respect to the Debtor and/or the Assets shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Debtor, the Assets or otherwise, then (a) the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets and (b) the Purchaser and/or the Debtor is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims and/or Interests in, against or with respect to the Debtor and/or the Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, and local governmental agency, department, or office.

16.     All entities that are presently, or on the Closing may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Purchaser upon the Closing.

17.     From and after the date hereof, the Debtor or any creditor or other party in interest shall not take or cause to be taken any action that would interfere with the transfer of the Assets to the Purchaser in accordance with the terms of this Order.

18.     Except with respect to liabilities expressly assumed in the Purchase Agreement, the Purchaser shall not have any liability or other obligation of the Debtor or its affiliates arising under or related to the Assets.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Purchase Agreement, the Purchaser shall not be liable for any claims against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Debtor or its affiliates or any obligations of the Debtor or its affiliates arising prior to the closing, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing of the Sale Transaction.

19.     Pursuant to (a) that certain Lease Surrender and Settlement Agreement made as of January 28, 2010 between the Debtor and GPDDC, L.L.C., and (b) all

other agreements reached with tenants of the Debtor for the surrender of their respective leased premises and payment of adequate protection, payment to all tenants for adequate protection (collectively, the "Tenant Adequate Protection Obligations") shall only be made out of the proceeds of the Sale of Assets approved hereby.

20.    Simultaneous with the Closing, unless previously paid pursuant to the terms of the Stalking Horse Contract, the Debtor shall pay to Cabre Partners LLC its $3,000,000 Break-Up Fee, plus accrued but unpaid interest, if any, in the per annum amount of 6%, and then to the extent there are sufficient proceeds from the Sale Transaction, the Debtor shall pay (a) the Tenant Adequate Protection Obligations, (b) to the DIP Lender the amount of the DIP Obligations, and (c) to Grubb & Ellis New York, Inc. its earned commission on the Sale Transaction.

21.    This Court hereby retains jurisdiction, regardless of whether a plan of reorganization has been confirmed and consummated and irrespective of the provisions of any such plan or order confirming such plan, to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to the Purchaser in accordance with the terms of the Purchase Agreement, (b) resolve any dispute, controversy or claim arising under or related to the Purchase Agreement, or the breach thereof and (c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto.

22.     Nothing contained in any plan confirmed in this chapter 11 case or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

23.     The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code.  The Purchaser is a purchaser in good faith of the Assets and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.  Accordingly, any reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction to the Purchaser.

24.     The terms and provisions of the Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate and its creditors, the Purchaser, and any of such parties' respective affiliates, designees, successors, and assigns, and shall be binding in all respects upon all of the Debtor's creditors, all prospective and actual bidders for some or all of the Assets, and all persons and entities receiving notice of the Sale Motion, the Auction and/or the Sale Hearing notwithstanding any subsequent appointment of any trustee(s), examiner(s), or receiver(s) under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtor, its estate, its creditors, its members or any trustee(s), examiner(s), or receiver(s).

25.     The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the terms and conditions of the Purchase Agreement and the provisions of this Order.  The Debtor waives any right to seek modification of this Order without the prior written consent of Purchaser, and no such consent shall be implied by any other action, inaction, or acquiescence by Purchaser.

26.     The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement be authorized and approved in its entirety.

27.     The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate; provided further that the Creditors' Committee be provided an opportunity to object to such modification, amendment or supplement.

Dated:     New York, New York
           February 11, 2010

                                        s/Arthur J. Gonzalez
                                        Arthur J. Gonzalez
                                        Chief United States Bankruptcy Judge