TOGUT, SEGAL & SEGAL LLP
Counsel for Debtor and Debtor in Possession
One Penn Plaza, Suite 3335
New York, New York  10119
(212) 594-5000
Frank A. Oswald
James J. Lee

HEARING DATE:  March 10, 2010 at 9:30 a.m.
OBJECTION DATE:  March 5, 2010 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                                :
In re:                                                          :    Chapter 11
                                                                :    Case No. 09-14398 (AJG)
CABRINI MEDICAL CENTER,                                         :
                                                                :
                                    Debtor.                     :
                                                                :
---------------------------------------------------------------x

# DEBTOR'S MOTION TO APPROVE
# STIPULATION AND ORDER AUTHORIZING DEBTOR
# TO OBTAIN ADDITIONAL POST-PETITION FINANCING
# AND GRANT CONTINUING LIENS TO MISSIONARY SISTERS OF
# THE SACRED HEART (NEW YORK AND ILLINOIS) AND OTHER LENDERS

TO THE HONORABLE ARTHUR J. GONZALEZ,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Cabrini Medical Center (the "Debtor"), as debtor and debtor in possession, by its attorneys Togut, Segal & Segal LLP, submits this motion to approve a Stipulation and Order ("Stipulation") among the Debtor, the Missionary Sisters of the Sacred Heart, a not-for-profit corporation organized under the laws of the State of Illinois (the "DIP Lender") and the Missionary Sisters of the Sacred Heart, a not-for-profit corporation organized under the laws of the State of New York ("MSSH-NY"), authorizing, *inter alia*, the Debtor to obtain additional debtor in possession secured financing from the DIP Lender and grant continuing liens and adequate protection, and respectfully states:

## NEED FOR ADDITIONAL FINANCING

1. By Order of the Bankruptcy Court dated November 4, 2009 (the "DIP Financing Order"), the Debtor was authorized to borrow up to $5 million (the "DIP Financing") from the DIP Lender to fund the operation of the Debtor's business and the conduct of the chapter 11 case through February 28, 2010, subject to the original budget prepared by the Debtor in consultation with representatives of the DIP Lender.[1]

2. Pursuant to this Court's Order dated December 30, 2009 approving bid procedures for the sale of the Debtor's assets, an auction was held on January 28, 2010 to consider the stalking horse bid of Cabre Partners, LLC, and the topping bid of SKI Realty, Inc. At the conclusion of the auction, the Debtor, upon consultation with the DIP Lender and the Committee[2], declared SKI Realty, Inc. the successful bidder, with an $83.1 million bid, and closed the auction. The Debtor sought approval of SKI Realty as having submitted the highest and best bid at a hearing on February 3, 2010. The Court closed the "record" on the sale deeming SKI Realty the successful bidder. An Order approving the sale to SKI Realty was entered on February 11, 2010 (the "Sale").

3. The contract of sale with SKI Realty requires the Debtor to deliver the properties vacant. While SKI Realty has the option to close before all of the tenants vacate the premises, it is clear that a closing will not occur until after February 28, 2010, the expiration date of the current DIP Financing.

4. Specifically, GPDDC, the Debtor's largest tenant, objected to the Sale requesting, among other things, adequate protection of its leasehold interest.

---

[1] The DIP Financing Order was amended by Order dated December 30, 2009 (the "Amended DIP Order") to (a) provide for a lien on the Debtor's property to secure payment of a $3 million breakup fee to Cabre Partners, LLC, as the stalking horse bidder for the Debtor's property, and (b) extend, until February 15, 2010, the deadline for the Debtor to obtain approval of a sale transaction.

[2] Capitalized terms not defined in this Motion are defined in the DIP Financing Order.

GPDDC operates a digestive disease surgical center at one of the Debtor's buildings. In response to the objection, counsel for the Debtor and counsel for GPDDC had discussions with the New York State Department of Health to explore whether the process for GPDDC to obtain DOH approval for relocation, which is a condition of GPDDC's licensure, could be expedited (which process typically can take between eight and 14 months). Ultimately, the Debtor and GPDDC entered into a settlement and lease surrender agreement, approved by Order of the Court dated February 11, 2010, whereby GPDDC agreed to vacate the premises as early as September 1, 2010 and not later than December 1, 2010. With the exception of GPDDC, the Debtor's remaining tenants have agreed to vacate the premises by February 28, 2010.

5. Accordingly, post February 28, the Debtor will require funds to continue to maintain and preserve the property, as well as to satisfy its other administrative expenses, until the closing. However, because the Debtor has sufficient cash on hand to satisfy its administrative expenses through March 12, 2010 without the need for additional borrowing, there was no urgency to have this Motion considered by the Court before February 28. Following extensive discussions between the Debtor and the DIP Lender, the DIP Lender has agreed, at this point, to provide funding for the three-month period ending May 31, 2010 (the "Funding Period") based upon the budget (the "Budget") attached to the Stipulation as Exhibit "A."

6. Based on the Budget, the Debtor seeks authority to borrow up to $1,375,000 (the "Additional Funding") for the Funding Period. The majority of the funds will be used to maintain and preserve the property, which benefits the DIP Lender and other creditors. The DIP Lender has agreed to the Debtor's request for the Additional Funding, as described herein. A copy of the Stipulation between the Debtor and the DIP Lender authorizing the Additional Funding is attached as Exhibit "1."

