UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In re:                                              Chapter 11

CABRINI MEDICAL CENTER,                             Case No. 09-14398 (AJG)

                              Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**STIPULATION AND ORDER
AUTHORIZING DEBTOR TO OBTAIN
ADDITIONAL DEBTOR-IN-POSSESSION FINANCING
AND GRANT CONTINUING POST-PETITION LIENS AND
CLAIMS IN FAVOR OF MISSIONARY SISTERS OF SACRED
HEART, A NOT-FOR-PROFIT CORPORATION ORGANIZED
UNDER THE LAWS OF THE STATE OF ILLINOIS, AS WELL AS
CONTINUING ADEQUATE PROTECTION TO SECURED PARTIES**

Cabrini Medical Center, the debtor and debtor-in-possession herein (the "Debtor"), Missionary Sisters of the Sacred Heart, a not-for-profit corporation organized under the laws of the State of Illinois ("MSSH-ILL" or "Lender"), and Missionary Sisters of the Sacred Heart, a not-for-profit corporation organized under the laws of the State of New York ("MSSH-NY"), acting by and through their respective counsel, hereby enter into this Stipulation and Order (the "Stipulation and Order") authorizing the Debtor, (i) pursuant to section 364(d) of the Bankruptcy Code and Bankruptcy Rule 4001 to incur additional postpetition indebtedness under that certain Debtor-In-Possession Loan Agreement entered into between the Debtor and Lender, dated as of July 30, 2009 (as the same may be amended or modified consistent herewith, the "DIP Agreement")[1] and (ii) continuing the adequate protection liens granted in favor of New York City Water Board (the "NYC Water Board"), Sun Life Assurance Company of Canada, a Canadian corporation ("Sun Life"), East Nineteen Street LLC, a New York limited liability

---

[1] The description of the terms of the Lender Loan Agreements set forth in this Stipulation and Order is provided for the convenience of the Court and the parties-in-interest. In the event of any inconsistency between the description of the terms of the DIP Agreement contained in this Stipulation and Order and the Lender Loan Agreements, the terms of the DIP Agreement shall govern.

company ("East 19th Street"), 1199 SEIU National Benefits Fund ("1199"), MSSH-NY and the Lender (collectively, the "Secured Parties"), pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, all upon the terms and conditions set forth herein.  (Capitalized terms not otherwise defined herein, shall have the meanings ascribed to such terms in the Financing Orders (as hereinafter defined).)

## BACKGROUND

A.	On July 9, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Chapter 11 Case").  The Debtor has continued in possession of its assets and continues to manage its properties as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.

B.	An official committee of unsecured creditors has been appointed in the Debtor's Chapter 11 case (the "Committee"). No trustee or examiner has been appointed in this Chapter 11 Case.

## JURISDICTION

C.	This Court has jurisdiction over this matter under 28 U.S.C. § 1334.  This matter is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A), (D) and (M).  The predicate for relief requested herein is Sections 361, 363 and 364 of the Bankruptcy Code and Rule 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## THE DEBTOR'S PREPETITION FINANCING ARRANGEMENT

D.	Pursuant to the various loan agreements between the Debtor and the Lender, as evidenced by those documents listed in Exhibit "A" to the Interim Financing Order (as

1414345v.6

hereinafter defined) (Docket No. 66) (the "Lender Loan Agreements"), the Lender made loans to the Debtor. All such loans by Lender to the Debtor under, or in connection with, the Lender Loan Agreements, and all collateral and ancillary documentation executed in connection therewith (collectively, the "Lender Loan Documents"), are hereinafter referred to as the "Lender Prepetition Obligations."

E. Pursuant to the various loan agreements between the Debtor and MSSH-NY, as evidenced by those documents listed in Exhibit "B" to the Interim Financing Order (the "MSSH-NY Loan Agreements"), MSSH-NY made loans to the Debtor. All such loans by MSSH-NY to Debtor under, or in connection with, the MSSH-NY Loan Agreements, and all collateral and ancillary documentation executed in connection therewith (collectively, the "MSSH-NY Loan Documents"), are hereinafter referred to as the "MSSH-NY Prepetition Obligations."

