UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| Cabrini Medical Center, | : | Case No. 09-14398 (AJG) |
| Debtor. | : | |

-----------------------------------------------------------

**OPINION DENYING MOTION FOR THE DEBTOR TO ENTER INTO AN
AGREEMENT WITH SCLM CORP. FOR THE SALE OF DEBTOR'S AMBULANCE
OPERATING AUTHORITY**

APPEARANCES:

TOGUT, SEGAL & SEGAL LLP
Bankruptcy Counsel for the Debtor and Debtor in Possession
One Penn Plaza, Suite 3335
New York, New York 10119

        By:    Frank A. Oswald, Esq.


ROBERT JAY DINERSTEIN, P.C.
Counsel for SCLM
16 Cross Bow Lane
Commack, New York 11725

        By:    Robert Jay Dinerstein, Esq.


ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for the New York State Department of Taxation and Finance
120 Broadway – 24th Floor
New York, New York 10271

        By:    Neal S. Mann, Esq.


ARTHUR J. GONZALEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE

Before the Court is a motion (the "Motion") by Cabrini Medical Center (the "Debtor"), dated October 28, 2009, seeking an order authorizing the Debtor to enter into an agreement (the "Agreement") with SCLM Corp. ("SCLM") for the potential sale of Debtor's expired ambulance operating authority ("AOA") pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"). The New York State Department of Health (the "Department") is the agency-issuer of the Debtor's AOA. In its opposition memorandum, dated November 25, 2009, the Department requests the Court not permit the parties' entering into the Agreement because, *inter alia*, it entails this Court's reinstating the expired AOA in order for SCLM to transfer it without a full review by the Department pursuant to section 3008 of the New York Public Health Law (the "PHL"). Upon consideration of the pleadings and arguments of the parties, the Court finds that the Debtor may not enter into the proposed agreement with SCLM.

## I. Background

On January 16, 2007, the Department issued the AOA (Certificate No. 12475) to the Debtor. (Opposition to Debtor's Motion for an Order Authorizing the Debtor to Enter into an Agreement with SCLM Corp. for the Sale of Debtor's Ambulance Operating Authority ("Opposition Mem.") at 2). In January 2008, the Debtor ceased operation of its ambulance. (Mot. P7). Its AOA expired according to its own terms on January 31, 2009. (Mot. P8). The Debtor did not attempt to reinstate the AOA prior to filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code, on July 9, 2009. (Mot. PP5, 7-9). The Department has indicated to the Debtor that the AOA cannot be reinstated. (Mot. at Exhibit A, "Recitals").

By a letter dated September 22, 2009, SCLM offered, at its expense, to attempt to reinstate the Debtor's AOA, provided that, if successful, the Debtor would sell its AOA to

2

SCLM for $50,000.  On October 28, SCLM and the Debtor filed the Motion containing the Agreement, which (1) stipulates that SCLM is authorized to commence adversary proceedings "*to the extent necessary*" to reinstate the Debtor's AOA; (2) indicates that SCLM is authorized to challenge the Department on behalf of itself and the Debtor's estate in any proceeding; and (3) provides that if SCLM is successful in reinstating the AOA, SCLM will pay $50,000 in consideration of the Debtor's AOA pursuant to section 363(f) of the Bankruptcy Code.  (Mot. PP10(a)-(b)) (emphasis added).

The extent to which SCLM planned to commence adversary proceedings became clear at a subsequent hearing in this Court on December 16, 2009.  At that hearing, SCLM requested an opportunity to establish that this Court should reinstate the AOA, i.e., that SLCM should not have to go through the application process mandated by PHL section 3008.  SCLM asserted that there was precedent to support this Court's conducting such a proceeding.  The Court granted counsel an opportunity to submit said precedent.  In its submission, Supplementary Reply to the New York State Department of Health's Opposition to Debtor's Motion for an Order Authorizing Debtor to Enter into the Proposed Agreement with SCLM Corp. (the "Supplementary Reply"), dated January 7, 2010, SCLM provided as its primary precedent, two Complaints, submitted by its own attorney more than fifteen years ago, which do not clearly reference any bankruptcy court permitting the reinstatement of an expired AOA.  (Supp. Reply, Exhibits 1 and 2).

