Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Frank A. Oswald
Howard P. Magaliff

*Bankruptcy Counsel for
  the Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                       :

In re:                         :       Chapter 11

                                 :       Case No. 09-14398 (AJG)

CABRINI MEDICAL CENTER,  :

                                 :

                 Debtor.    :

                                 :

------------------------------------------------------------x

### DEBTOR'S MOTION FOR AN ORDER (I) APPROVING MANDATORY CLAIMS RESOLUTION PROCESS TO RESOLVE MEDICAL MALPRACTICE AND NEGLIGENCE CLAIMS AND RELATED INDEMNIFICATION CLAIMS AGAINST THE DEBTOR, AND (II) ENJOINING ANY MEDICAL MALPRACTICE ACTION AGAINST CERTAIN OF THE DEBTOR'S FORMER MEDICAL PROFESSIONALS

TO THE HONORABLE ARTHUR J. GONZALEZ,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

        Cabrini Medical Center (the "Debtor"), as debtor and debtor in posses-

sion, by its attorneys Togut, Segal & Segal LLP, respectfully makes this motion (the

"Motion") for an order pursuant to section 105(a) of title 11 of the United States Code

(the "Bankruptcy Code"), Rule 9019-1 of the Local Bankruptcy Rules for the Southern

District of New York (the "Local Rules") and General Order M-390 (i) approving a

mandatory claims resolution process (the "Claims Resolution Process") to resolve and

liquidate medical malpractice and/or other negligence claims for bodily injury or

wrongful death and related indemnification claims against the Debtor, and (ii) enjoining

any medical malpractice or negligence actions against certain of the Debtor's former

Medical Professionals (as defined below).  In support of the Motion, the Debtor states:

## SUMMARY OF RELIEF REQUESTED

1.      The Debtor proposes to implement the Claims Resolution Process to resolve (a) certain pre-petition claims against the Debtor resulting from negligence and/or the provision of medical services, including bodily injury, medical malpractice or wrongful death claims, and (b) related indemnification claims filed by doctors, some of whom may be defendants in medical malpractice actions (each a "Litigation Claim," and collectively, the "Litigation Claims").  To maximize the probability of consensually resolving the Litigation Claims, the Debtor also seeks to enjoin the holders of Litigation Claims from prosecuting any action related to the Litigation Claims against the Debtor's former Medical Professionals until confirmation of a plan of liquidation for the Debtor (a "Plan").

2.      Pursuant to the proposed Claims Resolution Process, the Debtor and the Litigation Claimants (as defined below) would first attempt to settle, rather than litigate, the Litigation Claims through a Court-imposed mediation process described in detail below.[1]  The Debtor proposes that if the Debtor and the holder of a Litigation Claim are unable to liquidate or compromise the Litigation Claim through good faith efforts in accordance with the mediation procedures and requirements set forth below, the Litigation Claim, together with any vicarious or other liability the Debtor may have on account of the claim, may be estimated pursuant to section 502(c) of the Bankruptcy Code in the United States District Court for the Southern District of New York (the "District Court").

3.      A Litigation Claimant may opt out of the mediation process by advising counsel for the Debtor in writing (with a copy to counsel for the Committee (as

---

[1]      By seeking to implement the Claims Resolution Process, the Debtor is not acknowledging or admitting any liability in connection with the Litigation Claims.

defined below)) of his or her desire to resolve a Litigation Claim by entering into and filing with the Court a stipulation with the Debtor modifying the automatic stay to permit the Litigation Claimant to liquidate his or her Litigation Claim in a forum outside of this Court, but limiting all recovery solely to any available insurance coverage, or by withdrawing the claim.

4.      The Claims Resolution Process will enable the Debtor and the Litigation Claimants to resolve the Litigation Claims by mediation or otherwise as soon as practicable.  Accordingly, the Debtor respectfully submits that the Claims Resolution Process should be approved by this Court.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The predicates for the relief the Debtor seeks are section 105(a) of the Bankruptcy Code, Local Bankruptcy Rule 9019-1 and General Order M-390.  This Motion is brought pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## INTRODUCTION AND BACKGROUND

### A.      The Bankruptcy Filing

7.      On July 9, 2009 (the "Petition Date"), the Debtor commenced a case under chapter 11 of the Bankruptcy Code.  The Debtor is authorized to manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed.  On July 20, 2009, the United States Trustee appointed a committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee").

