UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : | Case No. 09-14398 (AJG) |
| CABRINI MEDICAL CENTER, | : |  |
|  | : |  |
| Debtor. | : |  |
|  | : |  |

---------------------------------------------------------------x


# FIRST AMENDED CHAPTER 11 PLAN OF
# LIQUIDATION OF CABRINI MEDICAL CENTER

TOGUT, SEGAL & SEGAL LLP
Attorneys for the Debtor
 and Debtor in Possession
Co-Proponent of the
 Plan of Liquidation
One Penn Plaza, Suite 3335
New York, New York  10119
Telephone:  (212) 594-5000
Facsimile:    (212) 967-4258
Attn:  Frank A. Oswald
          James J. Lee

ALSTON & BIRD LLP
Attorneys for the Official Committee
 of Unsecured Creditors of
 Cabrini Medical Center
Co-Proponent of the Plan of Liquidation
90 Park Avenue
New York, New York  10016
Telephone: (212) 210-9400
Facsimile:  (212) 210-9444
Attn:    Martin G. Bunin
            Craig E. Freeman

Dated:    New York, New York
             January 25, 2011

## Table of Contents

**Page**

INTRODUCTION ......................................................................................................................... 3

ARTICLE I - DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION ........ 4

ARTICLE II - GENERAL RULES REGARDING CLASSIFICATION OF CLAIMS ................. 11

ARTICLE III - CLASSIFICATION OF CLAIMS AND INTERESTS ........................................ 12

ARTICLE IV - TREATMENT OF UNCLASSIFIED CLAIMS ................................................... 12

ARTICLE V - TREATMENT OF CLASSIFIED CLAIMS ......................................................... 14

ARTICLE VI - IMPLEMENTATION OF PLAN ........................................................................ 17

ARTICLE VII - EFFECT OF PLAN ON CLAIMS, INTERESTS AND CAUSES OF ACTION 26

ARTICLE VIII - EXECUTORY CONTRACTS ........................................................................... 30

ARTICLE IX - CONDITIONS TO CONFIRMATION AND OCCURRENCE OF EFFECTIVE
DATE ........................................................................................................................................... 31

ARTICLE X - CONFIRMABILITY AND SEVERABILITY OF PLAN AND CRAM-DOWN .. 31

ARTICLE XI - ADMINISTRATIVE PROVISIONS .................................................................. 32

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                 :

In re:                                       :        Chapter 11
                                               :        Case No. 09-14398 (AJG)

CABRINI MEDICAL CENTER,        :
                                               :
                           Debtor.      :
                                             :
-------------------------------------------------------------x

## FIRST AMENDED CHAPTER 11 PLAN OF
## LIQUIDATION OF CABRINI MEDICAL CENTER


## INTRODUCTION


        Cabrini Medical Center ("Cabrini" or the "Debtor"), debtor and debtor in possession in the above-captioned chapter 11 case, and the Creditors' Committee, propose the following plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code.  Reference is made to the Disclosure Statement for a discussion of the Debtor's history, businesses, properties, results of operations, projections for future recoveries, a summary and analysis of this Plan and other related matters.  The Debtor and the Creditors' Committee are the co-proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

        Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject this Plan cannot be solicited from a holder of a claim or interest until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to holders of claims and interests.  **ALL HOLDERS OF CLAIMS AGAINST AND MEMBERSHIP INTERESTS IN THE DEBTOR ARE ENCOURAGED TO READ THIS PLAN AND THE RELATED DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR TO REJECT THIS PLAN.  NO MATERIALS, OTHER THAN THE ACCOMPANYING SOLICITATION MATERIALS AND ANY EXHIBITS AND SCHEDULES ATTACHED THERETO OR REFERENCED THEREIN, HAVE BEEN APPROVED BY THE BANKRUPTCY COURT OR THE PLAN PROPONENTS FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.  SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN THIS PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS EFFECTIVE DATE.**

09-14398-alg    Doc 554    Filed 01/25/11    Entered 01/25/11 19:01:43    Main Document
Pg 4 of 37

## ARTICLE I - DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION

A.    <u>Defined Terms</u>.  As used herein, the following terms have the respective meanings specified below, except as expressly provided in other Sections of this Plan, unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural, and masculine and feminine forms of the terms defined).  Any capitalized term used in this Plan but not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

1.    <u>Administrative Claim</u> means any Claim under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation:  (a) the actual, necessary costs and expenses incurred by the Debtor after the Petition Date of preserving the Estate or operating the business of the Debtor, (b) Professional Fee Claims, (c) U.S. Trustee fees, and (d) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

2.    <u>Administrative Claims Fund</u> means a fund to be established by the Debtor, in consultation with the Creditors' Committee and MSSH-IL, on the Effective Date, and administered thereafter by the Plan Administrator, in an amount sufficient to pay Allowed Administrative Claims (including Professional Fee Claims), Allowed Priority Claims and Allowed Priority Tax Claims.

3.    <u>Allocation Order</u> means the Order entered by the Bankruptcy Court November 19, 2010 approving the allocation to each Building of a prorated portion of the Sale Proceeds and the distributions to secured creditors with valid liens in their order of priority, until the proceeds allocated to each Building have been exhausted.

4.    <u>Allowed</u> with respect to a Claim, means the extent to which a Claim (a) is not objected to within the period fixed by the Plan or order of the Bankruptcy Court, and such deadline to object has not expired if the Claim (i) was scheduled by the Debtor pursuant to the Bankruptcy Code and the Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated or disputed, or (ii) was timely filed (or deemed timely filed) with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules or any applicable orders of the Bankruptcy Court, (b) for which an objection has been filed, but such objection has been withdrawn or determined by a Final Order (but only to the extent such claim has been allowed), (c) determined to be valid by the Plan Administrator and the Creditors' Committee, or (d) is otherwise allowed by Final Order, including without limitation the Confirmation Order after notice and a hearing.  A Proof of Claim that is not timely filed (or not deemed timely filed) shall not be "Allowed" for purposes of distribution under this Plan.  Unless otherwise specified herein, in section 506(b) of the Bankruptcy Code or by Order of the Bankruptcy Court, "Allowed" Claim, shall not, for the purposes of distributions under this Plan, include for Prepetition Claims, interest on such Claim or Claims accruing from or after the Petition Date.

4

5.    Assets means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Estate pursuant to section 541 of the Bankruptcy Code, Cash (including proceeds from the Sale), Causes of Action, accounts receivable, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of all of the foregoing.

6.    Available Cash means, as of any given Distribution Date, all of the Debtor's Cash, less the Expense Reserve and the balance of the Administrative Claims Fund.

7.    Bankruptcy Code means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

8.    Bankruptcy Court means the United States Bankruptcy Court for the Southern District of New York, which has jurisdiction over the Chapter 11 Case.

9.    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure.

10.    Bar Date means such date(s) fixed by Order(s) of the Bankruptcy Court by which proofs of Claim or requests for allowance of Administrative Claims must be filed, as applicable.

11.    Business Day means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

12.    Cabrini means Cabrini Medical Center, the Debtor in the Chapter 11 Case.

13.    Cash means cash and cash equivalents in U.S. dollars.

14.    Causes of Action means any and all claims, rights and causes of action that could have been brought now by or on behalf of the Debtor or the Estate arising before, on or after the Petition Date, known or unknown, direct or indirect, reduced or not reduced to judgment, disputed or undisputed, suspected or unsuspected, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to (i) those referred to in the Disclosure Statement, (ii) any and all claims, rights and causes of action the Debtor or the Estate may have against any Person arising under chapter 5 of the Bankruptcy Code, or any similar provision of state law or any other law, rule, regulation, decree, order, statute or otherwise, (iii) derivative claims and (iv) right of setoff or recoupment, and claims on contracts or breaches of duty imposed by law.

15.    Chapter 11 Case means case number 09-14398 (AJG), commenced by the Debtor under chapter 11 of the Bankruptcy Code on the Petition Date in the Bankruptcy Court, and styled In re Cabrini Medical Center.

16.    Claim means a claim against the Debtor, whether or not asserted or Allowed, and as such term is defined in section 101(5) of the Bankruptcy Code.

5

17.    <u>Claims Resolution Process</u> means the process approved by Order of the Bankruptcy Court dated December 15, 2010 to resolve Litigation Claims through mediation.

18.    <u>Class</u> means a group of Claims as classified in Article III under this Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

19.    <u>Class [ ] Claim</u> means a Claim in the particular Class of Claims identified and described in Article III of this Plan.

20.    <u>Collateral</u> means any property or interest in property of the Estate of the Debtor that is subject to an unavoidable Lien to secure the payment or performance of a Claim.

21.    <u>Confirmation Date</u> means the date on which the Confirmation Order is entered on the docket of the Chapter 11 Case.

22.    <u>Confirmation Hearing</u> means the hearing or hearings conducted by the Bankruptcy Court to consider confirmation of this Plan as it may be modified hereafter from time to time.

23.    <u>Confirmation Order</u> means the Order confirming this Plan in accordance with the provisions of the Bankruptcy Code.

24.    <u>Creditors' Committee</u> means the official committee of unsecured creditors appointed by the United States Trustee in the Chapter 11 Case on July 20, 2009.

25.    <u>D&O Insurance</u> means any directors' and officers' insurance maintained by the Debtor which covers the Debtor's current and/or former directors and officers.

