Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Frank A. Oswald
James J. Lee

*Bankruptcy Counsel for the
 Debtor and Debtor in Possession*

HEARING DATE: 3/9/11 AT: 9:30 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:

CABRINI MEDICAL CENTER,

        Debtor.

------------------------------------------------------------x

Chapter 11
Case No. 09-14398 (AJG)

### DEBTOR'S OBJECTION TO MOTION OF MANNUCCI PARTIES FOR RELIEF FROM THE AUTOMATIC STAY

TO THE HONORABLE ARTHUR J. GONZALEZ,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

    Cabrini Medical Center ("Cabrini" or the "Debtor"), as debtor and debtor in possession, by its attorneys Togut, Segal & Segal LLP, respectfully submits this objection (the "Objection") to the motion (the "Motion") brought by the Mannucci Parties (as defined below) for an order pursuant to section 362(d)(1) of title 11, United States Code (the "Bankruptcy Code") granting them relief from the automatic stay, to enable the Mannucci Parties to name Cabrini in an amended complaint to be filed in an action in New York State Supreme Court against the Missionary Sisters of the Sacred Heart ("MSSH"). In support of this Objection, the Debtor states:

### INTRODUCTION

    1.  The Mannucci Parties are three retired doctors formerly employed by the Debtor, Mannuccio Mannucci ("Mannucci"), Angelo Taranta ("Taranta") and

Guido Padula ("Padula"), and Dilva Salvioni, the widow of a fourth retired doctor, Daniele Salvioni (Drs. Mannucci, Taranta, Padula and Salvioni are collectively referred to as the "Doctors"). During their employment, each of the Doctors entered into a separate deferred compensation agreement with Cabrini (individually a "Deferred Compensation Agreement" and collectively the "Deferred Compensation Agreements"), which specified their entitlements.

2. Pursuant to the terms of the Deferred Compensation Agreements, Cabrini purchased various mutual funds for the Doctors' benefit upon retirement. The mutual funds were to be held in accounts in Cabrini's name (the "Deferred Compensation Accounts").

3. In August 2008, the Mannucci Parties commenced an action in the New York Supreme Court (the "Mannucci Action) against the Debtor, the Missionary Sisters of the Sacred Heart, a not-for-profit corporation organized in the State of New York ("MSSH"), and Merrill Lynch alleging that the Deferred Compensation Agreements were qualified ERISA plans, and that the Debtor, MSSH and Merrill Lynch were liable to the Mannucci Parties for damages arising from ERISA violations and under common law breach of contract theories.[1] Specifically, the Mannucci Parties alleged that the Debtor wrongfully transferred funds belonging to the Doctors out of the Deferred Compensation Accounts, and contended that MSSH was liable as Cabrini's alter ego because, *inter alia*, MSSH was a member of Cabrini with the ability to elect officers and directors of the Debtor.

---

[1] The automatic stay on the Petition Date precluded continuation of the lawsuit against the Debtor, and after the initial complaint was dismissed without prejudice to re-plead as to MSSH and Merrill Lynch, the Mannucci Parties filed an amended complaint in March 2010 naming only MSSH and Merrill Lynch (the "Amended Complaint").

4. On January 4, 2011, the Supreme Court dismissed the claims asserted against MSSH in the Amended Complaint. The claims against Merrill Lynch were voluntarily dismissed with prejudice by the Mannucci Parties prior to decision on the pending motions to dismiss by Merrill Lynch. The claims against MSSH were dismissed without prejudice to re-plead against MSSH and name Cabrini as a necessary party since no alter-ego or piercing remedy is available under New York State law where there is no underlying liability established against the allegedly controlled corporation (here, Cabrini).

5. Following the Supreme Court Order, the Mannucci Parties filed the instant Motion to lift or otherwise modify the automatic stay to permit Cabrini to be named in an amended complaint to be filed against MSSH in the Mannucci Action.

6. As shown below, the Mannucci Parties cannot establish cause to lift the automatic stay. To prevail on an alter ego claim against MSSH under state law, the Mannucci Parties would first have to establish that the funds in the Deferred Compensation Accounts belonged to them, and that Cabrini wrongfully transferred those funds to itself. As a matter of law, however, the funds at all times were Cabrini's, subject to the claims of Cabrini's general creditors, and not subject to any express, implied or constructive trust. The Mannucci Parties are general unsecured creditors of Cabrini.

