UNITED STATES BANKRUPTCY COURT    HEARING DATE: March 9, 2011
SOUTHERN DISTRICT OF NEW YORK     TIME: 9:30 A.M.
------------------------------------------------------------x
                                  :
In re:                            :   Chapter 11
                                  :
CABRINI MEDICAL CENTER,           :   Case No. 09-14398 (AJG)
                                  :
                    Debtor.       :
                                  :
------------------------------------------------------------x

## AFFIDAVIT OF KATHERINE B. HARRISON IN OPPOSITION TO DEBTOR'S MOTION FOR ORDER CLASSIFYING AND FIXING CLAIMS

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF NEW YORK )

KATHERINE B. HARRISON, under penalty of perjury, declares:

1. I am admitted to practice before this Court and am a member of the firm of Paduano & Weintraub LLP, 1251 Avenue of the Americas, Ninth Floor, New York, New York, 10020, attorneys for Creditors Mannuccio Mannucci, M.D., Angelo Taranta, M.D., Guido Padula, M.D. and Mrs. Dilva Salvioni in the captioned matter ("the Doctors" or the "Mannucci Parties"). I respectfully submit this Affidavit in opposition to the Debtor's Motion for Order Classifying and Fixing Claims.

2. The Doctors are three physicians in their 80s, and the widow of Daniele Salvioni, M.D., who worked for decades at Cabrini Medical Center ("Cabrini" or "Debtor"). The Doctors seek nothing more and nothing less than to recover approximately $3,000,000 that Cabrini stole from their ERISA deferred compensation plan accounts in 2006 and 2007. It is undisputed that Cabrini took the funds at issue.

# BACKGROUND

3. The Doctors seek to recover the money that Cabrini misappropriated from their deferred compensation investment accounts at Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") (the "Deferred Compensation Accounts") - accounts established solely to invest the doctors' deferred compensation under their Cabrini-sponsored deferred compensation plans (the "Deferred Compensation Plans").

# THE DEFERRED COMPENSATION PLANS

## Dr. Padula's Deferred Compensation Plans

4. In or about January 1967, Cabrini (then known as Columbus Hospital) set up the first deferred compensation plan for Dr. Padula (the "First Padula Plan").

5. Under the terms of the First Padula Plan, Cabrini would pay $3,000 per year of "additional compensation" for Dr. Padula into an account at Irving Trust Company where the funds would be invested and all dividends and other earnings would be reinvested. The Plan directed that distributions to Dr. Padula or his designated beneficiary would begin upon termination of Dr. Padula's employment with Cabrini for any reason. The Plan also directed that Cabrini, after consulting with Dr. Padula, adopt a method of distribution of the funds either in a lump sum, ten equal installments, or "life expectancy installments."

6. In or about April 1975, Cabrini set up a second deferred compensation plan for Dr. Padula (the "Second Padula Plan"), the terms of which were

similar to the First Padula Plan. The Second Padula Plan expressly provided: "During the lifetime of Employee this Agreement may be amended or terminated, in whole or in part, by the mutual written agreement of Employee and the Board of Directors of [Cabrini]; provided, however, that no amendment or termination shall cause the payment of benefits provided herein to become forfeitable to the Employee."

7. According to Cabrini's records, Dr. Padula retired from Cabrini in 1980.

## Dr. Taranta's Deferred Compensation Plan

8. In or about December 1975, Cabrini set up a deferred compensation plan for Dr. Taranta (the "Taranta Plan"). Pursuant to The Taranta Plan, Cabrini would pay $13,880 in annual compensation for Dr. Taranta into an account that would invest in mutual fund shares of New York Venture Fund, Inc. and all distributions and dividends would be reinvested. The Plan directed that distributions to Dr. Taranta or his designated beneficiary would begin upon termination of Dr. Taranta's employment with Cabrini for any reason. The Plan also directed that Cabrini adopt a method of distribution of the funds either in a lump sum or life expectancy installments calculated by Dr. Taranta's life expectancy at the time of his first distribution with larger payments at the end of his expected years.

9. The Taranta Plan expressly provided: "During the lifetime of Employee this Agreement may be amended or terminated, in whole or in part, by the mutual written agreement of Employee and the Board of Directors of [Cabrini]; provided,

however, that no amendment or termination shall cause the payment of benefits provided herein to become forfeitable to the Employee."

10. According to Cabrini's records, Dr. Taranta retired from Cabrini in 1995.

**Dr. Salvioni's Deferred Compensation Plans**

11. In or about December 1973, Cabrini set up the first deferred compensation plan for Dr. Salvioni (the "First Salvioni Plan").

12. Under the terms of the First Salvioni Plan, Cabrini would use $14,000 per year of additional compensation to Dr. Salvioni to invest in mutual fund shares; all dividends and other earnings would be reinvested. The Plan directed that distributions to Dr. Salvioni or his designated beneficiary would begin upon termination of Dr. Salvioni's employment with Cabrini. The Plan also directed that Cabrini adopt a method of distribution of the funds either in a lump sum or life expectancy installments calculated by Dr. Salvioni's life expectancy at the time of his first distribution with larger payments at the end of his expected years.