7. During the Funding Period, the Debtor estimates monthly collections from accounts receivable ranging from $5,000 to $15,000, and approximately $25,500 in rental income. Additionally, the Debtor expects to receive not less than $200,000 from the liquidator who will conduct the auction sale of the remaining furniture, fixtures, equipment and supplies located in the premises[3], for a total of approximately $321,500 for the Funding Period. Such receivables are insufficient to maintain the Debtor's premises, and without the Additional Funding, the Debtor would be required to terminate staff and services, and may be compelled to convert the chapter 11 case to a chapter 7 case. In that event, the Debtor believes that a sale to SKI Realty would not be consummated and one or more secured creditors would seek to foreclose on the properties. The costs to maintain and secure the properties would be borne by the secured creditors, who ultimately would realize less than what can be recovered from the sale to SKI Realty.

8. The Debtor has identified those average monthly disbursements that it believes are necessary to maintain the real property during the Funding Period, including salaries, telephone and utilities, and insurance (approximately $237,400); debt and interest payments (approximately $193,877); and the estimated costs related to the case, such as legal fees, U.S. Trustee fees, and fees for the claims and noticing agent (approximately $91,250 ). The Debtor is confident that operational disbursements and debt payments are relatively fixed and not subject to significant deviations during the Funding Period.

---

[3] On February 3, 2010, the Court entered an Order authorizing the employment and retention of Great American Group, LLC as liquidation consultant, and approving the sale of certain assets located at the Debtor's premises free and clear of all liens, claims or encumbrances [Docket No. 283].

4

## BASIS FOR ADDITIONAL FINANCING; SECURITY AND ADEQUATE PROTECTION

9. The DIP Financing Order provides that to secure the post-petition loans, the DIP Lender is granted, *inter alia*, pursuant to sections 364(c)(2) and (c)(3) and 364(d)(1) of the Bankruptcy Code, (x) a first priority, senior, priming, perfected lien upon all of the right, title and interest of the Debtor in, to and under: the C, D and E Buildings and all rents, proceeds and profits thereof, subject only to the lien of the NYC Water Board, and (y) a senior priority perfected lien upon all of the right, title and interest of the Debtor in and to the A and B Buildings, subject only to the NYC Water Board lien and the liens of Sun Life Assurance Company of Canada, such lien being a priming lien senior in right and priority to the liens and security interests granted by the Debtor to all other Secured Parties. The Amended DIP Order provides that the liens granted to the DIP Lender are also subject to liens and a superpriority administrative expense claim granted by the Debtor to the stalking horse bidder to secure payment of the breakup fee.

10. The Debtor seeks approval of the Additional Funding on substantially the same terms as provided in the DIP Financing Order, as amended by the Amended DIP Order. To secure the Additional Funding, the Debtor proposes to grant the DIP Lender liens, pursuant to sections 364(c)(2) and (c)(3) and 364(d)(1) of the Bankruptcy Code on the Debtor's assets in the same priority as the DIP Financing. In addition, pursuant to section 364(c)(1), the Debtor shall give the DIP Lender an allowed superpriority administrative claim to the extent of any deficiency in the value of the DIP collateral, subject only to the Carveout (as defined in the DIP Financing Order) and the

superpriority administrative expense claim granted to the stalking horse bidder to secure payment of the breakup fee.[4]

11. As adequate protection for, and to the extent of, any diminution in the value of the Secured Parties' interests in the Prepetition Collateral resulting from the liens securing the Additional Financing, the Debtor shall grant continuing Replacement Liens on the Post-petition Collateral and subject to the same terms and conditions as provided in the DIP Financing Order and the Amended DIP Order.

12. The Debtor relies on, and incorporates by reference the authorities set forth in the *Debtor's Motion for Final Order (i) Authorizing Debtor to Obtain Post-petition Financing Pursuant to 11 U.S.C. §§ 364(c) and 364(d) and (ii) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and (iii) Granting Adequate Protection to the Secured Parties Pursuant to 11 U.S.C §§ 361, 362, 363 and 364* [Docket No. 19].

13. The Debtor reserves the right to seek Court approval for additional funding from the DIP Lender beyond the Funding Period.

## NOTICE OF HEARING

14. The Debtor has provided notice of this Motion and the Stipulation to (i) counsel to the Committee; (ii) counsel for the DIP Lender and MSSH-NY; (iii) the Office of the U.S. Trustee; (iv) all other parties known by the Debtor claiming to have mortgages, judgment liens or mechanic's liens recorded against the Debtor's real property, including but not limited to Sun Life Assurance Company of Canada and East Nineteenth Street LLC; and (v) those parties who have filed a notice of appearance in this case. The Debtor submits that given the circumstances and the notice of the relief requested herein, no other or further notice is required.

---

[4] The Carveout will be reduced from $500,000 to $250,000 pursuant to the Stipulation.

WHEREFORE, the Debtor respectfully requests that the Court enter the Stipulation and Order attached as Exhibit 1 approving the Additional Financing, and grant such other and further relief as the Court considers appropriate.

Dated: New York, New York
February 22, 2010

CABRINI MEDICAL CENTER
Debtor and Debtor in Possession
By its attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

/s/ Frank A. Oswald
FRANK A. OSWALD
HOWARD P. MAGALIFF
One Penn Plaza, Suite 3335
New York, New York 10019
(212) 594-5000