F. Pursuant to the various loan agreements between the Debtor and Sun Life, as evidenced by those documents listed in Exhibit "C" to the Interim Financing Order (the "Sun Life Loan Agreements"), Sun Life made loans to the Debtor. All such loans by the Debtor to Sun Life under, or in connection with, the Sun Life Loan Agreements, and all collateral and ancillary documentation executed in connection therewith (collectively, the "Sun Life Loan Documents"), are hereinafter referred to as the "Sun Life Prepetition Obligations".

G. Pursuant to the various loan agreements between the Debtor and East 19th Street, as evidenced by those documents listed in Exhibit "D" to the Interim Financing Order (the "East 19th Street Loan Agreements"), East 19th Street made loans to the Debtor. All such loans to the Debtor by East 19th Street under, or in connection with, the East 19th Street Loan Agreements, and all collateral and ancillary documentation executed in connection therewith (collectively, the

1414345v.6

"East 19th Street Loan Documents", are hereinafter referred to as the "East 19th Street Prepetition Obligations".

H.   Pursuant to that certain Affidavit of Confession of Judgment, dated November 30, 2006, and related Mortgage, dated December 4, 2006, the Debtor granted a certain mortgage lien in real property to 1199 SEIU National Benefits Fund ("1199"), as evidenced by those documents listed in Exhibit "E" to the Interim Order (the "1199 Mortgage Agreement", and together with the Lender Loan Documents, the MSSH-NY Loan Documents, the East 19th St. Loan Documents and the Sun Life Loan Documents referred to as the "Prepetition Loan Documents"). All such prepetition secured obligations of the Debtor in favor of 1199 in accordance with the 1199 Mortgage Agreement, together with the Lender Prepetition Obligations, the MSSH-NY Prepetition Obligations, the Sun Life Prepetition Obligations and the East 19th Street Prepetition Obligations referred to as the "Secured Prepetition Obligations."

I.   Pursuant to a Pledge and Assignment Agreement (the "IDB Agreement"), dated as of October 7, 2007, by and between the Debtor and Israel Discount Bank of New York ("IDB"), the Debtor pledged to IDB certain collateral (the "IDB Collateral") comprised of the Debtor's interest in the HANYS Member Hospitals Self-Insurance Trust that was created under a trust agreement dated November 12, 1985, and the interest reserve account maintained by the Debtor at IDB under the IDB Agreement.

J.   Pursuant to a Settlement Agreement, dated as of August 4, 2008, by and between the Debtor and the NYC Water Board, and as otherwise provided by applicable statute and administrative regulation, the NYC Water Board holds a first lien and security interest on the
4

Debtor's real property as security for unpaid water charges in the original approximate amount of $4.5 million (the "NYC Water Board Lien").

**THE DEBTOR'S POSTPETITION FINANCING ARRANGEMENT**

K.  On July 9, 2009, the Debtor filed a motion (the "DIP Motion") seeking the entry of a final financing (the "Final Financing Order") pursuant to Sections 105(a), 361, 362, 363 and 364(c) of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001, 6004 and 9014. Among other things, the Debtor, in the DIP Motion, sought authority to: (i) obtain postpetition financing of up to $5 million (the "DIP Financing") on the terms and conditions set forth in the DIP Agreement between the Debtor on one hand, and MSSH-ILL on the other hand, (ii) to use cash collateral, and (iii) grant adequate protection to the Secured Parties. Under the DIP Agreement, MSSH-ILL was granted administrative superpriority and senior liens on substantially all of the Debtor's assets.

L.  A hearing (the "Interim Hearing") was held in connection with the DIP Motion and an Interim Financing Order (the "Interim Financing Order") was entered on July 30, 2009 (Docket No. 66). A final hearing was subsequently held on November 4, 2009 and the Final Financing Order approving the DIP Agreement and DIP Financing was entered by this Court on that same date (Docket No. 160). On December 30, 2009, an Order Amending the Final Financing Order was entered amending and modifying certain provisions thereof (the "Amended Financing Order", and, together with the Interim Financing Order and Final Financing Order, the "Financing Orders")

M.  Pursuant to the terms of the DIP Agreement and the Financing Orders, the Debtor was authorized to borrow and utilize the DIP Financing in an amount not to exceed $5.0 million

5

1414345v.6

plus Cash Collateral for the payment of the costs and expenses solely associated with the maintenance of the Debtor's owned real property (the "Real Property") and the conduct of its Chapter 11 Case, in accordance with and limited by the budget prepared by the Debtor annexed as Exhibit "F" to the Interim Financing Order, but subject to the Permitted Monthly Variance (as defined herein).