## II. Relevant Law

*A. Relevant Case Law*

3

There is a long line of precedent delineating the boundary between the jurisdiction of a bankruptcy court and that of a state seeking to enforce its regulatory powers. *Smith v. New York State Liquor Authority (In re Bay Ridge Inn, Inc.)*, 94 F.2d 555 (2d Cir. 1938), concerned state laws which authorized the New York State Liquor Authority (the "Authority") to adjudicate liquor licensing decisions. The Second Circuit concluded that the existence of those state laws was a sufficient basis upon which to find that any license determination within the purview of those laws was "in no way within the control of the bankruptcy court." 94 F.2d at 557. In *Bay Ridge*, the district court had voided the Authority's revocation of a liquor license that a bankruptcy trustee had purported to assign to a third party. The Second Circuit reversed, concluding that a liquor license is a "privilege subject to the jurisdiction of the State Liquor Authority." *Id.* This was premised upon several sections of the Alcoholic Beverage Control Law, which specified, *inter alia*, that the Authority has the discretion to refuse to permit the continuation of a business using a liquor license. *Id.* Accordingly, the court held that in order to have the license reinstated, the trustee "was obliged to avail himself of the means afforded by the act and seek his remedy by an application to the Authority and, if unsuccessful, by means of a review by the New York court." *Id.* The court further concluded that "[t]he right to reinstatement or to a refund depends wholly upon the action of the state tribunals and is *in no way within the control of the bankruptcy court*." *Id.* (emphasis added).

In *Colonial Tavern, Inc. v. Byrne*, the debtors appealed the bankruptcy court's refusal to grant a preliminary injunction enjoining city and state authorities from enforcing a sixty-day suspension of debtors' liquor license. 420 F. Supp. 44 (D. Mass. 1976). The district court affirmed the order of the bankruptcy court. In so doing, the court relied on *Bay Ridge*, emphasizing that there was nothing in the prior case law of the Bankruptcy Act or bankruptcy

4

rules to suggest that the powers of a bankruptcy court extend to interference in the comprehensive regulatory laws of a state or its enforcement of its police powers. *Id*. at 45-46. The *Byrne* court reasoned that Chapter XI should not "provide an instantly available, cheap and easy sanctuary from all state regulatory enforcement proceedings." *Id*. at 46; *see also In re Application of Lewis*, 512 F. Supp. 1146, 1149-1150 (S.D.N.Y. 1981) ("It is long recognized that a state's exercise of regulatory or "police" power is not divested of jurisdiction or authority by the fact that the subject is under exclusive jurisdiction of a federal bankruptcy court.").

In *In re National Hospital & Institutional Builders Co.*, by reversing the district court's lifting of an automatic stay, the Second Circuit prevented the continuation of proceedings to revoke a certificate of occupancy for debtor's nursing home. 658 F.2d 39 (2d Cir. 1981) (Lumbard, J.). The court limited the application of the reasoning of *Bay Ridge* as well as *Colonial Tavern* by finding that *Bay Ridge* does not stand for the proposition that bankruptcy courts must defer to bad faith in local regulation. *Id*. at 42-43. Given that the bankruptcy court's factual findings supported the debtor's claim that the City's conduct was not a valid exercise of its police power, the Second Circuit remanded to the district court for review of the findings of bad faith before determining whether the bankruptcy court's injunction should stand. *Id*. at 43-44. Judge Mansfield dissented, however:

> In my view the Bankruptcy Court lacks jurisdiction to interfere with the state's enforcement of its regulatory powers. [T]hose state police powers rest within the exclusive jurisdiction of the state's administrative apparatus. . . . A federal bankruptcy court is not a super-City Planning Commission or Board of Standards and Appeals. . . . [I]f the Bankruptcy Court can prevent a state regulatory agency from taking action that might lessen the value of the estate, nothing would prevent it from enjoining the state from invoking other state laws that might affect the bankrupt, such as those calling for revocation of a license for cause or lapse, prohibiting the erection of advertising signs, prescribing fire control or safety regulations, authorizing criminal proceedings, or the like.

*Id*. at 44-45 (internal citations omitted).