8.     The factual background relating to the Debtor's commencement of the chapter 11 case is set forth in detail in the Affidavit of Diane Kniejski, the Chief Operating Officer of Cabrini, Pursuant to Local Bankruptcy Rule 1007-1 and in Support of Chapter 11 Petition [Docket No. 1] filed on the Petition Date and incorporated by reference.

9.     On December 4, 2009, the Debtor filed a motion (the "Sale Motion") for an order approving, among other things, the sale of its real property and related assets free and clear of liens, claims, encumbrances, and other interests, and the assumption and assignment of executory contracts in connection with the sale.  On December 30, 2009 the Court entered the *Order (A) Approving (I) Bidding Procedures, (II) the Time, Date, Place and Form of Notice for the Auction and Sale Hearing, and (III) Break-Up Fee, Termination Rights and Related Security Interest, and (B) Establishing the Date and Time for a Sale Hearing With Respect to the Debtor's Real Property and Related Assets* (the "Bidding Procedures and Scheduling Order").

10.     Pursuant to the Bidding Procedures and Scheduling Order, an auction was held on January 28, 2010, and by Order dated February 11, 2010, the Court approved the $83.1 million bid of S.K.I. Realty, Inc. (the "Buyer") as the highest and best bid for the Debtor's Assets.  The Debtor closed with the Buyer on October 14, 2010.

11.     The proceeds from the sale of the Assets to the Buyer will be used to fund the Debtor's Plan, which includes payments to unsecured creditors such as the Litigation Claimants if there is no available insurance.

**B.     The Bar Date and the Litigation Claims**

12.     By Order dated September 22, 2009 [Docket No. 108], pursuant to Bankruptcy Rule 3003(c)(3), this Court set November 20, 2009 at 5:00 p.m. (the "Bar Date") as the deadline by which proofs of claim were required to be filed in the chapter

11 case by each person or entity asserting a claim against the Debtor, including claims entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code.

13. Prior to the Petition Date, the Debtor was named as defendants or co-defendants in a number of pending court actions based upon Litigation Claims (the "Court Actions"). To date, Litigation Claims relating to 30 cases have been asserted against the Debtor and its estate.[2] The Court Actions are stayed by operation of law against the Debtor under section 362(a) of the Bankruptcy Code, but are not automatically stayed against any non-debtor co-defendants including the Debtor's former Medical Professionals. A list of those Litigation Claims filed against the Debtor, which the Debtor is currently aware of, is attached to this Motion as Exhibit "1".[3]

14. The Litigation Claims need to be liquidated in a systematic, comprehensive and cost-efficient manner. The Debtor maintained limited third party medical malpractice insurance; many of the Litigation Claims are not covered by insurance and the holders of those claims (individually, a "Litigation Claimant", and collectively, the "Litigation Claimants") do not have the option to recover from insurance proceeds.[4]

## C. Retention of Medical Malpractice Counsel

15. By Order dated July 29, 2009 [Docket No. 58], the Debtor was authorized to employ and retain Garbarini and Scher, P.C. ("Garbarini") as its special medical malpractice counsel. Garbarini, an experienced medical malpractice firm that

---

[2] Three claims for indemnification have also been filed against the Debtor in connection with the Court Actions.

[3] The Debtor reserves the right to object to any Litigation Claims filed after the Bar Date as late-filed claims.

[4] The Debtor was party to several malpractice and personal injury insurance policies and programs prior to January 1, 2005. Specifically, the Debtor had a "claims made" policy with Physicians' Reciprocal Insurance covering malpractice claims based on claims made between January 1, 2002 and December 31, 2004. The policy provided coverage of $1 million per occurrence and $2 million aggregate, per year inclusive of defense costs and related administrative expenses. The Debtor was self insured for arising on or after January 1, 2005.

represented the Debtors in the majority of the prepetition malpractice actions to which it was a party, among other things is advising the Debtor in connection with the resolution of the Litigation Claims and the estimation of the Debtor's aggregate liability with respect to such claims.

**D.      Potential Distribution to Unsecured Creditors**

16.      The Debtor intends to prepare and file a chapter 11 plan in the near term and to ultimately make a distribution to general unsecured creditors in this case.[5] Most, if not all, of the Litigation Claims are asserted as general unsecured claims. Litigation Claims filed in the case aggregate approximately $103.1 million, plus unliquidated amounts. Thus, it will benefit all parties in this case to have an efficient mechanism to resolve Litigation Claims, as has been done in other recent chapter 11 hospital cases.