26.    <u>Debtor</u> means Cabrini.

27.    <u>Disclosure Statement</u> means the written disclosure statement (and all exhibits and schedules annexed thereto or referred to therein) that relates to this Plan, as amended, supplemented or modified from time to time.

28.    <u>Disclosure Statement Order</u> means the order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code.

29.    <u>Disputed Claim</u> means any Claim that is not an Allowed Claim as of the relevant date.

30.    <u>Disputed Claims Reserve Accounts</u> means an account or accounts established and funded by the Debtor, in consultation with the Creditors' Committee and MSSH-IL, and administered by the Plan Administrator for the payment of Disputed Claims that may become Allowed Claims after the Effective Date, and which

shall hold Cash and/or other Assets as applicable, for the benefit of the holders of Disputed Claims.

31.    <u>Distribution</u> means the distribution to holders of Claims in accordance with this Plan of any Assets, or other consideration distributed under Articles V or VI herein.

32.    <u>Distribution Address</u> means the address set forth in the relevant proof of claim, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).  If no proof of claim is filed in respect of a particular Claim, such defined term means the address set forth in the Debtor's Schedules, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).

33.    <u>Distribution Date</u> means any date on which the Plan Administrator determines that a Distribution, under or in accordance with this Plan, should be made to holders of Allowed Claims in light of, *inter alia*, resolutions of Disputed Claims, liquidation of Assets (including aggregate recoveries on account of Causes of Action), and the administrative costs of such a distribution.

34.    <u>District Court</u> means the United States District Court for the Southern District of New York.

35.    <u>Effective Date</u> means a Business Day, selected by the Plan Proponents, on which all conditions to the Effective Date have been satisfied or, if permitted, waived by the Plan Proponents, and on which no stay of the Confirmation Order shall be pending.

36.    <u>Estate</u> means the estate of Cabrini in the Chapter 11 Case created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

37.    <u>Exhibit</u> means an exhibit to either this Plan or the Disclosure Statement.

38.    <u>Exhibit Filing Date</u> means the last date by which forms of the Exhibits to this Plan shall be filed with the Bankruptcy Court, which date shall be not later than ten (10) days prior to the date of the Confirmation Hearing.

39.    <u>Expense Reserve</u> means a reserve to be established by the Debtor, in consultation with the Creditors' Committee and MSSH-IL, on the Effective Date to be utilized by the Plan Administrator to effectuate the liquidation of the remaining Assets hereunder, including, without limitation, to fund any necessary or appropriate litigation against third parties, in accordance with this Plan.  The Plan Administrator may replenish the Expense Reserve from Available Cash from time to time.

40.    <u>Face Amount</u> means (a) with respect to any Claim for which a proof of claim is filed, an amount equal to:  (i) the liquidated amount, if any, set forth therein;  and/or (ii) any other amount estimated by the Bankruptcy Court in accordance with section 502(c) of the Bankruptcy Code and the relevant provisions of this Plan; (b) if no proof of claim is filed and such Claim is scheduled in the Debtor's Schedules,

the amount of the Claim scheduled as undisputed, fixed and liquidated; or (c) if a proof of claim has been filed in an unliquidated amount, or the Debtor's schedules reflect a Claim in an unliquidated amount, the amount estimated by the Debtor or Plan Administrator to be the amount for which such claim may ultimately be Allowed.

41.    <u>File</u> or <u>Filed</u> means file or filed with the Bankruptcy Court in the Chapter 11 Case.

42.    <u>Final Claims Resolution Date</u> means the date on which the last Disputed Claim has been resolved, either by consent, order of the Bankruptcy Court or otherwise.

43.    <u>Final Order</u> means an order as to which the time to appeal, petition for *certiorari*, or move for re-argument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, move for re-argument, or rehearing shall have been waived in writing or, in the event that an appeal, writ of *certiorari*, or re-argument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for *certiorari* or motion for re-argument or rehearing shall have expired.

44.    <u>General Unsecured Claim</u> means a Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, a Priority Claim or a Litigation Claim.

45.    <u>Impaired</u> means any Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

46.    <u>Lien</u> means any charge against, security interest in, encumbrance upon or other interest in property to secure payment of a debt or performance of an obligation.

47.    <u>Litigation Claim</u> means any Prepetition Claim relating to hospital malpractice, medical malpractice or personal injury claims against the Debtor or any of the Debtor's former Medical Professionals.

48.    <u>Litigation Claimant</u> means the holder of a Litigation Claim.

49.    <u>Medical Professionals</u> means former employees of the Debtor who provided medical services at the Debtor's hospital including, without limitation, doctors, interns, residents and nurses.

50.    <u>Membership Interests</u> means the interest of a member in Cabrini.

51.    <u>MSSH-IL</u> means the Missionary Sisters of the Sacred Heart, an Illinois not-for-profit corporation.

8

52.    MSSH Entities means MSSH-IL together with the Missionary Sisters of the Sacred Heart, a New York not-for-profit corporation.

53.    Order means an order or judgment of the Bankruptcy Court as entered on the docket in the Chapter 11 Case as maintained by the Clerk of the Bankruptcy Court.

54.    Person means an individual, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint venture, trust, estate, unincorporated organization, governmental authority, governmental unit or any agency or political subdivision thereof, or any entity of whatever nature.

55.    Petition Date means July 9, 2009, the date upon which the chapter 11 petition of Cabrini was filed with the Bankruptcy Court.

56.    Plan means this chapter 11 plan of liquidation, including, without limitation, the exhibits and schedules hereto, as such may be altered, amended, or otherwise modified from time to time.

57.    Plan Administrator means Monica Terrano, the Debtor's current Chief Financial Officer, or such other Person designated by the Debtor and the Creditors' Committee, as the representative of the Debtor and the Estate for purposes of administering and consummating the Plan.

58.    Plan Proponents means the Debtor and the Creditors' Committee.

59.    Prepetition Claim means any Claim arising prior to the Petition Date.

60.    Priority Claim means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim, or (b) a Priority Tax Claim.

61.    Priority Tax Claim means any Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

62.    Professional Fees means any unpaid fees and expenses of Professionals, as such fees and expenses are allowed by the Bankruptcy Court.

63.    Professional Fee Claim means a Claim for compensation, indemnification or reimbursement of expenses pursuant to sections 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Case incurred on or after the Petition Date and prior to the Effective Date.

64.    Professionals mean the attorneys, accountants, financial advisors and other professionals whose retention by the Debtor or the Creditors' Committee has been approved by the Bankruptcy Court in the Chapter 11 Case.

9

65.    <u>Ratable</u> or <u>Ratable Share</u> means a number (expressed as a percentage) equal to the proportion that an Allowed Claim or Disputed Claim, as applicable, bears to the aggregate amount or number of Allowed Claims plus Disputed Claims (in their aggregate Face Amount) in such Class as of the date of determination.

66.    <u>Sale</u> means the transaction approved by the Sale Order.

67.    <u>Sale Order</u> means the Order entered by the Bankruptcy Court on February 11, 2010 authorizing the sale of substantially all of the Debtor's assets to S.K.I. Realty, Inc. as may be amended or modified.

68.    <u>Sale Proceeds</u> means the proceeds received by the Debtor from the sale of the Debtor's Assets to S.K.I. Realty, Inc. pursuant to the Sale Order.

69.    <u>Schedules</u> means the schedules of assets and liabilities and the statement of financial affairs, as each may be amended or supplemented from time to time, filed by the Debtor as required by section 521 of the Bankruptcy Code and the Bankruptcy Rules.

70.    <u>Secured Claim</u> means a Claim secured by a Lien on any Asset of the Debtor, or right of setoff, which Lien or right of setoff, as the case may be, is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, but only to the extent of the value, pursuant to section 506(a) of the Bankruptcy Code, of any interest of the holder of the Claim in property of the Estate securing such Claim.

71.    <u>Settlement Order</u> means that certain order entitled *Order Approving Settlement of Claims By and Between the Official Committee of Unsecured Creditors of Cabrini Medical Center, Cabrini Medical Center, Missionary Sisters of the Sacred Heart, Illinois and Missionary Sisters of the Sacred Heart, New York* entered on November 19, 2010, which is hereby incorporated into the Plan in its entirety, including the stipulation annexed as exhibit A thereto and definitions therein.  The Settlement Order is attached hereto as **Exhibit 1**.[1]

72.    <u>United States Trustee</u> means the office of the United States Trustee for the Southern District of New York.

73.    <u>U.S. Trustee Fees</u> means all fees and charges assessed against the Estate by the United States Trustee and due pursuant to section 1930 of title 28 of the United States Code.

B.    <u>Rules of Construction</u>

1.    <u>Generally</u>.  For purposes of this Plan, (i) any reference in this Plan to an existing document or Exhibit filed or to be filed means such document or Exhibit as it may have been or may be amended, modified or supplemented;  (ii) unless other-

---

[1]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Order and related exhibit A.

wise specified, all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; and (iii) the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded herein or in the Confirmation Order.

2.    <u>Exhibits</u>.  All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein.  Copies of Exhibits, after being filed, can be obtained upon written request to Togut, Segal & Segal LLP, One Penn Plaza, New York, New York 10119 (Attn: Frank A. Oswald, Esq.), counsel to the Debtor, or to Alston & Bird LLP, 90 Park Avenue, New York, New York 10016 (Attn: Martin G. Bunin, Esq.), counsel to the Creditors' Committee.