7. On February 4, 2011, Cabrini filed the *Debtor's Motion for Order Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 Classifying and Fixing Claims Filed by the Mannucci Parties* (the "Claim Objection") [Docket # 584]. The Debtor asserts in the Claim Objection that the Mannucci Parties' characterization of their claims as constructive trust claims is factually and legally incorrect, and that the claims should be classified as general unsecured claims and fixed in their scheduled amounts. A copy of the

Claim Objection is attached as Exhibit 1. Cabrini incorporates the legal authorities and arguments cited in the Claim Objection herein.

8. The Debtor submits that if the Claim Objection is sustained, and the Court rules that the Mannucci Parties were not entitled to the money in the Deferred Compensation Accounts, there will be absolutely no basis to go forward in state court, because the alter ego claims alleged against MSSH are derivative of the claims the Mannucci Parties assert against the Debtor. If all that Cabrini did was allegedly breach a contract, rather than wrongfully take money that did not belong to it, then there is nothing for the Mannucci Parties to pursue in state court. MSSH cannot be liable to the Mannucci Parties for causing the Debtor to breach the Deferred Compensation Agreements, and allowing the Mannucci Parties to name Cabrini in a lawsuit for just that reason serves no purpose. The Motion must be denied.

## THE BANKRUPTCY CLAIMS

9. The Mannucci Parties filed the following proofs of claim in Cabrini's chapter 11 case:

    a.    Claim # 388, in the amount of $771,843 filed by Dr. Mannuccio Mannucci.

    b.    Claim # 389, in the amount of $1,298,724 filed by Dr. Angelo Taranta.

    c.    Claim # 390, in the amount of $619,645 filed by Dilva Salvioni.

    d.    Claim # 391, in the amount of $265,962 filed by Dr. Guido Padula.

The Mannucci Parties attached the original complaint filed against Cabrini, MSSH and Merrill Lynch to their proofs of claim as the documentary basis for those claims. That complaint asserted that prior to the Petition Date, the Debtor withdrew the funds in the Deferred Compensation Accounts, and failed to replace those funds as promised.

4

10. The Mannucci Parties' proofs of claim are asserted as general unsecured claims. Nowhere in the claims or the complaint attached thereto do the Mannucci Parties assert any kind of trust claim. Nonetheless, the Mannucci Parties filed an objection to the Debtor's Disclosure Statement in which they asserted that the Deferred Compensation Agreements are "employee pension benefits plans" under ERISA, and therefore the funds in those plans were held in trust for the benefit of the plan participants and not property of the Debtor's estate. That objection was resolved consensually by adding additional language to the Disclosure Statement.

11. As Cabrini noted in the Claim Objection, the language in the Deferred Compensation Agreements explicitly refutes the Mannucci Parties' allegations. Each Deferred Compensation Agreement states in relevant part that "[t]he Corporation [Cabrini] will purchase **in the name of the Corporation**, mutual funds shares …. **Employee shall have no right in such mutual funds shares, which shall be the absolute property of the Corporation.**" (Emphasis added). The Deferred Compensation Agreements do not contain any trust language, and establish the Doctors' rights to designate beneficiaries to receive distributions, choose cash or mutual fund shares as the method of distribution, and agree jointly with the Debtor to substitute investments. Existing authority cited by the Debtor in the Claim Objection (and incorporated herein) makes clear that the funds in the Deferred Compensation Accounts were Cabrini's property, and as such subject to the claims of Cabrini's general creditors. The Debtor also explained why there is no express or constructive trust, but only a general obligation to pay money, which evidences an unsecured debtor-creditor relationship. *See* Claim Objection, ¶¶ 27-31.

## THERE IS NO CAUSE TO LIFT THE STAY

12. Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that:

> (a) [A] petition filed under section 301, 302, or 303 of this title … operates as a stay, applicable to all entities, of –
>
> (1) the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). The automatic stay affords a debtor fundamental protection under the Bankruptcy Code. *See, e.g., Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection*, 474 U.S. 494, 503 (1986) (stating that the automatic stay is "one of the most fundamental debtor protections provided by the bankruptcy laws"). Further, the automatic stay is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *See Securities and Exchange Commission v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000). *See also, In re Ionosphere Clubs, Inc.*, 133 B.R. 5 (S.D.N.Y. 1991).