13. In or about August 1978, Cabrini set up a second deferred compensation plan for Dr. Salvioni (the "Second Salvioni Plan"), the terms of which were similar to the First Salvioni Plan. The Second Salvioni Plan expressly provided: "During the lifetime of Employee this Agreement may be amended or terminated, in whole or in part, by the mutual written agreement of Employee and the Board of Directors of [Cabrini]; provided, however, that no amendment or termination shall cause the payment of benefits provided herein to become forfeitable to the Employee."

4

14. On September 17, 1997, Dr. Salvioni designated in writing that his wife, Dilva Salvioni, be his principal beneficiary. Cabrini does not dispute that Mrs. Salvioni is Dr. Salvioni's beneficiary under his Deferred Compensation Plans.

15. According to Cabrini's records, Dr. Salvioni retired from Cabrini in 1980.

**Dr. Mannucci's Deferred Compensation Plan**

16. On information and belief, in the mid-1970s, Cabrini set up a deferred compensation plan for Dr. Mannucci (the "Mannucci Plan"). On information and belief, pursuant to the Mannucci Plan, each year, Cabrini paid part of Dr. Mannucci's annual compensation into an account which would be invested in New York Venture Fund, Inc. and the Plan directed that distributions to Dr. Mannucci or his designated beneficiary would begin upon termination of Dr. Mannucci's employment with Cabrini.

17. According to Cabrini's records, Dr. Mannucci retired from Cabrini in 2000.

18. All of the Doctors' Deferred Compensation Plan documents that we have been able to locate are attached hereto as <u>Exhibit A</u>.

19. There is no evidence that any of the Doctors negotiated with Cabrini concerning the terms of any of the Deferred Compensation Plans.

## THE MERRILL LYNCH ACCOUNTS

20. In or about 1998, the Doctors' Deferred Compensation Plan assets were moved from individual accounts at another brokerage firm to individual accounts at Merrill Lynch. From that point on, each of the Doctors received monthly account statements and year-end statements directly from Merrill Lynch. Attached hereto as Exhibit B are examples of account statements Merrill Lynch sent directly to each of the Doctors.

21. Exhibit B contains an example of an account statement Merrill Lynch sent to Mannuccio Mannucci, M.D. The statement is addressed to: "FAO DR. MANNUCCIO MANNUCCI" at Dr. Mannucci's home address. It lists: "YOUR FINANCIAL ADVISOR: JOSETTE L. GREECHAN" and provides Ms. Greechan's email address and telephone number. The Statement says "Your Merrill Lynch Office" with the address of the Merrill Lynch Branch. The last page of the Statement provides: **"Agreement Regarding Your Securities Account and Other Important Information.** You, the Client, and we, Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), agree as follows:" The page goes on to recite the terms of the account agreement between Dr. Mannucci and Merrill Lynch.

22. Nothing in Dr. Mannucci's Merrill Lynch account statement provides that Cabrini is the "owner" of the account or that Cabrini has any right to the funds therein. In fact, the name "Cabrini" appears nowhere in Dr. Mannucci's statement.

23. Exhibit B contains a similar example of an account statement Merrill Lynch sent to Guido Padula, M.D. The statement is addressed to: "FAO DR. GUIDO

PADULA" at Dr. Padula's home address. The Statement lists: "Your Financial Advisor: JOSETTE L. GREECHAN" and provides Ms. Greechan's Branch address, email address and telephone number. The first page says "**Duplicate Copy**" with no indication of who received any other copy. At various points, the statement reflects "YOUR EMA BANK DEPOSIT INTEREST SUMMARY," "YOUR EMA ASSETS" and "YOUR EMA TRANSACTIONS." The last page of the Statement provides: "Agreement Regarding Your Securities Account and Other Important Information. You, the Client, and we, Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), agree as follows:" The page goes on to recite the terms of the account agreement between Dr. Padula and Merrill Lynch.

24. Exhibit B also contains an example of a year-end "EMA Fiscal Statement" Merrill Lynch sent to Angelo Taranta, M.D. The statement is addressed to: "FAO DR ANGELO TARANTA" at Dr. Taranta's home address in California. The Statement lists: "YOUR FINANCIAL ADVISOR: JOSETTE L. GREECHAN" and provides Ms. Greechan's telephone number. Under "Office Serving Your Account" the Statement shows the Merrill Lynch Branch office address. Each page reflects "FAO DR ANGELO TARANTA" at the top. The Statement does not indicate that it is a "Duplicate Copy." The last page (p.8) of the Statement provides: "Agreement Regarding Your Securities Account and Other Important Information. You, the Client, and we, Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), agree as follows:" The page goes on to recite the terms of the account agreement between Dr. Taranta and Merrill Lynch.