N. Pursuant to an Order of the Bankruptcy Court dated December 30, 2009 approving bid procedures for the sale of the Debtor's Real Property and related assets, an auction was held on January 28, 2010 to consider the stalking horse bid of Cabre Partners, LLC, and the topping bid of SKI Realty, Inc. At the conclusion of the auction, the Debtor, upon consultation with the Lender and the Committee, declared SKI Realty, Inc. the successful bidder, with an $83.1 million bid, and closed the auction. At a hearing held on February 3, 2010, the Debtor sought approval to execute and consummate the sale agreement with SKI Realty ("Sale Agreement") after determining that SKI Realty submitted the highest and best bid for the Real Property and related assets. The Court closed the "record" on the sale of the Debtor's Real Property (the "Sale") deeming SKI Realty the successful bidder. An Order approving the Sale to SKI Realty in accordance with the Sale Agreement was entered on February 11, 2010 (the "Sale Order").

O. As of the date of this Stipulation and Order, the Lender has advanced $[5,000,000] in DIP Financing in accordance with the Financing Orders and the Debtor owes $[_____] in accrued and unpaid interest. In addition, unless extended or modified, on February 28, 2010, the DIP Financing available to the Debtor in accordance with the DIP Agreement and the Financing Orders shall terminate and the outstanding balance shall become immediately due and payable by the Debtor to the Lender.

6

P. It appears that the Debtor will require further debtor-in-possession financing in order to continue to maintain and preserve the Real Property in accordance with certain obligations under the Sale Agreement and pending the closing of the Sale.

Q. Based on its current Budget (as hereinafter defined) and cash flow requirements, the Debtor has concluded that it will require an additional $[1.25] million of DIP Financing through May 31, 2009 (the "First Additional DIP Financing") in order to meet its post-petition obligations, including maintenance of its Real Property and the administration of the Chapter 11 Case.

R. Pending closing of the Sale, it is the Debtor's obligation in accordance with the Sale Agreement to continue maintaining the Real Property, which it cannot do absent the Additional DIP Financing. The closing of the Sale is clearly in the best interests of the creditors of the Debtor's estate.

S. The Lender and the Debtor have negotiated at arm's length and in good faith regarding the Additional DIP Financing. The Debtor is unable to obtain sufficient financing from sources other than the Lender on terms more favorable than under the DIP Agreement. The Debtor has been unable to obtain sufficient unsecured credit solely under Bankruptcy Code section 503(b)(1) as an administrative expense. New and additional credit from the Lender is unavailable to the Debtor without providing the Lender with the continuing DIP Liens and the DIP Superpriority Claim.

T. Based upon the accomplishments in the Chapter 11 Case, including marketing of the Real Property and approval of Sale to SKI Realty, together with the funding of professional fees and other costs of administration through the date of this Stipulation and Order, it appears

that the Carveout provided for in the prior Financing Orders is no longer entirely necessary. As such, the parties seek to approve a modified Carveout ("Modified Carveout") hereunder to replace and supersede the same from this date forward in the Chapter 11 Case.

U. The Debtor hereby reaffirms all acknowledgments and waivers contained in the Financing Orders to challenge the validity, perfection, enforceability, or priority of the liens and security interests granted by the Debtor pursuant to the Lender Loan Documents, the MSSH-NY Loan Documents and the Sun Life Loan Documents to secure the Lender Prepetition Obligations, the MSSH-NY Prepetition Obligations, and the Sun Life Prepetition Obligations, respectively, upon the Prepetition Collateral. The Debtor further acknowledges and agrees that the Secured Parties are entitled, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral to the extent of the diminution in value thereof resulting from the priming of the Lender's liens on the Prepetition Collateral, including Cash Collateral, by the granting of the DIP Liens. Notwithstanding the preceding, nothing contained herein is intended to alter or impact the pending challenge litigation commenced by the Committee under adversary proceeding number 09-01639 concerning the extent, validity, and priority of any prepetition lien or security interest granted by Debtor to Lender or MSSH-NY or any remaining permitted challenge if any that may remain under the terms of the Financing Orders.