The Supreme Court's opinion in *Board of Governors of the Fed. Reserve Sys. v. MCorp Fin.* is more in accord with Judge Mansfield's dissent than the majority opinion in *National Hospital*. 502 U.S. 32 (1991). MCorp filed a voluntary bankruptcy petition and then brought suit against the Board of Governors of the Federal Reserve System (the "Board"), seeking to enjoin the prosecution of two administrative proceedings. The district court enjoined both proceedings. The Supreme Court held that the district court lacked jurisdiction to enjoin either proceeding. The Court noted that a series of federal statutes gave the Board "substantial regulatory power over bank holding companies" as well as established "a comprehensive scheme of judicial review of Board Actions" and that none of the avenues of judicial review in a district court were available in the present case. *Id*. at 37-39. MCorp contended, along the lines of the majority holding in *National Hospital*, that application of the exception to the automatic stay available for a governmental unit's exercise of its police or regulatory power, under section 362(b)(4),[1] requires that a court determine whether the exercise of such police or regulatory power is legitimate. The Supreme Court disagreed:

> MCorp's broad reading of the stay provisions would require bankruptcy courts to scrutinize the validity of every administrative or enforcement action brought against a bankrupt entity. Such a reading is problematic, both because it conflicts with the broad discretion Congress has expressly granted many administrative entities and because it is *inconsistent with the limited authority Congress has vested in bankruptcy courts*.

---

[1] Title 11 U. S. C. § 362(b)(4) provides: "(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U. S. C. 78eee(a)(3)), does not operate as a stay --
. . . .

"(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power . . . ."

*Id*. at 40 (emphasis added).[2]

*MCorp* supports the proposition that bankruptcy courts cannot look at whether an exercise of police power is legitimate. 502 U.S. at 40. Since *MCorp*, however, bankruptcy courts have analyzed whether the police or regulatory power is actually being invoked. *See, e.g.*, *Safety-Kleen, Inc. v. Wyche, et al, (In re Pinewood)*, 274 F. 3d 846 (4th Cir. 2001); *Enron Corp. v. California ex rel. Lockyer (In re Enron Corp.)*, 314 B.R. 524 (Bankr. S.D.N.Y. 2004). In order to do so, they distinguish between "situations in which the state acts pursuant to its 'police and regulatory power' and situations in which the state acts merely to protect its status as a creditor." *Safety-Kleen*, 274 F. 3d at 865. If the purpose of the law is to effectuate public policy or promote "public safety and welfare," then the exception applies. *Id.* (internal citations omitted). But, "if the purpose of the law relates 'to the protection of the government's pecuniary interest in the debtor's property,' or to 'adjudicate private rights,' then the exception is inapplicable" (the "pecuniary test"). *Id.* (internal citations omitted).[3]

*B. Relevant New York State Public Health Statutory Law*

---

[2] It is noted that the Second Circuit found that the holding in MCorp did not apply where no Bankruptcy Code Section 362(b) exemption was claimed to be applicable. *In re Colonial Realty Co.*, 980 F.2d 125, 135 (2d Cir. Conn. 1992). This Court, however, relies on *MCorp* not for its holding, but rather for its reasoning.

[3] As the court in *In re Pollock* recognized, there has been some disagreement about which version of the pecuniary test should be applied. 402 B.R. 534, 536 (Bankr. N.D.N.Y. 2009); compare *U.S. ex. rel. Fullington v. Parkway Hosp.*, 351 B.R. 280, 283 (E.D.N.Y. 2006) (comparing and contrasting the conflicting "pecuniary purpose" and "pecuniary advantage" tests, ultimately applying the pecuniary advantage test), with *In re Enron Corp.*, 314 B.R. at 535 (applying the pecuniary purpose test). It is unnecessary for the Court to address this disagreement at this time, since the only point here is to emphasize that a bankruptcy court's jurisdiction with respect to analyzing an exercise of police power extends to whether it was an exercise of police power and not to the legitimacy of that exercise.

7

New York Public Health Law section 3000 states: "The furnishing of medical assistance in an emergency is a matter of vital concern affecting the public health, safety and welfare." N.Y. Pub. Health Law § 3000 (2010). The same section classifies "[p]rehospital emergency medical care, the provision of prompt and effective communication among ambulances and hospitals and safe and effective care and transportation of the sick and injured" as "essential public health services." *Id.* Section 3000 also provides the purpose of New York Public Health Law Article 30: "to promote the public health, safety and welfare by providing for certification of . . . ambulance services; the creation of regional emergency medical services councils; and a New York state emergency medical services council to develop minimum training standards." *Id.* Accordingly, Article 30 mandates that the issuance, transfer, and reinstatement of any New York AOA are all subject to the Department and the Regional Emergency Medical Services Council (the "Regional Council"). *See* N.Y. Pub. Health Law § 3000 (2010) *et seq*.