17.      The Debtor, the Committee and MSSH have discussed the parameters of a joint Plan that would include a mechanism by which the holders of allowed Litigation Claims, including Litigation Claimants whose claims are settled pursuant to the Claims Resolution Process described below, would be entitled to receive a *pro rata* distribution on a percentage basis which is the same estimated percentage as the distribution to be made under the Plan to the holders of allowed general unsecured claims other than Litigation Claims.

**RELIEF REQUESTED**

---

[5]      The Debtor anticipates that funds will be available for distribution to general unsecured creditors as result of a settlement reached by the Committee and the Missionary Sisters of the Sacred Heart ("MSSH"), a pre-petition secured lender of the Debtor, in the adversary proceeding entitled *Official Committee of Unsecured Creditors of Cabrini Medical Center v. Missionary Sisters of the Sacred Heart – Illinois and Missionary Sisters of the Sacred Heart – New York*, Adv. Pro. No. 09-01639, that will be subject to Court approval under Bankruptcy Rule 9019. While the Debtor believes that there will be sufficient funds to pay all administrative and priority claims and confirm a plan of liquidation, there is no assurance that a plan will be confirmed.

18.     By this Motion, the Debtor seeks entry of an order, substantially in the form attached as Exhibit "4", (i) approving and establishing the Claims Resolution Process for the Litigation Claims, as described herein; and (ii) if a particular Litigation Claimant chooses to opt out of the mediation process pursuant to the Stay Modification Option (as defined below), approving the form of the stipulation attached to this Motion as Exhibit "2" providing, among other things, that the automatic stay shall be modified solely to liquidate the claimant's Litigation Claim, but limiting all recovery solely to any available insurance coverage.

19.     The Debtor submits that under the circumstances it would be time consuming, unduly burdensome and expensive for the Debtor to have to defend against and liquidate numerous Litigation Claims in other tribunals, particularly since the Debtor is self-insured for a majority of the claims and would not be recovering defense costs from an insurer. Such a cumbersome process would significantly delay the resolution of the Litigation Claims and the administration of the chapter 11 case, and substantially increase the administrative expenses of the Debtor's estate. Therefore, the Debtor has designed a comprehensive and systematic program to resolve the Litigation Claims fairly and expeditiously through the Claims Resolution Process outlined below.

20.     In addition, to enhance the benefits to the Debtor and its estate through the institution of the Claims Resolution Process, the Debtor requests that the order granting this Motion also extend the automatic stay, until confirmation of a Plan, to any Litigation Claim against former employees of the Debtor and other professionals who provided medical services at the Debtor's hospital and who were covered under the Debtor's self-insured medical malpractice plans (including, without limitation, doc-

tors, interns, residents, nurses and others, collectively, the "Medical Professionals").[6] Extending the automatic stay to Litigation Claims against the Medical Professionals will permit the Debtor to resolve the Litigation Claims efficiently and effectively pursuant to the Claims Resolution Process. The Debtor submits that an extension of the automatic stay is necessary to prevent any judicial determination in such actions from potentially being *res judicata* with respect to Litigation Claims against the Debtor.

## PROPOSED TERMS OF THE
## CLAIMS RESOLUTION PROCESS[7]

21. The Debtor proposes that the Claims Resolution Process consist of the following elements:

(a) <u>Referral to Mediation</u>. All Litigation Claims shall be referred by the Court to mediation (the "Mediation"). No Litigation Claimant shall be allowed to seek a recovery on account of any Litigation Claim against the Debtor, the Medical Professionals, or any of the Debtor's assets, unless they have first complied, in good faith, with the Claims Resolution Process.

(b) <u>Appointment of Mediator</u>. The Debtor shall select a mediator or mediators (the "Mediator") after consultation with Garbarini and the Committee. The Debtor anticipates that any mediator selected will be a retired New York State Supreme Court Justice with extensive experience in presiding over and mediating medical malpractice and negligence claims of the nature of the Litigation Claims, or an attorney with similar experience. The Debtor requests that it be authorized to retain and compensate the Mediator without further order of the Court. The Mediator shall serve for

---

[6] While the Debtor now seeks only a limited extension of the automatic stay to Litigation Claims against the Medical Professionals until confirmation of a Plan, the Debtor expects that it will seek a further extension through a Plan.

[7] The Debtor reserves the right to seek to amend or modify the terms of the proposed Claims Resolution Process.

an initial term of six (6) months from the date he or she is selected. The Mediator's term may be extended upon further order of the Court or as provided in a confirmed Plan. The Mediator shall charge his or her standard hourly rate for services of this kind. The Mediator shall be subject to the conditions of disqualifications set forth in 28 U.S.C. § 455. The Mediator shall be responsible for scheduling and overseeing the Mediation.