3.    <u>Time Periods</u>.  In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006(a) shall apply.

4.    <u>Miscellaneous Rules</u>.  (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to this Plan as a whole, not to any particular Section, subsection, or clause, unless the context requires otherwise;  (ii) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and the neuter;  and (iii) captions and headings to Articles and Sections of this Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of this Plan.

## ARTICLE II - GENERAL RULES REGARDING CLASSIFICATION OF CLAIMS

A.    <u>General Rules of Classification Under the Bankruptcy Code</u>.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes as set forth below.  All other Claims have been classified as set forth below.

A Claim is classified in a particular Class only to the extent that the Claim falls within the description of that Class and is classified in other Class(es) to the extent that any remainder of the Claim falls within the description of such other Class(es).

A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date

B.    <u>Undersecured Claims</u>.  Other than as provided herein, to the extent that the amount of an Allowed Claim is greater than the value of the Collateral securing such Claim as of the applicable valuation date (assuming the value of such Collateral is greater than $0), subject to section 1111(b) of the Bankruptcy Code, such Claim is classified in both the Class of Secured Claims for the secured portion of such Claim and the Class of General Unsecured Claims for the excess of such Claim over the value of the

Collateral.  Notwithstanding anything to the contrary herein, absent an order of the
Bankruptcy Court or agreement fixing the allowed amount of a Secured Claim or the
scheduling of such Claim as liquidated, non-disputed and non-contingent in the Debt-
or's Schedules, the Debtor is not bound by a classification made or implied herein with
respect to any particular Claim.

C.    Elimination of Classes. Any Class of Claims that is not occupied as of the
date of the commencement of the Confirmation Hearing by an Allowed Claim or a
Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed deleted from
the Plan for purpose of voting on acceptance or rejection of the Plan by such
Class under section 1129(a)(8) of the Bankruptcy Code.

### ARTICLE III - CLASSIFICATION OF CLAIMS AND INTERESTS

Claims, other than Administrative Claims and Priority Tax Claims, are classified
for all purposes, including voting, confirmation, and distribution, as follows:

| Class | Designation | Impaired/Unimpaired if Allowed | Entitled to Vote if Allowed |
|---|---|---|---|
| Class 1-A | Secured Claims | Unimpaired | No (deemed to accept) |
| Class 1-B | Undersecured Claims | Impaired | Yes (entitled to vote) |
| Class 2 | Priority Claims | Unimpaired | No (deemed to accept) |
| Class 3-A | General Unsecured Claims | Impaired | Yes (entitled to vote) |
| Class 3-B | MSSH Subordinated Claim | Impaired | Yes (entitled to vote) |
| Class 4 | Litigation Claims | Impaired | Yes (entitled to vote) |
| Class 5 | Membership Interests | Impaired | No (deemed to reject) |

### ARTICLE IV - TREATMENT OF UNCLASSIFIED CLAIMS

A.    Administrative Claims

1.    General.  Subject to the Bar Date and other provisions herein and
except to the extent the Debtor, or the Plan Administrator, as applicable, and the holder
of an Allowed Administrative Claim agree to different and less favorable treatment, the
Plan Administrator shall pay, in full satisfaction and release of such Claim, to each

holder of an Allowed Administrative Claim, Cash, in an amount equal to such Allowed
Administrative Claim, on the later of (i) the Effective Date and (ii) the first Business Day
after the date that is 30 calendar days after the date on which such Administrative
Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practica-
ble.  Allowed Administrative Claims (other than Professional Fee Claims) shall be paid
(i) <u>first</u>, from the funds in the Administrative Claims Fund, and (ii) <u>second</u>, from Avail-
able Cash.

      B.    <u>Administrative Bar Date</u>

      1.    <u>General Provisions</u>.  Except as provided below for (1) Professionals
requesting compensation or reimbursement for Professional Fee Claims, and (2) U.S.
Trustee Fees, requests for payment of Administrative Claims must be filed no later than
30 days after notice of entry of the Confirmation Order is filed with the Bankruptcy
Court or such later date as may be established by Order of the Bankruptcy Court.
**Holders of Administrative Claims who are required to file a request for payment of
such Claims and who do not file such requests by the applicable Bar Date, shall be
forever barred from asserting such Claims against the Debtor or its property, and the
holder thereof shall be enjoined from commencing or continuing any action, em-
ployment of process or act to collect, offset or recover such Administrative Claim**

      2.    <u>Professionals</u>.  All Professionals or other Persons requesting com-
pensation or reimbursement of Professional Fee Claims for services rendered before the
Effective Date (including compensation requested by any Professional or other entity
for making a substantial contribution in the Chapter 11 Case) shall file an application
for final allowance of compensation and reimbursement of expenses no later than 45
days after the Effective Date.  Objections to applications of Professionals or other enti-
ties for compensation or reimbursement of expenses must be filed no later than 60 days
after the Effective Date.  All compensation and reimbursement of expenses allowed by
the Bankruptcy Court shall be paid to the applicable Professional or other entities re-
questing compensation or reimbursement of Professional Fee Claims by the Plan Ad-
ministrator immediately thereafter.  Each Professional or other Person that intends to
seek payment for compensation or reimbursement of expenses from the Debtor (includ-
ing compensation requested by any Professional or other Person for making a substan-
tial contribution in the Chapter 11 Case) shall provide the Debtor with a statement, by
no later than the Confirmation Date, of the amount of estimated unpaid fees and ex-
penses accrued by such Professional up to the date of such statement, the amount of
fees and expenses that each such Professional expects to incur from such date through
the Effective Date and the amount of fees and expenses that each such Professional ex-
pects to incur from such date in connection with the preparation and prosecution of
each such Professional's final fee application.

      3.    <u>U.S. Trustee Fees</u>.  The Debtor or the Plan Administrator, as the
case may be, shall pay all U.S. Trustee Fees, in accordance with the terms of this Plan,
until such time as the Bankruptcy Court enters a final decree closing the Debtor's Chap-
ter 11 Case.

      C.    <u>Priority Tax Claims</u>.  Except to the extent the Debtor, or the Plan Administra-
trator, as applicable, and the holder of an Allowed Priority Tax Claim agree to a differ-

ent and less favorable treatment, the Plan Administrator, at its sole option, shall pay, in full satisfaction and release of such Claim, to each holder of a Priority Tax Claim, Cash, in an amount equal to such Allowed Priority Tax Claim, on the later of (i) the Effective Date and (ii) the first Business Day after the date that is 30 calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable.

## ARTICLE V - TREATMENT OF CLASSIFIED CLAIMS

The holders of Allowed Claims in each Class shall receive the following distributions where applicable, on or after the Effective Date, in accordance with this Plan. The treatment of and consideration to be received by holders of Allowed Claims pursuant to this Article V shall be in full satisfaction and settlement of such holder's respective Claims against or interests in the Debtor and the Estate, except as otherwise provided in this Plan or the Confirmation Order. Amounts paid to holders of such Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Allowed Claims, with any excess being allocated to interest, if applicable, that has properly accrued on such Allowed Claims but remains unpaid.

A.     Class 1-A:  Secured Claims

1.     Class 1-A Treatment.  Provided that the holder of a Class 1-A Claim was not paid upon closing with the Purchaser of the Debtor's Assets as provided in the Allocation Order, on the later of (i) the Effective Date and (ii) for Claims in Class 1-A that were Disputed Claims on the Effective Date and have thereafter become Allowed Secured Claims, the Distribution Date immediately following the date upon which such Claims became Allowed Secured Claims, or as soon thereafter as is practicable, holders of each such Allowed Secured Claim shall receive (i) Cash in an amount not to exceed the amount of such Allowed Secured Claim, or (ii) such other treatment as may be agreed upon by the Plan Administrator and the holder of an Allowed Secured Claim, or as may otherwise be provided in the Bankruptcy Code provided that the holder of such Allowed Secured Claim will not receive more than the value of the Collateral securing such Claim. To the extent that the value of the Collateral securing each Allowed Secured Claim is less than the amount of such Allowed Secured Claim, the undersecured portion of such Claim shall be treated for all purposes under the Plan as a Class 1-B Undersecured Claim.

2.     Class 1-A Impairment.  Holders of Allowed Claims in Class 1-A are not Impaired under this Plan. Each holder of an Allowed Secured Claim is conclusively presumed to accept this Plan under section 1126(f) of the Bankruptcy Code and is therefore not entitled to vote to accept or reject this Plan in its capacity as a holder of such Claim.

B.     Class 1-B:  Undersecured Claims

1.     Class 1-B Treatment.  Subject to the Allocation Order, and to the extent not previously paid, on the later of (i) the Effective Date, and (ii) for Claims in Class 1-B that were Disputed Claims on the Effective Date and have thereafter become Allowed Undersecured Claims, the Distribution Date immediately following the date up-

14

upon which such Claims became Allowed Undersecured Claims, or as soon thereafter as is practicable, holders of each such Allowed Undersecured Claim shall receive Cash in an amount not to exceed the amount of such Allowed Undersecured Claim, equal to the proceeds actually realized from the sale of any Collateral securing such Allowed Secured Claim, less the actual costs and expenses of disposing of such Collateral. The balance, which has been reclassified by the Allocation Order, shall be included in Class 3-A for distribution purposes

2.    Class 1-B Impairment. Holders of Allowed Claims in Class 1-B are Impaired under this Plan and entitled to vote.

C.    Class 2:  Priority Claims

1.    Class 2 Treatment. Each holder of an Allowed Priority Claim shall receive Cash in an amount equal to the amount of such Allowed Priority Claim first from the Administrative Claims Fund to the extent funds remain after payment of Allowed Administrative Claims and second from Available Cash on the later of (i) the Effective Date, and (ii) for Claims in Class 2 that were Disputed Claims and have become Allowed Priority Claims, the Distribution Date immediately following the date upon which such Claims became Allowed Priority Claims, or as soon thereafter as is practicable.