13. Section 362(d) of the Bankruptcy Code provides that a party may be entitled to relief from the automatic stay under certain circumstances. Specifically, the pertinent portion of section 362(d) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

6

11 U.S.C. § 362(d).

14. "For cause" is not defined in section 362(d)(1). It is generally determined on a case-by-case basis. *Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990) is the seminal case in the Second Circuit with respect to whether relief from the automatic stay should be granted under section 362(d)(1). The *Sonnax* decision identifies 12 factors to be considered when deciding whether the automatic stay should be lifted to permit litigation to continue in another forum. These are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d at 1286. Not all of the factors will be relevant in every case. *In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999).

15. The Mannucci Parties assert that factors (1), (2), (3), (6), (7), (10) and (12) are relevant and weigh in favor of granting stay relief to proceed against Cabrini and MSSH in state court. The Debtor submits that under *Sonnax*, stay relief is not appropriate.

16. The Debtor submits that the most important fact the Court should consider is that the claims asserted by the Mannucci Parties are general unsecured

7

claims that arose in a simple debtor-creditor relationship between each of the Doctors and Cabrini. Cabrini was not a fiduciary for the Doctors, because the Deferred Compensation Agreements were not ERISA plans. Similarly, the Deferred Compensation Accounts were not trust accounts, and there was no express or constructive trust created. The Mannucci Parties have asserted nothing more than common law breach of contract claims, and in the Claim Objection, Cabrini acknowledges that the Mannucci Parties have valid general unsecured claims.

17. New York law requires that without either a prior or contemporaneous action to determine the liability of the corporation for the harms alleged, there can be no cause of action based on the equitable remedy of alter ego liability. Piercing the corporate veil under the alter ego theory is not a cause of action independent of that against the corporation itself. *Matter of Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993); *H & R Project Associates, Inc. v. City of Syracuse*, 289 A.D.2d 967, 968 (4th Dep't 2001); *New York v. Easton*, 169 Misc.2d 282, 288 (Albany Cty. 1995). Rather, it is an equitable remedy that first assumes that the corporation itself is liable for the obligation and, in light of an assertion of facts and circumstances that persuade the court, imposes the corporation's obligation on its "owners." *Matter of Morris*, 82 N.Y.2d at 141); *H & R Project Associates, Inc.*, 289 A.D.2d at 968; *New York v. Easton*, 169 Misc.2d at 288.

18. Here, the Mannucci Parties want to name Cabrini as a defendant in an action against MSSH, so they can establish Cabrini's liability as a predicate to obtaining a remedy against MSSH. But, the claim against Cabrini has already been asserted in this Court, which has core jurisdiction to determine the classification and amount of the claim. *See* 28 U.S.C. § 157(b)(2)(B). *See also, Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (citing *Granfinanciera v. Nordberg*, 492 U.S. 33, 59 n.14 (1989) (by submitting a claim

8

against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims… ."); *Bankruptcy Servs. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432, 466 (2d Cir. 2008); *MCI WorldCom Communs., Inc. v. Communs. Network Int'l, Ltd. (In re WorldCom, Inc.)*, 378 B.R. 745, 754 (Bankr. S.D.N.Y. 2007). The Mannucci Parties state that "the Mannucci Action was filed to recover the improperly removed funds from the Deferred Compensation Plans against [MSSH] on the basis of alter ego liability." Motion at ¶ 18. However, since the funds in the Deferred Compensation Accounts belonged to Cabrini, there was nothing improper about Cabrini removing those funds. The proffered basis for MSSH liability simply does not exist.

19. Analysis under the other *Sonnax* factors does not alter the conclusion that there is no cause to lift the automatic stay to allow the Mannucci Action to go forward. For instance, the Mannucci Parties argue that the seventh factor (whether litigation in another forum would prejudice the interests of other creditors) is satisfied because there will be no negative effect on the assets of the estate, and in fact there is a strong potential that it could benefit the estate. Motion at ¶ 22. This argument makes no sense.