25. Finally, Exhibit B contains an example of an account statement Merrill Lynch sent to Daniele Salvioni, M.D, now deceased husband of Mrs. Dilva

Salvioni. The statement is addressed to: "FAO DR. DANIELE SALVIONI" at Dr. Salvioni's then home address. The Statement reflects: "Your Financial Advisor: JOSETTE L. GREECHAN" and provides Ms. Greechan's Branch address, email address and telephone number. The first page says "**Duplicate Copy**" with no indication of who received any other copy. The statement reflects "YOUR EMA ASSETS" and "YOUR EMA TRANSACTIONS."

**CABRINI'S ADMITTED APPROPRIATION OF THE**
**DOCTORS' DEFERRED COMPENSATION FUNDS**

**The November 2006 Chaloner Letter**

26. In November 2006, without any prior warning, Cabrini sent Dr. Mannucci a letter from Robert Chaloner, Cabrini's then President and CEO, stating that Cabrini was in desperate need of working capital in order to maintain its operations and that, as a result, Cabrini "must temporarily move $486,000 from the deferred compensation investment account designated for your benefit into the Medical Center's general operating account." That letter (the "November 2006 Letter") is attached as Exhibit C hereto.

27. The November 2006 Letter also stated:

> **It is expected that these funds, along with any interest that would have accrued, will be returned to the deferred compensation investment account during 2007. . . . Please be assured that Cabrini Medical Center is committed to fulfilling its obligation under the Deferred Compensation Agreement with you, including making the 2007 distribution, and will keep you informed of the progress of our efforts to replenish the deferred investment account.** (Exhibit C (emphasis added))

8

28. Each of the Doctors received his own virtually identical version of the November 2006 Letter with respect to his own Deferred Compensation Account. (The letters to Dr. Taranta and Dr. Salvioni are also attached at <u>Exhibit C</u>.) At that time, Cabrini withdrew almost $2 million from the Doctors' four Deferred Compensation Accounts at Merrill Lynch.

**The Remaining Funds were Taken in 2007**

29. Thereafter, in 2007, Cabrini withdrew all of the remaining funds from each of the Doctors' Deferred Compensation Accounts at Merrill Lynch.

30. By letter to me dated October 23, 2007, Cabrini's attorneys confirmed that Cabrini took the following total amounts out of the Doctors' Deferred Compensation Accounts:

| | |
|---|---|
| Dr. Mannucci: | $771,843.47; |
| Dr. Padula | $265,962.29 |
| Dr. Salvioni | $619,645.51; |
| Dr. Taranta | $1,298,724.74. |

These amounts total $2,956,176.01. A copy of that letter is attached hereto as <u>Exhibit D</u>.

31. Cabrini also failed thereafter to make the yearly payments to the Doctors required by the Deferred Compensation Plans for 2006 through 2010.

## CABRINI'S 1997 "TAX PROBLEM" LETTER

32. Attached as Exhibit E are identical letters dated April 8, 1997 from Cabrini addressed to each of the Doctors concerning their Deferred Compensation Plans. The letter discusses the tax problem caused by Cabrini's failure to begin making the required distributions immediately upon each of the Doctors' termination of employment, and Cabrini's failure to report the full amount in the Deferred Compensation accounts at that point as income to the Doctors.

33. The letter states: "the IRS can argue that you were taxable on the full amount of your deferred compensation account in the year you terminated employment." Exhibit E at 1.

34. Thus, in this letter Cabrini admitted that the funds in the Deferred Compensation Accounts belonged to the Doctors as soon as they terminated employment with Cabrini.

## THE DOCTORS' PROOFS OF CLAIM

35. On November 19, 2009, each of the Doctors filed a Proof of Claim with this Court for the funds taken out of their Deferred Compensation Accounts by Cabrini in the amounts set forth above in paragraph 30. Each Proof of Claim stated that the basis for the Claim was an Attached Complaint from their New York State litigation, Mannuccio Mannucci et al. v. Cabrini Medical Center, The Missionary Sisters of the Sacred Heart of Jesus and Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 602284/08 (S.Ct. N.Y.Cty.), which asserted claims under ERISA and state law, seeking, inter alia,

recovery of their deferred compensation benefits, damages and attorneys' fees. Copies of the Doctors' Proofs of Claim are attached hereto as Exhibit F.

## CONCLUSION

36. The funds in the Doctors' Deferred Compensation Accounts were earned by the Doctors and were funded and set aside in separate accounts for them for many years. These funds should not be subject to Cabrini's creditors.

37. The Doctors are elderly individuals who are in serious need of these funds for their living and medical expenses.

38. Based upon the facts above and the Doctors' Brief, the Doctors respectfully request that the Court deny the Debtor's motion and declare that the Doctors' ERISA pension funds totaling $2,956,176.01 were and are not part of the Debtor's Estate and must be returned to the Doctors immediately in full.

_____
Katherine B. Harrison

Sworn to before me this
2nd day of March 2011

_____
Notary Public

WILLARD R KNOX
Notary Public, State of New York
02KN6174955
Qualified in Bronx County
My Commission Expires October 1, 2011

11