**NOW, THEREFORE,** in consideration of the foregoing recitals and the mutual promises hereinafter contained, the parties hereby agree and it is ordered as follows:

1. Additional DIP Financing. The Debtor is authorized, pursuant to Section 364(d) of the Bankruptcy Code, to borrow from the Lender the Additional DIP Financing in the amount

8

of up to [1.375] million ($1,375,000) subject to the terms and conditions set forth herein and the DIP Agreement. The Debtor agrees to use the proceeds of the Additional DIP Financing solely for the purpose of funding operating costs and necessary administrative expenses including, without limitation, expenses related to the maintenance of the Real Property, all in accordance with and up to the amounts set forth in the budget annexed hereto as Exhibit "A" (the "Budget"), and subject to a permitted monthly variance of up to ten percent (10%) with respect to any one line item, provided the overall monthly disbursements do not exceed one hundred and five percent (105%) of the budgeted expenses of the Debtor, as reflected in the Budget (the "Permitted Monthly Variance"). The definition of the DIP Financing for purposes of the Financing Orders and this Stipulation and Order shall be deemed to include the Additional DIP Financing. The Financing Orders, as hereby supplemented by this Stipulation and Order, shall continue in full force and effect in accordance with their terms. Except to the limited extent expressly set forth herein, nothing shall be deemed to alter, modify, or supersede any provisions of the Financing Orders.

2. Continuing Superpriority Claim. In consideration of, and as collateral security for the Additional DIP Financing (inclusive of any interest thereon), Lender is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, a continuing, allowed DIP Superpriority Claim, subject only to the Modified Carveout (as defined below), but excluding causes of action arising under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code. No other claim having a priority superior to or pari passu with the DIP Superpriority Claim shall be granted while any portion of the DIP Financing and/or Additional DIP Financing remains outstanding or available to the Debtor.

3. DIP Liens. As additional and continuing security for the Debtor's obligations and

9

indebtedness in respect of the DIP Financing and Additional DIP Financing, the Lender is hereby granted, in each case subject to the Modified Carveout, pursuant to sections 364(c)(2) and (c)(3) and 364(d)(1) of the Bankruptcy Code, the DIP Liens which shall continue to be comprised of: (x) a first priority, senior, priming, perfected lien upon all of the right, title and interest of the Debtor in, to and under: (i) the C, D and E Buildings and all rents, proceeds and profits thereof, subject only to the NYC Water Board Lien and the Break-Up Fee Lien (as defined in the Amended Financing Order) therein; and (ii) all present and after-acquired personal property of the Debtor of any nature whatsoever including, without limitation, all cash contained in any account of the Debtor, and the proceeds of all causes of action, but excluding causes of action arising under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code and the proceeds thereof (collectively, with the proceeds and products of any and all of the foregoing, the "<u>Postpetition Collateral</u>"); and (y) a senior priority perfected lien upon all of the right, title and interest of the Debtor in and to the A and B Buildings, subject only to the NYC Water Board Lien, the Break-Up Fee Lien and the Sun Life Liens, such lien being a priming lien senior in right and priority to the liens and security interests granted by the Debtor to all other Secured Parties to secure the Secured Prepetition Obligations. Subject to the Carveout, and except as otherwise expressly provided above, the DIP Liens shall be prior and senior to all liens and encumbrances of all other Secured Creditors and Judgment Creditors in and to such Postpetition Collateral granted or arising after the Petition Date. Notwithstanding anything to the contrary herein if IDB has a perfected lien on the IDB Collateral then the Prepetition Collateral and the Postpetition Collateral shall not include the IDB Collateral until such time as the Debtor has satisfied its obligations to IDB under the IDB Agreement.