With respect to issuance, section 3005 requires that no ambulance service operate unless it possesses "a valid ambulance service certificate issued pursuant to this article." N.Y. Pub. Health Law § 3005(1) (2010). Such issuance requires a finding of competence and fitness to operate the service in accordance with the rules of Article 30 as well as the approval of the appropriate regional council. N.Y. Pub. Health Law § 3005(5), (6) (2010). The Regional Council must make determinations of public need for the establishment of additional emergency medical services. N.Y. Pub. Health Law § 3003(5) (2010); *see id*. § 3008. To apply for such a determination, an applicant must submit an application in writing to the appropriate regional council. N.Y. Pub. Health Law § 3008(1) (2010).

In order to transfer an AOA, a potential transferor must obtain review by and the approval of the Department and the Regional Council. N.Y. Pub. Health Law § 3010(2) (2010).

Expired AOAs—those that have not been in service for a continuous period in excess of thirty days, cannot be transferred without the "full review" of the Regional Council. N.Y. Pub. Health Law § 3010(4); (Affidavit of Lisa Burns in Support of Objection to Debtor's Motion for an Order Authorizing the Debtor to Enter into an Agreement with SCLM Corp. for the Sale of Debtor's Ambulance Operating Authority, PP 3-4).

Section 3002 explains the appellate procedure in place for Article 30 determinations. Appellants can appeal Regional Council determinations in the state council. N.Y. Pub. Health Law § 3002(3). And determinations of the state council are subject to review by state courts as provided in Article 78 of the New York Civil Practice Laws and Rules. *Id*.

### III. Analysis

The case at hand, while factually dissimilar from *Bay Ridge*, at least insofar as the Debtor has not already transferred its AOA, falls squarely within its reasoning. The Debtor is attempting to assign its expired AOA to a third-party buyer, SCLM. SCLM is seeking to obtain from this Court a determination that it is entitled to reinstatement of the license in lieu of a full review by the Department under New York Public Health Law section 3008. Granting such a determination would be similar to the district court's voiding the New York State Liquor Authority's revocation of a liquor license in *Bay Ridge* because here, like in *Bay Ridge*, there are state laws that unambiguously require applications to the relevant state agencies for such a determination.

Granted, the Agreement between the Debtor and SCLM indicates that SCLM will assume all responsibility with regard to satisfying the requirements under section 3010 of the New York Public Health Law in order to consummate the transfer of the AOA. (Mot. at 4 n. 1). SCLM's

9

representations at the hearing on December 16, 2009, and in its Supplementary Reply, however, make clear that it is not SCLM's intentions to fulfill the statutory requirements of the PHL. As stated above, section 3010 requires, in order to transfer an AOA, or an expired AOA, the potential transferor must obtain the approval of the *Department* or the *Regional Council*. N.Y. Pub. Health Law § 3010(2), (4). SCLM nevertheless claims there have been instances in the past in which *bankruptcy courts* have granted an application to reinstate an abandoned and expired AOA. (Supp. Reply at 2). SCLM indicates that requiring the debtor or SCLM to file for a transfer of the AOA pursuant to PHL section 3008, which would entail a public need determination, would render the Debtor's AOA valueless and remove any incentive for SCLM to purchase the Debtor's AOA since "[i]t could simply bring on a PHL §3008 application on its own behalf." (*Id.* at 5). SCLM suggests a demonstration of public need is unnecessary given that "in the interim since the Debtor's AOA fell into disuse [the Department has not alleged] the need for the Debtor's service has been filled by an applicant for new or expanded AOA." (*Id*. at 6). In addition, at the hearing, SCLM requested an opportunity to prove that this Court should reinstate the AOA.

The long line of precedent discussed *supra* clearly limits the scope of permissible inquiries by a bankruptcy court into matters related to an exercise of police power. Any proceeding addressing whether the AOA can be reinstated would involve a "matter of vital concern affecting the public health, safety and welfare." N.Y. Pub. Health Law § 3000 (2010). The Court, accordingly, finds that it lacks jurisdiction to adjudicate this issue.

One of the requirements of the Agreement, however, is this Court's entertaining proceedings addressing the reinstatement of the AOA. Given counsel's amplification of that requirement at the December 16th hearing, it appears the Debtor and SCLM are unwilling to

enter into the Agreement in the absence of this Court's agreeing to that requirement.

Accordingly, the motion for an order to enter into an agreement with SCLM for the sale of Debtor's AOA is DENIED.

An order will be entered simultaneously hereby denying the relief sought.

April 7, 2010

                                         **s/Arthur J. Gonzalez**
                                         CHIEF UNITED STATES BANKRUPTCY JUDGE