(c)    <u>Conduct of Mediation</u>. The Debtor shall give notice to each Litigation Claimant of the Mediator's appointment. As soon as practicable after the appointment of the Mediator, he or she shall confer with representatives of the Debtor and the applicable Litigation Claimant to discuss procedural issues applicable to the mediation process. The Mediator shall have the duty and authority to establish the time for all mediation activities, including the mediation session or sessions with respect to each particular claim (the "Mediation Sessions") and the submission and exchange of relevant documents. The Mediator shall select the order in which Litigation Claims will be presented to the Mediator, including the date, time and location of each Mediation Session, but shall take into account specific scheduling concerns of the parties in the Mediator's sole discretion. In all cases, the Mediator shall have the authority to establish reasonable and practical Mediation procedures. Nothing in this Mediation process shall preclude the Debtor from attempting to resolve a Litigation Claim without having the Litigation Claimant attend a Mediation Session.

(d)    <u>Notice</u>. At the direction of the Mediator, the Debtor shall serve notice of the date, time and location of the individual Mediation Sessions (the "Mediation Notice") upon counsel to the respective Litigation Claimant, and if counsel is not known, then upon the Litigation Claimant at the address listed on the proof of claim filed by the Litigation Claimant against the Debtor. The Mediation Notice also shall contain the procedures applicable to the individual Mediation Sessions, including

the time for submission of any documents or statements by the parties. No party in interest shall be allowed to conduct any discovery related to a Litigation Claim prior to the initial Mediation Session. Any discovery allowed after the initial Mediation Session shall be determined by the Mediator in his or her sole discretion.

(e) <u>Mediation Sessions</u>. Any party may be represented by legal counsel at its own cost and expense, although the participation of legal counsel shall not be required for the conduct of the Mediation. The Mediator shall meet with the parties or their representatives, individually and jointly, for a conference or series of conferences as determined by the Mediator. The Litigation Claimant and the Debtor or their respective representatives must be present at the conferences. Each representative must have the complete authority to negotiate all disputed amounts and issues associated with a given Litigation Claim. The Mediator shall report any willful failure to attend or participate in good faith in the Mediation Sessions to the Court. Such failure may result in the imposition of sanctions by the Court. The Mediator shall have the authority to establish a deadline for the Litigation Claimants to act upon a proposed settlement or upon a settlement recommendation from the Mediator.

(f) <u>Approval of Settlements.</u> The Mediator shall have no obligation to make written comments or recommendations about settlement, but may furnish the parties with a written or oral settlement recommendation, which shall not be filed with the Court. If the parties reach an agreement regarding the disposition of the matter, the Debtor shall give 10 days' prior written notice of the settlement to the Committee. If the Committee opposes the settlement, it shall promptly (within the 10-day period) advise the Debtor, and the parties shall attempt to resolve the opposition. If there is no opposition or after the opposition has been resolved, the settling parties shall enter into a stipulated order in the form of Exhibit "3" approving the settlement which shall

contain, among other things, appropriate releases by the Litigation Claimant against the Debtor's estate and to the extent relevant, to the Medical Professionals.[8] If opposition to the settlement cannot be resolved, the Court shall resolve the objection. If the Debtor and a Litigation Claimant fail to settle the Litigation Claim, no party will be bound by the Mediator's recommendation or by any statement made or action taken during the Mediation.

      (g)   <u>Confidentiality</u>. The following shall apply with regard to confidentiality: (i) any statements made by the Mediator, the Litigation Claimants, the Debtor, their respective representatives, or by others during the Mediation process shall not be divulged by any of the participants in the Mediation (or their representatives) or by the Mediator to the Court or to any third party; (ii) all records, reports, or other documents received or made by the Mediator while serving in such capacity shall be confidential and shall not be provided to the Court, unless they would be otherwise admissible at any hearing or trial in connection with any Litigation Claim; and (iii) the Mediator shall not be compelled to divulge such records or to testify in regard to the Mediation in connection with any arbitral, judicial or other proceeding, including any hearing held by the Court or any other court in connection with any Litigation Claim.