2.    Class 2 Impairment. Holders of Allowed Priority Claims in Class 2 are not Impaired under this Plan. Each holder of an Allowed Priority Claim is conclusively presumed to accept this Plan under section 1126(f) of the Bankruptcy Code and is therefore not entitled to vote to accept or reject this Plan in its capacity as a holder of such Claim.

D.    Class 3-A:  General Unsecured Claims

1.    Class 3-A Treatment. On the Effective Date, or as soon thereafter as reasonably practicable, but in no event earlier than the Administrative Claims Bar Date established in the Confirmation Order, each holder of an Allowed General Unsecured Claim shall receive, on account of its Allowed General Unsecured Claim, its Ratable Share of the portion of Available Settlement Cash to be distributed to General Unsecured Creditors in accordance with the terms of the Settlement Order. Ratable Shares of the Available Settlement Cash to be distributed to General Unsecured Creditors in respect of Disputed Class 3-A Claims shall be held in the applicable Disputed Claims Reserve Account pursuant to this Plan until such time that disputes involving such Disputed Claims have been resolved.

2.    Class 3-A Impairment. Holders of General Unsecured Claims are Impaired under this Plan and entitled to vote.

3.    Class 3-A Priority of Payment. Notwithstanding any other provision of this Plan, holders of Allowed General Unsecured Claims shall not be entitled to receive any payment of Cash on account of Allowed General Unsecured Claims until the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Priority Claims have received payment in full on account

15

of such Allowed Claims or such Allowed Claims have been reserved for in accordance with this Plan, and any Disputed Claims have been reserved for in accordance with this Plan.

E.    <u>Class 3-B:  MSSH Subordinated Claim</u>

1.    <u>Class 3-B Treatment</u>.  On the Effective Date, or as soon thereafter as reasonably practicable, but in no event earlier than the Administrative Claims Bar Date established in the Confirmation Order, MSSH-IL shall receive payment of the MSSH Subordinated Claim (as defined in the Settlement Order) in an amount equal to its portion of Available Settlement Cash in accordance with the terms of the Settlement Order.

2.    <u>Class 3-B Impairment</u>.  The MSSH Subordinated Claim is Impaired under this Plan and entitled to vote.

3.    <u>Class 3-B Priority of Payment</u>.  Notwithstanding any other provision of this Plan, MSSH-IL shall not be entitled to receive any payment of Cash on account of the MSSH Subordinated Claim until the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, and Allowed Priority Claims have received payment in full on account of such Allowed Claims or such Allowed Claims or Disputed Claims within such categories (but not including Class 3-A or 4) have been reserved for in accordance with this Plan.

F.    <u>Class 4:  Litigation Claims</u>

1.    <u>Class 4 Treatment</u>

(a)    If a Litigation Claimant elected the Stay Modification Option in the Claims Resolution Process, then that Litigation Claimant shall not receive a Distribution from the Debtor and shall only be entitled to recovery from available insurance proceeds.  If the holder of a Class 4 Litigation Claim elects the Stay Modification Option, the election will be binding on the holder regardless of whether Class 4 accepts the Plan, provided that the Plan is confirmed and the Effective Date occurs.

(b)    If a Litigation Claimant did not elect the Stay Modification Option, then if the amount of a timely filed Litigation Claim was fixed through the Claims Resolution Process, the Litigation Claim shall be reclassified as a Class 3-A General Unsecured Claim and receive the same treatment as other holders of Class 3-A General Unsecured Claims.

(c)    If a Litigation Claimant did not elect the Stay Modification Option and did not settle the Claim in the Claims Resolution Process, then the Claim may, at the Debtor's option, be estimated in the District Court.  If the Claim is estimated in an amount greater than zero ($0.00), it shall be included in Class 3-A for Distribution purposes.

If the holder of a Class 4 Litigation Claim elects to have the automatic stay lifted, the election will be binding on the holder regardless of whether Class 4 accepts the Plan, provided that the Plan is confirmed and the Effective Date occurs.  Nothing in this Plan

shall alter, modify, limit or impair the provisions of any "So Ordered" stipulations and orders lifting the automatic stay, resolving Litigation Claims and limiting recoveries to available insurance, which will remain in full force and effect and control the disposition of the Litigation Claims subject to those stipulations.

　　　　2.　　Class 4 Impairment.　Holders of Litigation Claims in Class 4 are Impaired under this Plan and entitled to vote.

　　G.　　Class 5: Membership Interests.　As of the Effective Date, all Membership Interests issued and outstanding shall be cancelled and retired and no consideration will be paid or delivered with respect thereto.　Holders of Membership Interests are deemed to reject the Plan, and not entitled to vote.

## ARTICLE VI - IMPLEMENTATION OF PLAN

　　A.　　Implementation.　The Plan Administrator will implement this Plan in a manner consistent with the terms and conditions set forth in this Plan and the Confirmation Order.

　　B.　　Funding for this Plan.　This Plan will be funded from the proceeds received from the sale of the Debtor's Assets.

　　C.　　Vesting of Assets in the Debtor.　As of the Effective Date, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, all Assets shall vest in the Debtor free and clear of all Claims, liens, encumbrances, charges, Membership Interests and other interests, except as otherwise expressly provided in this Plan or the Confirmation Order, and subject to the terms and conditions of this Plan and the Confirmation Order.

　　D.　　Continuing Existence.　From and after the Effective Date, the Debtor shall continue in existence for the purposes of (i) winding up its affairs as expeditiously as reasonably possible, (ii) liquidating, by conversion to Cash, or other methods, of any remaining Assets, as expeditiously as reasonably possible, (iii) enforcing and prosecuting claims, interests, rights and privileges of the Debtor, including, without limitation, prosecuting Causes of Action, (iv) resolving Disputed Claims, (v) administering the Plan, (vi) filing appropriate tax returns and (vii) performing all such other acts and conditions required by and consistent with consummation of this Plan.

　　E.　　Closing of the Chapter 11 Case.　When all Disputed Claims filed against the Debtor have become Allowed Claims or have been disallowed, and all Assets have been liquidated and converted into Cash (other than those Assets abandoned), and such Cash has been distributed in accordance with this Plan, or at such earlier time as the Plan Administrator deems appropriate, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

　　F.　　Corporate Action.　The Plan Administrator will administer this Plan and all actions taken under this Plan in the name of the Debtor shall be taken through the Plan Administrator.　Upon the distribution of all Assets pursuant to this Plan and the

17

filing by the Plan Administrator of a certification to that effect with the Bankruptcy Court (which may be included in the application for the entry of the final decree), the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; *provided, however,* that the Debtor may take appropriate action to dissolve under applicable law. From and after the Effective Date, the Debtor shall not be required to file any document, or take any action, to withdraw its business operations from any states where the Debtor previously conducted business.

G.    <u>Winding Down Affairs</u>. Following the Effective Date, the Debtor shall not engage in any business or take any actions, except those necessary to consummate this Plan and wind down its affairs. On and after the Effective Date, the Plan Administrator may, in the name of the Debtor and in consultation with the Creditors' Committee, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than the restrictions imposed by this Plan or the Confirmation Order.

H.    <u>Powers and Duties of the Plan Administrator</u>. The Plan Administrator will act for the Debtor in a fiduciary capacity as applicable to a board of directors or trustees, subject to the provisions of this Plan. The powers and duties of the Plan Administrator shall include:

(a)    investing Cash in accordance with section 345 of the Bankruptcy Code, and withdrawing and making Distributions of Cash to holders of Allowed Claims and paying taxes and other obligations owed by the Debtor or incurred by the Plan Administrator in connection with winding down the Estate, from the Expense Reserve, the Administrative Claims Fund, and Available Cash in accordance with this Plan;

(b)    subject to the approval of the Creditors' Committee (which approval shall not be unreasonably withheld), engaging attorneys, consultants, agents, employees and all professional persons, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

(c)    executing and delivering all documents, and taking all actions, necessary to consummate the Plan and wind up the Debtor's business;

(d)    coordinating the turnover of property, if any, subject to rejected executory contracts or abandonment or liquidation of any retained assets;;

(e)    coordinating the collection of outstanding accounts receivable;

(f)    coordinating the storage and maintenance of the Debtor's books and records;

(g)    overseeing compliance with the Debtor's accounting, finance and reporting obligations;

18

       (h)     preparing monthly operating reports and financial state-ments and United States Trustee quarterly reports;

       (i)     overseeing the filing of final tax returns, audits, and other corporate dissolution documents if required;

       (j)     performing any additional corporate actions as necessary to carry out the wind up and liquidation of the Debtor;

       (k)     regularly communicating with, and responding to inquiries from, the Creditors' Committee;

       (l)     providing the Creditors' Committee with regular cash budg-ets, information on all disbursements on a weekly basis, if requested by the Creditors' Committee, and copies of bank statement on a monthly basis;