20. To obtain recovery from MSSH, the Mannucci Parties would have to prove that Cabrini took "their" money. If the Court sustains the Debtor's Claim Objection and rules that the funds were Cabrini's, then there is no basis to proceed in state court, because Cabrini would have done nothing wrong. The Mannucci Parties would be estopped from contending in state court that the money in the Deferred Compensation Accounts was theirs, because that issue will be *res judicata* as a result of the Bankruptcy Court's decision. Allowing the Mannucci Parties to nonetheless continue with litigation where the core issue has already been determined certainly does <u>not</u> benefit the estate. Similarly, if the Court determines that the funds did belong to the Doctors,

9

there would again be no reason for Cabrini to be named as a defendant in state court litigation, because the issue will have been determined. Either way, there is nothing to be gained by lifting the stay to permit litigation against the Debtor on a core bankruptcy matter in any court other than the Bankruptcy Court.

21. Conversely, the prejudice to Cabrini if it is named in the action would be significant. Although Cabrini's liability to the Mannucci Parties would have already been determined in this Court, Cabrini would not simply be a passive defendant. Alter ego liability requires the Mannucci Parties to prove (1) that MSSH exercised complete domination of the corporation in respect to the transactions at issue, (2) such domination was used to commit a fraud or wrong against the Mannucci Parties, (3) causing their injury. *Matter of Morris v. New York State Dept. of Taxation & Fin.*, 82 N.Y.2d 135 (1993); *TNS Holdings Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 340 (1998) (citing *Morris*); *Fantazia Int'l. Corp. v. CPL Furs N.Y., Inc.*, 2009 Slip. Op. 8165, at *1 (1st Dep't 2009). The determination of whether there was complete domination is a particularly fact intensive inquiry and includes consideration of the following non-exhaustive list of factors, none of which are singly dispositive: the disregard of corporate formalities; inadequate capitalization; intermingling of funds; overlap in ownership, officers, directors and personnel; common office space or telephone numbers; the degree of discretion demonstrated by the allegedly dominated corporation; whether dealings between the entities are at arm's length; whether the corporations are treated as independent profit centers; and the payment or guaranty of the corporation's debts by the dominating entity." *Fantazia Int'l Corp.*, 2009 N.Y. Slip Op 8165, at *1; *East Hampton Union Free School Dist. v. Sandpebble Bldrs., Inc.*, 2009 Slip. Op. 5998, at *6 (2d Dep't 2009).

22. Cabrini would be a central party in discovery and depositions as the Mannucci Parties attempt to establish the facts necessary to impose alter ego liabil-

ity. The burden on Cabrini would be enormous, and not the "minimal hardship" the Mannucci Parties believe. *See* Motion at ¶ 25. As the Court is aware, the Debtor's proposed chapter 11 plan is a liquidating plan.[2] Cabrini stopped operating in March 2008, more than a year before the Petition Date, and sold substantially all of its assets during the chapter 11 case. There is currently a single employee, and it is contemplated that she will be appointed post-confirmation as the Plan Administrator to perform necessary functions to consummate the plan and wind down the Debtor's affairs. Requiring the Plan Administrator to actively participate in discovery, which would likely entail her having to hire counsel, would divert her attention from other important duties that are contemplated by the Debtor and the Committee and reflected in the Plan Administrator Agreement that is attached as Exhibit 3 to the Disclosure Statement. It would also impose a large cost that would be borne directly by the unsecured creditors in this case, as those costs would be paid from available cash that would otherwise be used for creditor distributions – including to the Mannucci Parties.

23. There is no cause to lift the automatic stay to permit the Mannucci Action to proceed. The prejudice to the Debtor should the automatic stay be lifted greatly outweighs any benefit to the Mannucci Parties.

**[concluded on next page]**

---

[2] The Court has scheduled a confirmation hearing for March 30, 2011.

## CONCLUSION

24. For the reasons set forth above, the Motion should be denied, or alternatively, the hearing should be adjourned until after the Court has ruled on the Claim Objection.

Dated: New York, New York  
       March 2, 2011

TOGUT, SEGAL & SEGAL LLP  
Attorneys for the Debtor and  
Debtor in Possession  
By:

/s/ Frank A. Oswald  
FRANK A. OSWALD  
A Member of the Firm  
One Penn Plaza, Suite 3335  
New York, New York 10019  
(212) 594-5000