    4.    <u>Modified Carveout</u>. As used in this Stipulation and Order, "Modified Carveout"

means as of the Termination Date (a) the unpaid Statutory Fees, (b) the payment of allowed professional fees and disbursements (the "Professional Fees and Disbursements") incurred by the professionals retained by the Debtor or the Committee not to exceed $250,000, in the aggregate plus any accrued and unpaid Professional Fees and Disbursements arising prior to the Termination Date that are not in excess of the budgeted amounts for such professionals contained in the Budget for the period up to the Termination Date, (c) the costs and administrative expenses not to exceed $25,000 in the aggregate that are permitted to be incurred by any chapter 7 trustee pursuant to an order of this Court following any conversion of any of the Chapter 11 Case pursuant to section 1112 of the Bankruptcy Code. Notwithstanding anything herein to the contrary, no Cash Collateral, DIP Financing, or any portion of the Modified Carveout may be used to assert any claims or causes of action against the Lender, MSSH-NY or Sun Life or object to or contest in any manner, or raise any defenses to, the validity, perfection, priority, extent or enforceability of the Lender Prepetition Obligations, the MSSH-NY Prepetition Obligations, the Sun Life Prepetition Obligations or Replacement Liens granted herein, or to assert any claims or causes of action against the Lender or MSSH-NY. Other than the Modified Carveout, the Debtor shall not assert a claim under section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Lender or Sun Life upon the Prepetition Collateral. The Modified Carveout shall replace and supercede the Carveout provided for in the Financing Orders from this date forward in the Chapter 11 Case.

5. **Adequate Protection**. As continued adequate protection for, and to the extent of, any diminution in the value of the Secured Parties' interest in the Prepetition Collateral resulting from the Additional DIP Financing, the Secured Parties shall be granted continuing Replacement

Liens on the Postpetition Collateral (as such term is defined in the Financing Orders) on and subject to the same terms and conditions set forth in the Financing Orders.

6.  **Perfection of DIP and Replacement Liens**.  The DIP Liens and the Replacement Liens granted pursuant to this Stipulation and Order shall constitute valid and duly perfected security interests and liens effective upon the date of this Order, and the Lender or other Secured Parties shall not be required to file or serve financing statements, notices of lien or similar instruments or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the DIP Liens and/or Replacement Liens shall in no way affect the validity, perfection or priority of such DIP Liens and/or Replacement Liens, provided, however, that the automatic stay is hereby modified, pursuant to section 362 of the Bankruptcy Code and Bankruptcy Rule 4001, to permit the Lender, in its sole discretion (a) to file financing statements, deeds of trust, mortgages or other similar documents to evidence its security interests under the DIP Financing and under the Final Orders, and (b) to take other actions required or permitted by the DIP Loan Documents.

7.  **Termination Date**.  As used in this Order, "Termination Date" means the earliest to occur of (i) May 31, 2010 (or such later date if the Lender and Sun Life consent, subject to Court approval), or (ii) upon five (5) business days' written notice to the Debtor (with a copy to the Committee and the United States Trustee) after the occurrence and continuance of any Event of Default (as defined and described in the Financing Orders) beyond any applicable grace period.  The Debtor shall promptly provide notice to the Lender and Sun Life (with a copy to counsel for the Committee and the United States Trustee) of the occurrence of any Event of Default.

1414345v.6

8.  <u>Rights and Remedies</u>.  All rights and remedies in respect of the DIP Financing as set forth in the Financing Orders and the DIP Agreement shall continue to apply and be enforceable in the same manner as respects the Additional DIP Financing.

9.  <u>Effectiveness</u>.  This Stipulation and Order shall become effective immediately upon being "So Ordered" by this Court.  The Clerk of the Court is hereby directed to forthwith enter this Stipulation and Order on the docket of this Court maintained for the Debtor's chapter 11 case.  Any stay of this Stipulation and Order provided by the Bankruptcy Rules (including Bankruptcy Rule 6004) whether for ten (10) days or otherwise shall not be applicable to this Stipulation and Order, and this Stipulation and Order shall be effective and enforceable immediately upon entry.  In the event that this Court declines to approve this Stipulation and Order, all terms and provisions hereof shall be void and of no effect and shall be inadmissible as evidence in any proceeding.  Except as otherwise modified hereby, the Lender, the Secured Parties, the Debtor, the Committee and Cabre Partners, LLC shall retain all rights and remedies they respectively have under the Lender Loan Agreements, and the Financing Orders and for all such purposes, the Additional DIP Financing shall be deemed part of the DIP Financing.