      (h)   <u>Costs</u>. The Mediator's fees and expenses incurred in connection with each Mediation Session (the "Mediation Costs") shall be borne as follows: (i) the Debtor and each Litigation Claimant shall each be responsible for 50% of the Mediation Costs for such Litigation Claimant's Mediation Sessions, *provided that* if there is insurance available for a Litigation Claim, the Debtor's portion of the Mediation Costs shall be paid from the proceeds; (ii) each party shall bear its own legal and other pro-

---

[8]   The Debtor, in consultation with the Committee and MSSH, reserves the right to seek to revise the foregoing procedures with respect to the approval of settlements.

fessional fees and expenses, and (iii) if either a Litigation Claimant (or a representative thereof) or a representative of the Debtor fails to appear for any scheduled Mediation Session without giving written notice, to be received at least five (5) days prior to the scheduled Mediation Session, to (a) the Mediator and (b) counsel for the opposing party, if any, the party failing to appear shall be responsible for 100% of the Mediation Costs for that Mediation Session, including attorneys' fees and costs for opposing counsel, if the Mediator or the Debtor are unable to substitute an alternate Mediation Session for the cancelled Mediation Session. If the party cancelling the Mediation Session fewer than five (5) days prior to the Mediation Session is a Litigation Claimant, the Litigation Claimant shall be responsible for 100% of the cost of the cancelled Mediation Session regardless of whether the Litigation Claimant ultimately receives a distribution in the chapter 11 case, only in the event that an alternate Mediation Session was unable to be substituted for the cancelled Mediation Session. The Debtor may advance all costs of the Mediation and recoup payments made on behalf of the Litigation Claimants by reducing the distribution payable to the Litigation Claimant. If a Litigation Claimant's distribution on any allowed claim is insufficient to pay for the Litigation Claimant's share of the Mediation costs, the Litigation Claimant shall pay the balance of the amount due to the Debtor within ten days of receiving written notification of the amounts due.

(i)     <u>Additional Litigation Claims.</u>  With respect to Litigation Claims filed after the Bar Date, the Debtor shall have the right to object to such claims as late filed and/or to serve a notice (without further order of the Court) on the applicable Litigation Claimant requiring participation in the Claims Resolution Process. Moreover, with respect to Litigation Claims filed after the Bar Date that are deemed timely filed by the Court, the Debtor shall have the right to serve a notice (without further or-

der of the Court) on the applicable Litigation Claimant requiring participation in the Claims Resolution Process.

(j) <u>Estimation of Litigation Claims</u>. If the Debtor and a particular Litigation Claimant are unable to liquidate or compromise a Litigation Claim through good faith efforts in accordance with the Mediation procedures and requirements set forth above, the Debtor reserves the right to have the Litigation Claims estimated pursuant to section 502(c) of the Bankruptcy Code in the District Court, together with any vicarious or other liability the Debtor may have on account of any indemnification claim related to a Litigation Claim or otherwise.

(k) <u>Cash-Out Provision</u>. The Debtor intends to include a provision in the Plan to be filed that will permit a Litigation Claimant to elect an option to accept a cash-out (the "Cash-Out Election") to resolve all timely filed claims against the Debtor, in the amount of up to $5,000 to be paid upon confirmation from insurance proceeds, if available, or otherwise from the Debtor's assets. The Cash-Out Election will be in full and final satisfaction of the Litigation Claim and any Litigation Claimant exercising the Cash-Out Election must agree not to seek any further payment on account of its Litigation Claim against the Debtor or its Medical Professionals or from applicable insurance proceeds. Litigation Claimants who do not exercise the Cash-Out Election shall be required to continue and complete the Mediation.

22. A Litigation Claimant may opt out of the Mediation process by advising counsel for the Debtor in writing (with a copy to counsel for the Committee) of his or her desire to resolve the Litigation Claim by entering into and filing with the Court a stipulation with the Debtor, substantially in the form attached as Exhibit "2" (the "Stay Modification Stipulation"), modifying the automatic stay for the sole purpose of permitting the Litigation Claimant to liquidate his or her Litigation Claim in a forum

outside of this Court, but limiting all recovery solely to any available insurance coverage (the "Stay Modification Option"). A Litigation Claimant also may avoid the Mediation process by withdrawing his or her Litigation Claim in its entirety or by otherwise reaching a settlement with the Debtor.

23. Litigation Claims that are fixed and liquidated through the Claims Resolution Process, whether through Mediation or settlement, or estimated by the District Court, shall receive the same treatment under a confirmed Plan as other Litigation Claims, or, if no Plan is confirmed, in accordance with the Bankruptcy Code, in full and complete satisfaction of such allowed claims.