       (m)     subject to the approval of the Creditors' Committee (which approval shall not be unreasonably withheld), paying the fees and expenses of the at-torneys, consultants, agents, employees and professional persons engaged by the Debtor, the Plan Administrator and the Creditors' Committee and to pay all other ex-penses for winding down the affairs of the Debtor in accordance with a wind-down budget, or as otherwise agreed to by the Plan Administrator, and in the event of a dis-pute that cannot be resolved, the parties shall seek to resolve such dispute in the Bank-ruptcy Court;

       (n)     subject to the approval of the Creditors' Committee (which approval shall not be unreasonably withheld), disposing of, and delivering title to oth-ers of, or otherwise realizing the value of all the remaining Assets;

       (o)     subject to the approval of the Creditors' Committee (which approval shall not be unreasonably withheld), objecting to, compromising and settling Claims;

       (p)     acting on behalf of the Debtor in all adversary proceedings and contested matters (including, without limitation, any Causes of Action), then pend-ing or that can be commenced in the Bankruptcy Court and in all actions and proceed-ings pending or commenced elsewhere, and, subject to the approval of the Creditors' Committee (which approval shall not be unreasonably withheld) to settle, retain, en-force, dispute or adjust any claim and otherwise pursue actions involving Assets of the Debtor that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise waived or relinquished in the Plan;

       (q)     implementing and/or enforcing all provisions of the Plan; and

       (r)     such other powers as may be vested in or assumed by the Plan Administrator pursuant to this Plan or Bankruptcy Court Order or as may be needed or appropriate to carry out the provisions of this Plan.

19

I.    Appointment of the Plan Administrator.  The Confirmation Order shall provide for the appointment of Monica Terrano, the Debtor's current Chief Financial Officer, as the Plan Administrator.  The compensation for the Plan Administrator shall be $125 per hour.  The Plan Administrator shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in this Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code.

J.    Distributions To Holders Of Claims

1.    Estimation of Claims.  The Plan Administrator may, at any time, request that the Bankruptcy Court (or the District Court with respect to Litigation Claims) estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtor may be liable under this Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim;  and the Bankruptcy Court (or the District Court with respect to Litigation Claims) will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim.  If the Bankruptcy Court (or the District Court with respect to Litigation Claims) estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court (or the District Court with respect to Litigation Claims).  The objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated by the Bankruptcy Court (or the District Court with respect to Litigation Claims) and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court or the District Court, as applicable.

2.    No Recourse.  Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by this Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtor, the Estate, the Plan Administrator, the Creditors' Committee or any of their respective professionals, consultants, officers, directors or members or their successors or assigns, or any of their respective property.  However, except as specifically stated otherwise in this Plan, nothing in this Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

**THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THIS PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS IF THE ESTIMATION IS MADE SOLELY FOR THE PURPOSE OF ESTIMATING A MAXIMUM LIABILITY FOR RESERVE PURPOSES, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.**

3.    <u>Resolution of Disputed Claims</u>.  No Distribution or payment shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.  No Distribution or payment shall be made to any holder of an Allowed Claim who is also a potential defendant in an avoidance action under chapter 5 of the Bankruptcy Code until a decision is made by the Plan Administrator not to commence the potential avoidance action, or, if the potential avoidance action is commenced by the Plan Administrator, until the resolution of such avoidance action.  Notwithstanding this paragraph, the making of a Distribution to such potential defendant or the lack of any objection filed to such Allowed Claim on the basis of such potential avoidance action shall not constitute a waiver of any rights of the Debtor or the Plan Administrator, as the case may be.  For purposes of this Plan, such Distribution or payment on account of such Allowed Claim shall be held in the Disputed Claims Reserve Account as if it were a Disputed Claim.

4.    <u>Objections to Claims</u>.  Unless otherwise ordered by the Bankruptcy Court, on and after the Effective Date, the Plan Administrator shall have the exclusive right to make, file and prosecute objections to and settle, compromise or otherwise resolve Disputed Claims, except that as to applications for allowances of Professional Fee Claims, objections may be made in accordance with the applicable Bankruptcy Rules by parties in interest.  Subject to further extension by the Bankruptcy Court, the Plan Administrator shall file and serve a copy of each objection upon the holder of the Claim to which an objection is made on or before the latest to occur of:  (i) 120 days after the Effective Date, (ii) 30 days after a request for payment or proof of claim is timely filed and properly served upon the Plan Administrator, and (iii) such other date as may be fixed by the Bankruptcy Court either before or after the expiration of such time periods.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Plan Administrator effects service in any of the following manners (A) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (B) by first Class mail, postage prepaid, on the signatory of the proof of claim or other representative identified in the proof of claim or any attachment thereto at the address of the creditor set forth therein; or (C) by first class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Case.  From and after the Effective Date, the Plan Administrator in consultation with and subject to the approval of the Creditors' Committee may settle or compromise any Disputed Claim or avoidance action under chapter 5 of the Bankruptcy Code pursuant to the terms of this Plan without further order of the Bankruptcy Court.

5.    <u>Distributions when a Disputed Claim Becomes an Allowed Claim; or when a Disputed Claim is Subsequently Disallowed</u>.  On the next Distribution Date following the time upon which a Disputed Claim is ultimately Allowed, holders of such Claims shall receive from the applicable Disputed Claims Reserve Account any amounts held in such Disputed Claims Reserve Account attributable to the Allowed amount of such Claim, as set forth in this Plan.  Any Cash Distributions held in the applicable Disputed Claims Reserve Account for the benefit of a holder of a Disputed Claim, which is subsequently disallowed, in whole or in part, shall be distributed on the next Distribution Date, on a Ratable basis to holders of Allowed Class 3-A and Class 3-B Claims (in accordance with the Settlement Order) and to any applicable Disputed

Claims Reserve Account on account of any Disputed Claims as if such amounts had been distributed on the Effective Date.

6.    <u>Resolution of Disputed Litigation Claims</u>.  All holders of timely filed (or deemed timely filed) Litigation Claims that have not been disallowed, expunged or waived against the Debtor and that have not been fixed in the Claims Resolution Process shall be deemed Allowed Litigation Claims for voting purposes only and shall be entitled to one vote in the amount of $1.00 on account of such Litigation Claim. For all other purposes under the Plan, all Litigation Claims not previously Allowed shall be considered to be Disputed Claims as of the Effective Date such that no objection to a Litigation Claim must be filed.  The Plan Administrator shall have the exclusive right to make, file, and prosecute objections to Litigation Claims.  Notwithstanding the Claims Resolution Process, the Bankruptcy Court shall have the jurisdiction to hear and rule on objections to Litigation Claims based on (i) timeliness of the proof of claim, (ii) failure to prosecute, (iii) failure to mediate in accordance with the Claims Resolution Process, (iv) whether a proof of claim set forth sufficient facts necessary to be *prima facie* valid, or (v) other non-merit based objections.

7.    <u>Distributions on Account of Allowed Class 3-A and Class 3-B Claims</u>.  To the extent funds are available, on each Distribution Date, the Plan Administrator shall make Distributions of Available Cash to holders of Allowed Class 3-A and Class 3-B Claims in accordance with this Plan. Any Distributions made to holders of Allowed Class 3-A Claims shall be made on a Ratable basis.  Any proceeds received from the liquidation of the Assets shall be distributed in accordance with this Plan.

8.    <u>Distributions on Account of Allowed Class 4 Claims</u>.  Distributions to holders of Litigation Claims shall be made from (a) available insurance proceeds if the Litigation Claimant elected the Stay Modification Option, or (b) from the GUC Portion of Available Settlement Cash on a Ratable basis with other Class 3-A Claims.

K.    <u>Disputed Claims Reserve Account</u>

1.    <u>Establishment of Disputed Claims Reserve Account</u>.  On the Effective Date, and in conjunction with making all Distributions that are required to be made on the Effective Date, the Debtor shall establish and fund the Disputed Claims Reserve Accounts, which shall be administered by the Plan Administrator.

2.    <u>Duties in Connection with Disputed Claims</u>.  The Plan Administrator, in consultation with the Creditors' Committee, shall (i) hold in reserve, for the benefit of Disputed Claims, Cash in an amount required by Order of the Bankruptcy Court or the District Court, if applicable, (including any Order estimating the maximum liability of a Disputed Claim) or, in the absence of such Order, Cash equal to the distributions that would have been made to the holder of such Disputed Claim, if it were an Allowed Claim in a liquidated amount, if any, on the Effective Date, or as otherwise estimated by the Plan Administrator after consultation with the Creditors' Committee, (ii) subject to the approval of the Creditors' Committee (which approval shall not be unreasonably withheld), object to, settle or otherwise resolve Disputed Claims, (iii) make Distributions to holders of Disputed Claims that subsequently become Allowed Claims in accordance with this Plan, and (iv) distribute any remaining assets of the Disputed Claims

Reserve Accounts, after resolving all Disputed Claims, to holders of Allowed Class 3-A and Class 3-B Claims in accordance with this Plan and the Settlement Order.

       3.    <u>Transfer of Distributions to Disputed Claim Reserve Accounts</u>. On and after the Effective Date, any Distributions that would otherwise be made to the holders of Disputed Claims shall be transferred to the applicable Disputed Claims Reserve Account. Payments shall be made from the applicable Disputed Claims Reserve Account to the holder of an Allowed Claim, which was previously a Disputed Claim, upon the first Distribution Date immediately following the date upon which such Claim became an Allowed Claim.