10.  <u>Successors and Assigns</u>.  This Stipulation and Order shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns, including, without limitation, any trustee who may be appointed in this Chapter 11 Case or any subsequent Chapter 7 or Chapter 11 case.

11.  <u>Counterparts</u>.  This Stipulation and Order may be executed by facsimile or .pdf transfer of a signed original in counterparts and all such counterparts, when taken together, shall constitute a single and binding instrument.

12. <u>Further Assurances</u>.  Each of the parties hereto agrees to execute and deliver, or cause to be executed and delivered, all instruments and to take all such actions as the other party hereto may reasonably request to effectuate the intent and purposes and to carry out the terms of this Stipulation and Order.  Each of Lender, the Secured Parties and the Debtor shall cooperate in the reasonable request of the other in connection with any matters relating to this Stipulation and Order.

13. <u>Headings</u>.  All headings and captions in this Stipulation and Order are for convenience only.  They shall not be deemed part of this Stipulation and Order and shall in no way define, limit, extend or describe the scope or intent of any provisions hereof.

14. <u>Survival</u>.  All actions taken, rights received and granted, and payments received in accordance with this Stipulation and Order, the Lender Loan Agreements or the Financing Orders shall not be subject to reconsideration, reversal or disgorgement, as the case may be, including without limitation, upon entry of an order: (i) confirming any plan of reorganization or liquidation of the Debtor, (ii) confirming or appointing a trustee, examiner or responsible person for the Debtor, or (iii) converting this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code.

15. <u>Notices</u>.  All notices, requests, demands, specifications and other communications contemplated by this Stipulation and Order shall be sent by hand or facsimile and deemed received the following business day to the parties at each of their respective addresses set forth below and in the DIP Agreement.

16. <u>Authorization</u>.  Each person executing this Stipulation and Order on behalf of a party represents that such person is duly authorized and empowered to execute and deliver this

Stipulation and Order on behalf of such party.

17. <u>Entire Agreement</u>. This Stipulation and Order contains the entire agreement of the parties hereto with respect to the subject matter hereof.

18. <u>Continuing Jurisdiction</u>. This Court shall retain jurisdiction to enforce the terms and conditions of this Stipulation and Order.

19. <u>Good Faith</u>. The terms of this Stipulation and Order were negotiated in good faith and at arms-length among the parties hereto and the Lenders are entitled to the protections of section 364(e) of the Bankruptcy Code with respect to the Additional DIP Financing.

20. <u>Modification</u>. The terms of this Stipulation and Order may not be modified except in writing executed by the parties hereto, which modification, if material, shall be subject to the prior approval of this Court.

Dated: New York, New York
      February __, 2010

GARFUNKEL WILD , P.C.
Special Counsel for the Debtor and Debtor- in-Possession

By: _____
Burton S. Weston (BW-3915)
Afsheen A. Shah (AS-1672)
111 Great Neck Road
Great Neck, NY 11021
Telephone: (516) 393-2200
Facsimile: (516) 466-5964

KLESTADT & WINTERS, LLP
Counsel for MSSH-ILL and MSSH-NY

By: _____

15

Sean C. Southard
292 Madison Avenue, 17th Fl.
New York, NY 10017
Telephone: (212)972-2245
Facsimile: (212) 607-7862

RUFF, WEIDENAAR, & REIDY, LTD.
Counsel for MSSH- ILL and MSSH-NY

By: _____
Stephen L. Ruff, Jr.
222 North LaSalle Street
Chicago, IL 60601
Telephone: (312) 263-3890
Facsimile: (312) 263-1345

**NO OBJECTION:**

ALSTON & BIRD, LLP
COUNSEL FOR THE COMMITTEE
90 Park Avenue
New York, New York  10016


By:_____
Martin Bunin Esq.


OFFICE OF THE UNITED STATES TRUSTEE


By:_____


**SO ORDERED:**


_____
**HON. ARTHUR J. GONZALEZ**
**UNITED STATES BANKRUPTCY JUDGE**