## BASIS FOR RELIEF REQUESTED

24. The Debtor believes that the Claims Resolution Process will facilitate consensual settlement and liquidation of most, if not all, Litigation Claims in a manner that is most efficient for both the Debtor and the Litigation Claimants. Counsel for the Debtor and the Committee have been involved in other chapter 11 hospital cases where similar mediation procedures have been highly effective and successful in streamlining and expediting the claims resolution process.

25. The proposed Claims Resolution Process also is fair in that it merely requires a Litigation Claimant to participate in the Mediation in good faith. If a settlement cannot be reached, the Debtor reserves the right to seek to have the Litigation Claim estimated pursuant to section 502(c) of the Bankruptcy Code in the District Court. Thus, the Claims Resolution Process protects the Litigation Claimants' rights, if any, under 28 U.S.C. § 157(b)(5). If a Litigation Claimant opts out of the Mediation process pursuant to the Stay Modification Option, the Litigation Claimant's right to litigate the merits of his or her Litigation Claim in a forum other than this Court and his or her rights, if any, under section 362(d) of the Bankruptcy Code and 28 U.S.C. § 157(b)(5) are

protected, although in accordance with the Stay Modification Option such Litigation Claimant's recovery is limited to any available insurance coverage. Moreover, a Litigation Claimant that does not wish to spend the time and/or incur the expense of mediating or litigating his or her Litigation Claim may withdraw his or her Litigation Claim in its entirety or otherwise reach a settlement with the Debtor.

26.     Given the large number of Litigation Claims, the Debtor believes that the continued efficient administration of its estate and the fair treatment of creditors requires it to develop and implement a uniform and systematic approach for resolving the Litigation Claims that appropriately balances a variety of factors including, without limitation, limited bankruptcy court jurisdiction over the Litigation Claims, the amount of the Debtor's defense costs, and the anticipated limited recoveries to unsecured creditors.

27.     This Court may not liquidate the Litigation Claims. *See Germain v. The Connecticut Nat'l Bank*, 988 F.2d 1323, 1327 (2d Cir. 1993) (noting that 28 U.S.C. § 157(b)(5) requires bankruptcy litigants to try a personal injury action in the district court); *In re United States Lines, Inc.*, 1998 WL 382023 at *4 (S.D.N.Y. July 9, 1998) (28 U.S.C. § 157(b)(5) was enacted to address the issue that the bankruptcy courts were not constitutionally permitted to adjudicate non-core matters, such as personal injury cases). Indeed, only the federal district courts possess the power to reduce the Litigation Claims to judgment. *See In re Waterman S.S. Corp.*, 63 B.R. 435, 436 (Bankr. S.D.N.Y. 1986) (stating that "28 U.S.C. § 157(b)(5) mandates that trials of personal injury or wrongful death claims arising under Title 11 be held in the district court.").

28.     Nevertheless, this Court has the authority to approve the Claims Resolution Process. Bankruptcy courts have jurisdiction to require claimants to participate in some type of central claims resolution process and have done so when faced

with resolving a large number of tort claims in a bankruptcy proceeding. *See In re Johns-Manville Corp.*, 97 B.R. 174, 177-78 (Bankr. S.D.N.Y. 1989) (injunction issued by bankruptcy court requiring asbestos claimants to proceed against established trust by first attempting settlement and then by mediation or arbitration prior to litigation); *see also In re Sargeant Farms, Inc.*, 224 B.R. 842, 847 (Bankr. M.D. Fla. 1998) (stating that "the bankruptcy court has the authority and power to promulgate rules associated with court-annexed mediation and, where necessary, to require the parties to participate in same"); *In re New York Med. Group, P.C.*, 265 B.R. 408, 414 (Bankr. S.D.N.Y. 2001) (noting that a bankruptcy court "may deny stay relief in favor of mediation where the time and expense of litigating a substantial number of personal injury claims would seriously threaten the reorganization"). *See also* General Order M-390.

29.     Section 105(a) of the Bankruptcy Code authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a). Under that section, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtor's assets and to facilitate the efficient administration of the chapter 11 case. *See, e.g., In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process."); *In re NWFX, Inc.*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy ... is that equitable principles govern."). Thus, in the absence of any express statutory prohibition, section 105(a) empowers the Court to require Litigation Claimants to participate in the Claims Resolution Process. Nothing in the Bankruptcy Code or other law prevents such a process, and because Litigation Claimants are

not bound by the results of the Mediation process, the Litigation Claimants retain their rights, if any, under 28 U.S.C. § 157(b)(5).