      L.    <u>Miscellaneous Distribution Provisions</u>

       1.    <u>Method of Cash Distributions</u>. All Distributions shall be made by the Plan Administrator or a duly-appointed disbursing agent to the holders of Allowed Claims. Cash payments made pursuant to this Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Plan Administrator or by wire transfer from a domestic bank, at the option of the Plan Administrator; *provided, however*, that cash payments made to foreign creditors, if any, holding Allowed Claims may be (but are not required to be) paid, at the option of the Plan Administrator in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

       2.    <u>Distributions on Non-Business Days</u>. Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

       3.    <u>Accrual of Post-Petition Interest</u>. Unless otherwise provided for in this Plan or the Bankruptcy Code, no holder of a pre-petition Allowed Claim shall be entitled to the accrual of post-petition interest on account of such Claim.

       4.    <u>No Distribution in Excess of Allowed Amount of Claim</u>. Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim.

      M.    <u>De Minimis Distributions</u>. Notwithstanding anything to the contrary contained herein, if the amount of Cash to be distributed to the holder of an Allowed Claim is less than $25, the Plan Administrator may hold the Cash Distributions to be made to such holder until the aggregate amount of Cash to be distributed to such holder is in an amount equal to or greater than $25, if the Plan Administrator determines that the cost to distribute such Cash is unreasonable in relation to the amount of Cash to be distributed. Notwithstanding the preceding sentence, if the amount of Cash Distribution to such holder never aggregates to more than $25, then on the final Distribution Date, the Plan Administrator shall distribute such Cash to the holder entitled thereto.

      N.    <u>Allocation of Payments</u>. Amounts paid to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to interest that has accrued on such Claims but remains unpaid.

O.    Setoffs.  The Plan Administrator is authorized, pursuant to and to the extent permitted by applicable law, to set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim, the claims, rights and Causes of Action of any nature that the Debtor or the Plan Administrator may hold against the holder of such Allowed Claim, provided that the Plan Administrator gives the holder of such Allowed Claim notice of the proposed setoff and the holder of such Allowed Claim does not object to the proposed setoff within 30 days.  If an objection is timely raised to a proposed setoff, the Plan Administrator may seek relief from the Bankruptcy Court to effectuate the setoff, provided that neither the failure to effect a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Plan Administrator of any such claims, rights and Causes of Action that the Debtor may possess against such holder.

P.    Unclaimed Property

1.    Subject to Bankruptcy Rule 9010, all Distributions to any holder of an Allowed Claim shall be made at the Distribution Address unless the Debtor and/or the Plan Administrator, as the case may be, have been notified in writing of a change of address.  If any Distribution to any holder of an Allowed Claim is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Plan Administrator is notified of such holder's then current address, at which time all eligible missed Distributions shall be made to such holder, without interest.  All demands for undeliverable Distributions shall be made on or before 120 days after the date such undeliverable Distribution was initially made.  Thereafter, the amount represented by such undeliverable Distribution shall irrevocably revert to the Debtor and be treated as Available Cash.  Any Claim in respect of such undeliverable Distribution shall be discharged and forever barred from assertion against the Debtor and its property or the Plan Administrator.

2.    Checks issued by the Plan Administrator in respect of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof.  Requests for reissuance of any check shall be in writing and be made to the Plan Administrator by the holder of the Allowed Claim to whom such check originally was issued and such request must be accompanied by delivery of the original check. Any written claim in respect of such a voided check must be received by the Plan Administrator on or before 120 days after the expiration of the 60-day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall irrevocably revert to the Debtor and be treated as Available Cash.  Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, and their property or the Plan Administrator.

Q.    Exemption from Transfer Taxes.  Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery, making, filing, or recording of any deed or other instrument of transfer, or the issuance, transfer, or exchange of any security under this Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by this Plan shall not be subject to any stamp, real estate transfer, mortgage, recording or other similar tax.

R.    <u>Cancellation of Unsecured Notes and Agreements</u>

1.    On the Effective Date, except as otherwise provided for in this Plan, any note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtor (the "Instruments") will be deemed cancelled and of no further force or effect without any further action on the part of the Bankruptcy Court, or any Person including, but not limited to, governmental agencies. The holders of such cancelled Instruments will have no claims against the Debtor for payment of such Instruments, except for the rights provided pursuant to this Plan.

2.    Following the Effective Date, holders of any such Instrument of the Debtor will receive from the Plan Administrator, specific instructions regarding the time and manner in which such Instruments are to be surrendered, if requested by the Plan Administrator. Any Instrument that is lost, stolen, mutilated or destroyed, shall be deemed surrendered when the holder of a Claim based thereon delivers to the applicable agent or the Plan Administrator (i) evidence satisfactory to the agent or the Plan Administrator of the loss, theft, mutilation or destruction of such instrument or certificate, and (ii) such security or indemnity as may be required by the agent or the Plan Administrator to hold each of them harmless with respect thereto.

S.    <u>Record Date for Distributions to Holders of Claims</u>.  As of the close of business on the Confirmation Date, there shall be no further changes in the record holders of the Claims for purposes of the Distribution of Available Cash. The Debtor and the Plan Administrator shall have no obligation to recognize any transfer of Claims occurring after the Confirmation Date for purposes of the Distribution of Available Cash.

T.    <u>Disputed Payments</u>.  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Plan Administrator may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account to be held in trust for the benefit of such holder and such Distribution shall not constitute property of the Debtor and its Estate. Such Distribution shall be held in escrow until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement signed by all of the interested parties to such dispute.

U.    <u>Withholding Taxes</u>.  The Plan Administrator shall not be required to withhold taxes or comply with any applicable reporting requirements. The recipients of Distributions will be required to comply with all applicable laws and regulations concerning the reporting and taxing of the Distributions. If requested by the recipient of a Distribution, the Plan Administrator will issue an IRS Form 1099.

V.    <u>Resignation of Directors and Officers</u>.  Upon the Effective Date of this Plan, the Debtor's directors and officers shall be deemed to have resigned as the directors and officers of the Debtor.

W.    <u>Resignation, Death or Removal of Plan Administrator</u>.  The Plan Administrator may resign at any time upon not less than thirty (30) days' written notice to the Creditors' Committee. The Plan Administrator may be removed at any time by

the Creditors' Committee for cause upon five (5) days' written notice to the United States Trustee and the Plan Administrator.  If the Plan Administrator resigns, is removed, dies or is incapacitated, the Creditors' Committee shall designate another Person to become the Plan Administrator and thereupon the successor Plan Administrator, without further act, shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor.  No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any his or her predecessors.

X.    No Agency Relationship.  The Plan Administrator shall not be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to this Plan.  The Plan Administrator shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct or breach of fiduciary duty.  The Plan Administrator shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of his or her duties under this Plan, except to the extent his or her actions constitute gross negligence or willful misconduct or breach of fiduciary duty.  The Plan Administrator may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he or she believes to be genuine and to have been signed or presented by the proper party or parties.  The Plan Administrator may rely upon information previously generated by the Debtor and such additional information provided to him by former employees of the Debtor.

Y.    Plan Administrator's Bond.  The Plan Administrator shall, in his or her own discretion or upon request of the Creditors' Committee, obtain and maintain a bond in an amount equal to one hundred and ten percent (110%) of Available Cash.

## ARTICLE VII - EFFECT OF PLAN ON CLAIMS, INTERESTS AND CAUSES OF ACTION

A.    Jurisdiction of the Bankruptcy Court.  Until the Effective Date, the Court shall retain jurisdiction over the Debtor and its Estate.  Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Article XI of this Plan and as specified in the Confirmation Order.

B.    Binding Effect.  Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and its respective successors and assigns, whether or not the Claim of such holder is Impaired under this Plan and whether or not such holder has accepted this Plan

C.    Term of Injunctions or Stays.  Unless otherwise provided herein, all in-junctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

26

D.    <u>Retention of Rights and Causes of Action</u>.  All present or future rights, claims or Causes of Action against any Person that existed and which have not been released on or prior to the Effective Date are preserved for the Debtor and its Estate.  On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Debtor shall have possession and control of, and shall retain and have the right to enforce and pursue, any and all present or future rights, claims or Causes of Action, against any Person and with respect to any rights of the Debtor that arose before or after the Petition Date, including, but not limited to, rights, claims and Causes of Action.  The Debtor and its Estate shall have, retain, reserve, and shall be entitled to assert and pursue all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses, and all legal and equitable rights of the Debtor not expressly released under this Plan may be asserted after the Confirmation Date.  The Plan Administrator may abandon, settle or release any or all such claims, rights or Causes of Action, as it deems appropriate, subject to the approval of the Creditors' Committee (which approval shall not be unreasonably withheld) and the approval of the Bankruptcy Court.  In pursuing any claim, right or Cause of Action, the Plan Administrator, as the representative of the Estate, shall be entitled to the extensions provided under section 108 of the Bankruptcy Code.  Except as otherwise set forth in this Plan, all Causes of Action shall survive confirmation and the commencement or prosecution of Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable or otherwise.  If the Plan Administrator does not prosecute a Cause of Action, the Creditors' Committee shall be authorized, upon consent of the Plan Administrator, to prosecute such Cause of Action on behalf of the Debtor.  If the Plan Administrator does not consent to the Creditors' Committee prosecuting a Cause of Action, the Creditors' Committee may seek authority from the Bankruptcy Court to prosecute such Cause of Action.