30.    The Court's authority to require participation in the Claims Resolution Process also is supported by the Alternative Dispute Resolution Act of 1998 (the "ADR Act"), which is codified at 28 U.S.C. §§ 651-658.  The ADR Act defines alternative dispute resolution as " … any process or procedure, other than an adjudication by a presiding judge, in which a neutral third party participates to assist in the resolution of issues in controversy, through processes such as early neutral evaluation, mediation, minitrial and arbitration …" 28 U.S.C. § 651(a).  The ADR Act further provides, in relevant part, that "[e]ach United States District Court shall authorize, by local rule adopted under section 2071(a), the use of alternative dispute resolution processes in all civil actions, including adversary proceedings in bankruptcy ….  Each United States district court shall devise and implement its own alternative dispute resolution program, by local rule … to encourage and promote the use of alternative dispute resolution in its district."  28 U.S.C. § 651(b).

31.    Bankruptcy courts may adopt their own alternative dispute resolution rules pursuant to 28 U.S.C. § 651(b) and Bankruptcy Rule 9029.  Consistent therewith, the Bankruptcy Court for the Southern District of New York has promulgated Local Bankruptcy Rule 9019-1, which incorporates General Order M-390.  General Order M-390 sets forth the procedures for a Court Annexed Alternative Dispute Resolution Program in this Court, which encompasses mediation.  The Debtor submits that the procedures for the Mediation Sessions set forth herein comport with the procedures mandated by Local Bankruptcy Rule 9019-1.

32.    In addition to the authority granted by the ADR Act and Local Bankruptcy Rule 9019-1, there is support for a bankruptcy court's power to require that

claimants participate in a central claims resolution process in Rule 16(c)(2)(I) of the Federal Rules of Civil Procedure and Bankruptcy Rule 9019.[9] Rule 16(c)(2)(I) expressly authorizes a trial court to take action, at a pretrial conference, with respect to "settling the case and using special procedures to assist in resolving the dispute when authorized by statute or local rule." Under Bankruptcy Rule 9014, a bankruptcy court may direct that Bankruptcy Rule 7016, which incorporates Rule 16(c)(2)(I), shall apply in contested matters.[10]

33.     As noted, if the Debtor and a particular Litigation Claimant are unable to liquidate or compromise the Litigation Claim through good faith efforts in accordance with the Mediation process, the Litigation Claim may, at the Debtor's option, be estimated pursuant to section 502(c) of the Bankruptcy Code in the District Court. As set forth above, pursuant to 28 U.S.C. § 157(b)(5), this Court may not liquidate the Litigation Claims and only the District Court has the power to determine such claims. Accordingly, the Debtor reserves its right to seek to have the District Court estimate the Litigation Claims if Mediation does not prove to be fruitful is appropriate under the circumstances.

34.     With respect to the pending Court Actions, the Debtor requests that Litigation Claimants be stayed from continuing those actions against non-debtor defen-

---

[9]     Settlements are favored in bankruptcy and the Claims Resolution Process is designed to facilitate settlements with the Litigation Claimants. *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (stating that compromises are favored in bankruptcy).

[10]     Consistent with this policy, courts in this and other districts have approved claims resolution procedures similar to the procedures proposed herein. *See, e.g., In re Our Lady of Mercy Medical Center*, Case No. 07-10609, Docket No. 527 (Bankr. S.D.N.Y. 1997); *In re Union Hosp. Ass'n of the Bronx (d/b/a Union Hosp.)*, Case No. 97-45032, Docket No. 184 (Bankr. S.D.N.Y. 1997); *In re Victory Mem'l Hosp., et al.*, jointly administered under Case No. 06-44387, Docket No. 732 (Bankr. E.D.N.Y. 2006); *In re Flushing Hosp. and Med. Ctr.*, Case No. 198-17475-260, Docket. No. 444 (Bankr. E.D.N.Y. 1998); *see also In re Penn Traffic Co., et al.*, jointly administered under Case No. 03-22945, Docket No. 911 (Bankr. S.D.N.Y. 2003); *In re Kmart Corp., et al.*, jointly administered under Case No. 02-B02474, Docket No. 4970 (Bankr. N.D. Ill. 2002).