E.    <u>Injunction</u>

1.    <u>Satisfaction of Claims</u>.  The treatment to be provided for Allowed Claims shall be in full satisfaction, settlement and release of such respective Claims.

2.    **Scope of Injunction.  Except as otherwise provided in this Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim are permanently enjoined from taking any of the following actions against the Debtor, the Plan Administrator, the Creditors' Committee, the MSSH Entities, or any present and former directors, officers, trustees, agents, attorneys, advisors, members or employees of the Debtor, the Creditors' Committee, the MSSH Entities, or the Plan Administrator, or any of their respective successors or assigns, or any of their respective assets or properties, on account of any Claim:  (1) commencing or continuing in any manner any action or other proceeding with respect to a Claim against the Debtor or based upon a theory which arises out of such holder's Claim against the Debtor;  (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order with respect to a Claim against the Debtor;  (3) creating, perfecting or enforcing any lien or encumbrance with respect to a Claim against the Debtor; (4) asserting a setoff, right of subrogation or recoupment of any kind with respect to a Claim against the Debtor, the assets or other property of the Estate;  and (5) commencing or continuing any action that does not comply with or is inconsistent with this Plan.  Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after the Chapter 11 Case is closed, from seeking discovery in actions**

**against third parties or from pursuing third-party insurance that does not cover
Claims against the Debtor.  For the avoidance of doubt, nothing in this section shall
limit the rights of a holder of a Claim to enforce the terms of this Plan.**

      3.     <u>Release of Collateral</u>.  Except as expressly provided otherwise in
this Plan, unless a holder of a Secured Claim receives a return of its Collateral in respect
of such Claim under this Plan:  (i) each holder of;  (A) an Allowed Secured Claim;
and/or (B) an Allowed Claim that is purportedly secured, on the Effective Date shall (x)
turn over and release to the Debtor any and all property that secures or purportedly se-
cures such Claim;  and (y) execute such documents and instruments as the Plan Admin-
istrator requires to evidence such claimant's release of such property;  and (ii) on the Ef-
fective Date, all claims, rights, title and interest in such property shall revert to the
Debtor, free and clear of all Claims, including (without limitation) Liens, charges,
pledges, encumbrances and/or security interests of any kind.  No Distribution shall be
made to or on behalf of any holder of such Claim unless and until such holder executes
and delivers to the Plan Administrator such release of Liens.  Any such holder that fails
to execute and deliver such release of Liens within 60 days of any demand thereof shall
be deemed to have no further Claim and shall not participate in any Distribution
hereunder.  Notwithstanding the immediately preceding sentence, a holder of a Dis-
puted Claim shall not be required to execute and deliver such release of Liens until the
time such Claim is Allowed or disallowed.

      4.     <u>Cause of Action Injunction</u>.  On and after the Effective Date, all Per-
sons other than the Plan Administrator and the Creditors' Committee will be perma-
nently enjoined from commencing or continuing in any manner any action or proceed-
ing (whether directly, indirectly, derivatively or otherwise) on account of, or respecting
any, claim, debt, right or Cause of Action that the Plan Administrator and/or Creditors'
Committee retains authority to pursue in accordance with this Plan.

      F.     <u>Preservation and Application of Insurance</u>.  The provisions of this Plan
shall not diminish or impair in any manner the enforceability of coverage of any insur-
ance policies (and any agreements, documents, or instruments relating thereto) that
may cover Claims (including Litigation Claims) against the Debtor, any directors, trus-
tees or officers of the Debtor, or any other Person, including without limitation, the
D&O Insurance.  All of the Debtor's insurance policies and the proceeds thereof shall be
available to holders of Litigation Claims alleging medical malpractice or personal injury
to the extent such insurance policies cover such Litigation Claims.  In addition, such in-
surance policies and proceeds thereof shall be available to holders of Litigation Claims
for the purpose of satisfying Litigation Claims estimated pursuant to section 502(c) of
the Bankruptcy Code or in accordance with this Plan**.**

      **G.     <u>Exculpation</u>.  Except as otherwise set forth in the Plan, none of the
Debtor, the Creditors' Committee, the individual members of the Creditors' Commit-
tee (acting in their capacity as members of the Creditors' Committee), the Plan Ad-
ministrator, their respective current or former members, directors, officers, trustees,
employees, agents (acting in such capacity), advisors or representatives of any profes-
sional employed by any of them shall have or incur any liability to any Person or en-
tity for any action taken or omitted to be taken in connection with or related to the
formulation, preparation, dissemination, implementation, confirmation, or consum-**

**mation of the Plan, the Disclosure Statement, or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, the administration of the Plan or property to be distributed pursuant to the Plan, and actions taken or omitted to be taken in connection with the Chapter 11 Case or the operations, monitoring or administration of the Debtor during the Chapter 11 Case, and the Plan Administrator shall have no liability for any action taken or omitted to be taken in connection with or related to the winding down and post-confirmation administration of the Estate, except for (i) intentional fraud, gross negligence or willful misconduct, and (ii) solely in the case of attorneys, to the extent that such exculpation would violate any applicable professional disciplinary rules, including Disciplinary Rule 6-102 of the Code of Professional Conduct.**

Notwithstanding anything contained herein or the Plan to the contrary, as to the United States, its agencies, departments, or agents (collectively, the "U.S. Government"), nothing in the Plan or Confirmation Order shall discharge, release, or otherwise preclude: (1) any liability to the U.S. Government that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (2) any valid right of setoff or recoupment of the U.S. Government against the Debtor including but not limited to setoff and/or recoupment rights pursuant to the Medicare statute and its implementing regulations; or (3) any liability of the Debtor under environmental law to the U.S. Government as the owner or operator of property that such entity owns or operates after the Effective Date. Moreover, nothing in the Confirmation Order or the Plan shall release or exculpate any non-debtor, including any party who is exculpated under the Plan, from any liability to the U.S. Government for direct claims against such parties, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against such parties, nor shall anything in this Confirmation Order or the Plan enjoin the U.S. Government from bringing any claim, suit, action or other proceeding against such parties for any direct liability whatsoever.

H.    <u>Compromise of Controversies</u>.    Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to this Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in this Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

I.    <u>Post-Confirmation Activity</u>.    As of the Effective Date, the Plan Administrator may conclude the wind up of the Debtor's affairs without supervision of the Bankruptcy Court, other than those restrictions expressly imposed by this Plan and the Confirmation Order. Without limiting the foregoing, the Plan Administrator may pay any

charges it incurs for taxes, professional fees, disbursements, expenses or related support services after the Effective Date without further order of the Bankruptcy Court.

J.    <u>Preservation of Avoidance Actions</u>.  Notwithstanding anything in this Plan to the contrary, all of the Debtor's avoidance actions under chapter 5 of the Bankruptcy Code are preserved for the Debtor and its Estate and may be pursued by the Debtor through the Plan Administrator.

## ARTICLE VIII - EXECUTORY CONTRACTS

A.    <u>Executory Contract and Unexpired Leases</u>.  To the extent not previously rejected, on the Confirmation Date, but subject to the occurrence of the Effective Date, all executory contracts and unexpired leases of the Debtor entered into prior to the Petition Date that have not previously been assumed or rejected, and that are not being assumed and assigned to the Purchaser of the Debtors Assets, shall be deemed rejected by the Debtor pursuant to the provisions of section 365 of the Bankruptcy Code.

B.    <u>Cure</u>.  At the election of the Debtor, any monetary defaults, if any, under each executory contract and unexpired lease to be assumed and assigned to the Purchaser shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code, in one of the following ways: (a) by payment of the default amount in Cash on the Effective Date; or (b) on such other terms as agreed to by the non-debtor party to such executory contract or unexpired lease and the Purchaser.  If there is a dispute regarding:  (i) the amount of any cure payments;  (ii) the ability of the Purchaser to provide adequate assurance of future performance under the contract or lease to be assumed;  or (iii) any other matter pertaining to assumption, then the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption.  The Debtor believes that there are no cure amounts that will need to be paid in connection with executory contracts and unexpired leases, if any, to be assumed.

C.    <u>Rejection Damages Bar Date</u>.  If the rejection by the Debtor, pursuant to the Plan or otherwise, of an executory contract or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or its property or the Plan Administrator unless a proof of claim is filed with the Bankruptcy Court and served upon the Debtor and/or Plan Administrator, as applicable, not later than 30 days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court.

D.    <u>Effect of Post-Confirmation Rejection</u>.  The entry by the Bankruptcy Court on or after the Confirmation Date of an Order authorizing the rejection of an executory contract or unexpired lease of the Debtor entered into prior to the Petition Date shall result in such rejection being a pre-petition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

## ARTICLE IX - CONDITIONS TO CONFIRMATION AND OCCURRENCE OF EFFECTIVE DATE

A.    <u>Conditions to Confirmation</u>.  This Plan may not be confirmed unless each of the following conditions is satisfied:

(a)    The Disclosure Statement Order shall be a Final Order.

(b)    The Confirmation Order shall have been entered in a form reasonably acceptable to the Debtor, the Creditors' Committee and MSSH-IL.