dants.  It has been repeatedly held that 11 U.S.C. § 105(a) empowers the bankruptcy court to enjoin parties from commencing or continuing litigation against parties other than the bankrupt.  *See In re Otero Mills, Inc.*, 25 B.R. 1018, 1020 (D. N.M. 1982). Citing to the broad discretion granted to bankruptcy courts under section 105(a) of the Bankruptcy Code, courts in this circuit have noted that "[i]t is well settled that bankruptcy courts, under this provision, may extend the automatic stay to enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts."  *In re Adelphia Communications Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 2003) (citing *In re Granite Partners L.P.*, 194 B.R. 318, 337 (Bankr. S.D.N.Y. 1996)).  In fact, courts have recognized a variety of circumstances in which it was necessary to extend the automatic stay to non-debtors third parties in order to protect the debtor's estate.  *See e.g., Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-288 (2d Cir. 2003) (stay extended to debtor's non-debtor wholly-owned corporation because a claim against the non-debtor would have "an immediate adverse economic consequence for the debtor's estate.");  *see also Crysen/Montenay Energy Co. v. Esselen Assoc., Inc.*, 902 F.2d 1098 (2d Cir. 1990) (extending the automatic stay to debtor's non-debtor purchaser because claims against the purchaser were the exclusive property of the debtor's estate).  In particular, it has been recognized that "key personnel" should be protected under the automatic stay because otherwise "immediate and irreparable harm" could befall a debtor and its reorganization efforts.  *Lomas Fin. Corp. v. Northern Trust Co. (In re Lomas Fin. Corp.)*, 117 B.R. 64, 67 (S.D.N.Y. 1990).  Accordingly, the Debtors respectfully request that the Court stay any actions against the Medical Professionals until the conclusion of the Claims Resolution Process.

35.     Further, the relief requested herein is necessary to ensure that the Claims Resolution Process is not circumvented and that all Litigation Claims are ad-

dressed according to the procedures approved by this Court. Similar relief has been granted in other cases, including *In re Our Lady of Mercy Medical Center*, Case No. 07-10609, Docket No. 527 (Bankr. S.D.N.Y.) and *In re Brooklyn Hospital*, Case No. 05-26990 (Bankr. E.D.N.Y.). The Debtor intends to utilize the centralization of the bankruptcy process to achieve a uniform resolution of all of the Litigation Claims. The Debtor requires the relief requested in this Motion to permit it and the Committee to negotiate the terms of a Plan and implement an efficient and economical procedure for resolving the Litigation Claims, which, in turn, will hopefully facilitate a consensual Plan.

36. The Litigation Claimants will not be prejudiced by the extension and expansion of the stay to actions against the Medical Professionals. Indeed, the continued extension of the stay and the Debtor's attempt to globally resolve the Litigation Claims may enable the Litigation Claimants to receive an award much more rapidly than otherwise possible through the normal tort system.

37. The Debtor believes that the Claims Resolution Process represents the best and the most efficient method of resolving the Litigation Claims. Granting authority to resolve the Litigation Claims as set forth herein will significantly reduce expenses and help the parties avoid the delay and uncertainty associated with litigating each of the Litigation Claims. Moreover, the authority requested herein provides an incentive to the Litigation Claimants to work with the Debtor to reconcile, settle or compromise the Litigation Claims prior to engaging in expensive and time-consuming litigation. Accordingly, the Debtor respectfully submits that implementing the proposed Claims Resolution Process is in the best interests of the Debtor, its estate and the Litigation Claimants.

## NOTICE

38.     Notice of this Motion has been given to (i) the United States Trustee; (ii) the Committee; (iii) the Litigation Claimants or their counsel at the addresses listed on the proofs of claim filed against the Debtor; (iv) all other parties named in the Court Actions with respect to the Litigation Claims, to the extent the Debtor is aware of such actions and addresses for counterparties have been provided to the Debtor or were obtainable using reasonable efforts; and (v) all those who have entered an appearance in this case pursuant to Bankruptcy Rule 2002. The Debtor respectfully submits that such notice is sufficient, and requests that, except as provided herein, the Court find that no further notice of the relief requested herein is required.

39.     No prior motion for the relief sought has been made to any Court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, in substantially the form attached as Exhibit "4", granting the relief requested in the Motion, together with such other and further relief as may be appropriate.

Dated:    New York, New York          TOGUT, SEGAL & SEGAL LLP
          November 9, 2010            Counsel for Debtor and
                                        Debtor in Possession
                                      By:

                                      /s/ Frank A. Oswald
                                      FRANK A. OSWALD
                                      HOWARD P. MAGALIFF
                                      One Penn Plaza, Suite 3335
                                      New York, New York  10119
                                      (212) 594-5000