B.    <u>Conditions to Occurrence of Effective Date</u>.  The Effective Date for this Plan may not occur unless each of the conditions set forth below is satisfied.  Any one or more of the following conditions may be waived in whole or in part at any time upon consent by all Plan Proponents:

(a)    The Confirmation Order shall be a Final Order.

(b)    The Confirmation Order shall provide for the injunctions and exculpation of the Persons provided for in Article VII of this Plan.

(c)    Monica Terrano shall have been appointed as the Plan Administrator and shall have accepted to act in such capacity in accordance with the terms and conditions of this Plan.

C.    <u>Effect of Nonoccurrence of the Conditions to Occurrence of Effective Date</u>.  If each of the conditions to the occurrence of the Effective Date have not been satisfied or duly waived on or before the date which is no later than the first Business Day after 90 days after the Confirmation Order is entered, or by such later date as is approved, after notice and a hearing, by the Bankruptcy Court, then upon motion by any party in interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court.  Notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to occurrence of the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If the Confirmation Order is vacated, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall:  (a) constitute a waiver or release of any claims by or against the Debtor;  or (b) prejudice in any manner the rights of the Debtor or of any other party in interest.

## ARTICLE X - CONFIRMABILITY AND SEVERABILITY OF PLAN AND CRAM-DOWN

A.    <u>Confirmability and Severability of a Plan</u>.  The Plan Proponents reserve the right to alter, amend, modify, revoke or withdraw this Plan.  If the Plan Proponents revoke or withdraw from this Plan then nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or to prejudice in any manner the rights of the Plan Proponents or any persons in any further proceedings involving the Plan Proponents.  A determination by the Bankruptcy Court that this

Plan, as it applies to the Debtor, is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Plan Proponents' ability to modify this Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code. Each provision of this Plan shall be considered severable and, if for any reason any provision or provisions herein are determined to be invalid and contrary to any existing or future law, the balance of this Plan shall be given effect without relation to the invalid provision, to the extent it can be done without causing a material change in the Plan.

B.    <u>Cram-down</u>.  The Plan Proponents shall have the right to request the Bankruptcy Court to confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## <u>ARTICLE XI - ADMINISTRATIVE PROVISIONS</u>

A.    <u>Retention of Jurisdiction</u>.  Notwithstanding confirmation of this Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction for all purposes permitted under applicable law, including, without limitation, the following purposes:

(a)    To determine any motion, adversary proceeding, avoidance action, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(b)    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(c)    To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

(d)    To hear and determine objections to the allowance of Claims, whether filed, asserted or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

(e)    To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(f)    To enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)    To issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order or any other Order of the Bankruptcy Court;

(h)    To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement or any Order

of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

       (i)     To hear and determine all Professional Fee Claims;

       (j)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

       (k)     To take any action and issue such Orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation;

       (l)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

       (m)    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

       (n)     To enter a final decree closing the Chapter 11 Case;

       (o)     To recover all assets of the Debtor and property of the Estate, wherever located;

       (p)     To hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior Orders;  and

       (q)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code and other applicable law.

       B.    <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under this Plan shall be governed by the laws of the State of New York, without giving effect to principles of conflicts of law of New York.

       C.    <u>Effectuating Documents;  Further Transactions</u>.  The Debtor or the Plan Administrator, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

       D.    <u>Waiver of Bankruptcy Rule 7062</u>.  The Plan Proponents may request that the Confirmation Order include (i) a finding that Bankruptcy Rule 7062 shall not apply to the Confirmation Order;  and (ii) authorization for the Debtor to consummate this Plan immediately after entry of the Confirmation Order.

E.      No Admissions.  Notwithstanding anything herein to the contrary, nothing contained in this Plan or the Disclosure Statement shall be deemed as an admission by any Person with respect to any matter set forth herein.

F.      Payment of Statutory Fees.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date.  Any statutory fees accruing after the Confirmation Date shall be paid in accordance with Article VI of this Plan.

G.      Continuation of Creditors' Committee.  The Creditors' Committee shall continue to exist after the Effective Date for the purposes specified in this Plan.  In addition, the Creditors' Committee shall continue to exist until all distributions have been made to holders of Class 3-A Claims and Class 3-B Claims pursuant to this Plan and the entry of a final decree closing the Debtor's Chapter 11 case.  Upon completion of its duties under this Plan, the Creditors' Committee shall be dissolved and disbanded, at which time the individual members of the Creditors' Committee shall be released and discharged of and from all duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Case.

H.      Appointment of MSSH Entities to the Creditors' Committee.  On the Effective Date the MSSH Entities shall be entitled to appoint three voting Creditors' Committee members to serve on the Creditors' Committee post Effective Date.

I.      Resignation and Vacancy on the Creditors' Committee.  If any creditor represented on the Creditors' Committee shall assign its Claim or release the Debtor from the payment of the balance of its Claim, the member of the Creditors' Committee representing that creditor shall be deemed to have resigned from the Creditors' Committee.  If a vacancy occurs on the Creditors' Committee by reason of the death or resignation of a member, then with respect to any vacancy thereby created, the remaining members of the Creditors' Committee may (i) fill the vacancy with the representative of another holder of an Allowed Class 3-A Claim or (ii) reduce the size of the Creditors' Committee to the number of the remaining Creditors' Committee members.  If the Creditors' Committee members elect the latter, then no vacancy shall be deemed to exist.  The Creditors' Committee shall function whether or not a vacancy exists.  In any event, no Person may be designated to serve on the Creditors' Committee without notice having been given to the Plan Administrator.

J.      Committee's Professionals.  Subsequent to the Effective Date, the Creditors' Committee shall have the power and authority to utilize the services of its counsel as necessary to perform the duties of the Creditors' Committee and to authorize and direct such Persons to act on behalf of the Creditors' Committee in connection with any matter requiring its attention or action.  The Debtor and its Estate shall be responsible for payment of all reasonable and necessary fees and expenses incurred in connection therewith.  Such compensation shall not be subject to the approval of the Bankruptcy Court and shall be paid by the Plan Administrator in the ordinary course of business.

K.      Disposal of Books and Records.  The Debtor's right to seek authorization from the Bankruptcy Court for the destruction of books and records, including patient

medical and billing records, prior to the expiration of any statutory period requiring that such records be maintained are preserved.

L.    <u>Amendments</u>

1.    <u>Pre-Confirmation Amendment</u>.  The Plan Proponents may modify this Plan at any time prior to the entry of the Confirmation Order provided that this Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements of section 1125 of the Bankruptcy Code, among others.

2.    <u>Post-Confirmation Amendment Not Requiring Resolicitation</u>.  After the entry of the Confirmation Order, the Plan Proponents may modify this Plan to remedy any defect or omission or to reconcile any inconsistencies in this Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of this Plan, provided that:  (i) the Plan Proponents obtain approval of the Bankruptcy Court for such modification, after notice and a hearing;  and (ii) such modification shall not materially and adversely affect the interests, rights, treatment, or Distributions of any Class under this Plan.

3.    <u>Post-Confirmation Amendment Requiring Resolicitation</u>.  After the Confirmation Date and before the Effective Date of this Plan, the Plan Proponents may modify this Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a Class of Claims provided that:  (i) this Plan, as modified, meets applicable Bankruptcy Code requirements;  (ii) the Plan Proponents obtain Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class affected by such modification; and (iv) the Plan Proponents comply with section 1125 of the Bankruptcy Code with respect to this Plan as modified.

M.    <u>Successors and Assigns</u>.  The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor or assign of such Person.

N.    <u>Confirmation Order and Plan Control</u>.  To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, any other agreement entered into between the Debtor and any third party, this Plan controls the Disclosure Statement and any such agreements and the Confirmation Order controls this Plan.

O.    <u>Notices</u>.  Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) overnight delivery service, postage prepaid, and addressed as follows:

For the Debtor:

CABRINI MEDICAL CENTER
P.O. Box 10
Maspeth, New York  11378
Attn:  Monica Terrano

with copies to:

TOGUT, SEGAL & SEGAL LLP
Attorneys for the Debtor
One Penn Plaza, Suite 3335
New York, New York  10119
Telephone:    (212) 594-5000
Facsimile:     (212) 967-4258
Attn:  Frank A. Oswald, Esq.
          James Lee, Esq.

For the Creditors' Committee:

ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
Telephone:    (212) 210-9400
Facsimile:     (212) 210-9444
Attn:  Martin G. Bunin, Esq.
          Craig E. Freeman, Esq.


Dated:    New York, New York
             January 25, 2011
                                        Respectfully Submitted,

                                        CABRINI MEDICAL CENTER
                                        Debtor and Debtor in Possession

                                        By:    /s/ Monica Terrano
                                        Name:  Monica Terrano
                                        Title:   Chief Financial Officer


                                        OFFICIAL COMMITTEE OF UNSECURED
                                        CREDITORS

                                        By:    /s/ Leon Z. Mener
                                        Name: Consolidated Edison Company
                                                   of New York, Inc.
                                        Title:  Chairman of the Creditors' Committee
                                        By:    Leon Z. Mener

TOGUT, SEGAL & SEGAL LLP
Attorneys for the Debtor


By:  /s/ Frank A. Oswald
      FRANK A. OSWALD
      A Member of the Firm

ALSTON & BIRD LLP
Attorneys for the Creditors' Committee


By:  /s/ Martin G. Bunin
      Martin G. Bunin, Esq.
      Craig E. Freeman, Esq.