Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Frank A. Oswald
Jonathan P. Ibsen

*Bankruptcy Counsel for the
 Debtor and Debtor in Possession*

HEARING DATE: 3/30/11 AT: 11:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                    :
In re:                              :    Chapter 11
                                    :    Case No. 09-14398 (AJG)
CABRINI MEDICAL CENTER,             :
                                    :
                    Debtor.         :
                                    :
---------------------------------------------------------------x

### DEBTOR'S REPLY TO THE MANNUCCI PARTIES' OBJECTION TO CONFIRMATION OF THE FIRST AMENDED PLAN OF LIQUIDATION OF THE DEBTOR

TO THE HONORABLE ARTHUR J. GONZALEZ,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

Cabrini Medical Center ("Cabrini" or the "Debtor"), as debtor and debtor in possession, by its attorneys Togut, Segal & Segal LLP, respectfully submits this reply (the "Reply") to the Mannucci Parties' Objection (the "Objection") to Confirmation of First Amended Chapter 11 Plan of Liquidation of Cabrini proposed jointly by the Debtor and the Creditors' Committee (the "Plan").

The Plan was overwhelmingly accepted by the creditors who voted thereon and was made possible due to the settlement approved by Order of this Court, among the Debtor, the Creditors' Committee and the MSSH Entities discussed more fully below, and more particularly, in the 9019 Motion and the Disclosure Statement.

I. **INTRODUCTION**

1. The Mannucci Parties objection is limited solely to the Plan's provisions which release and enjoin (the "MSSH Releases") third-party claims derivative of claims against the Debtor from being asserted against the Missionary Sisters of the Sacred Heart, a New York not-for-profit corporation ("MSSH-NY") and the Missionary Sisters of the Sacred Heart, an Illinois not-for-profit corporation ("MSSH-IL" and collectively, the "MSSH Entities")(Objection at pg. 12).

2. Based on the 9019 Settlement, the MSSH Entities hold the largest general unsecured claims against the Debtor's Estate, having agreed to reclassifying secured claims exceeding $50 million as general unsecured claims.

3. In essence, through the Objection, the Mannucci Parties' seek the ability to proceed in a State Court Action based on claims that MSSH-NY is liable to the Mannucci Parties under an alter ego theory of recovery, for Cabrini's actions regarding funds relating to the Doctors' Deferred Compensation Agreements.[1]

4. The Objection should be overruled because MSSH Releases contained within the Plan are proper and justified under controlling Second Circuit authority. In the Second Circuit, non-consensual third-party releases may be approved as part of a chapter 11 plan if there are unique or unusual circumstances that render the release terms important to the success of the plan. *See Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.),* 416 F.3d 136, 142 (2d Cir. 2005).

5. The MSSH Releases fit within squarely within the *Metromedia* standard. As set forth below, there can be no doubt that the MSSH Entities' role in this

---

[1] The relief sought in the Objection is directly related to the Debtor's Motion to Fix and Classify the Mannucci Parties' Claims (the "Claims' Motion"), a determination of which in favor of Cabrini will render the Objection moot.

Bankruptcy Case was unique, integral, and without which the Debtor would not have the resources to provide any payments to its Unsecured Creditors. There can also be no doubt that the MSSH Releases are an important part of the Plan.

6. Significantly, no other creditors or parties in interest have objected to the Plan which was accepted by creditors holding $23,374,843 in claims - excluding the MSSH Entities - while creditors voting to reject the Plan hold claims only aggregating $3,009,520 of which the Mannucci Parties hold 98% or $2,956,174 in the aggregate.

7. Additionally, the Objection should be overruled because the Mannucci Parties could have, and should have, raised their opposition to the MSSH Releases when the MSSH Releases were first before this Court in its consideration of the 9019 Motion.

8. Finally, the relief sought in the Objection is overbroad, and if granted at all should be limited to the Mannucci Parties. On its face, the Objection seeks to modify the MSSH Releases - as to all creditors - not just the Mannucci Parties.

9. However, as no other parties in interest have objected to Confirmation, and the Plan is supported by the Creditors' Committee and by overwhelming vote of the creditor body, if granted, any modification of the MSSH Releases should be limited solely to the Mannucci Parties.

## II. BACKGROUND

10. On July 9, 2009 (the "Petition Date"), the Debtor commenced this Bankruptcy Case under chapter 11 of the Bankruptcy Code.

11. On October 28, 2009, the Creditors' Committee commenced an adversary proceeding against MSSH, which *inter alia,* challenged the validity and priority of secured interests alleged by MSSH.

12. On November 20, 2990, MSSH-NY filed its Proof of Claim No. 392 as a secured claim in the amount of $18,739,814, and an unsecured claim in an amount "not less than" $26,014,889.

13. On November 20, 2009, MSSH-IL filed its Proof of Claim No. 393 as a secured claim in the amount of $33,033,478.

14. The MSSH Entities' Proofs of Claim alleged that they were secured by mortgages on certain portions of the Debtor's real property.

15. On December 4, 2009, the Debtor filed a motion (the "Sale Motion") for an order approving, among other things, the sale of its real property and related assets free and clear of liens, claims, encumbrances, and other interests, and the assumption and assignment of executory contracts in connection with the sale - including the real property allegedly pledged as security to the MSSH Entities.

16. On September 22, 2010, the Debtor, together with the Creditors' Committee and the MSSH Entities, filed a Motion to Approve a settlement among the Debtor, the Creditors' Committee, and the MSSH Entities (the "9019 Motion").

17. On November 19, 2010, the Court entered an Order approving the 9019 Motion (the "Settlement Order").

18. On February 4, 2011 Cabrini filed the Claims' Motion. The Claims' Motion asserts that: (1) the monies in the Deferred Compensation Plans were, based on the express language of the Deferred Compensation Agreements, Cabrini's property; (2) the monies were not held in trust; and (3) the Mannucci Parties cannot amend their POCs, after the Court-established Claims Bar Date, to include any claims for constructive trust.

19. On March 16, 2011, the Mannucci Parties filed the Objection.

4

## III. ARGUMENT

### A. The Objection Must Be Overruled Because the MSSH Releases Are a Critical Component of the Plan.

20. The MSSH Releases are proper as the MSSH Entities played a unique and integral role in this Bankruptcy Case and the MSSH Releases are an important part of the Plan.

21. As a preliminary matter, in considering the validity of third-party releases in a plan, a court must focus on whether it has jurisdiction over the third-party claims. *In re Drier LLP,* 429 B.R. 112, 131 (Bankr. S.D.N.Y. 2010)(*citing, Johns-Manville Corp.,* 517 F.3d 52 (2d Cir. 2008)("Manville II"), *vacated & remanded on other grounds,* 129 S.Ct. 2195 (2009), *aff'g in part & rev'g in part*, 600 F.3d 135 (2d Cir. 2010 ("Manville III"))[2]. Third-party claims derivative from claims against the debtor satisfy this jurisdictional requirement. *Id.*

22. Here, the Objection seeks to modify the language of the Plan Injunction, which enjoins claims against the MSSH Entities arising out of claims against the Debtor. (Objection, pgs. 12-13).

23. Clearly, such claims are derivative of claims against the Debtor, and therefore this Court has jurisdiction over such third-party claims.

24. The Court of Appeals for the Second Circuit has determined that non-consensual releases of non-debtors may be approved as part of a plan if there are unique or unusual circumstances that render the release terms important to the success of the plan. *In re Metromedia,* 416 F.3d at 142.

---

[2] *In re Johns-Manville,* the Second Circuit held that "the bankruptcy court's jurisdiction was insufficient to allow it to enjoin direct actions based on State law legal theories that seek to impose liability on Travelers as a separate entity rather than on the policies that it issued to Manville." *In re Johns-Manville Corp.,* 600 F.3d 135, 152 (2d Cir. 2010).

5

25. Determination of the validity of third-party releases "is not a matter of factors and prongs." *Id.*

26. Courts have approved releases of non-debtors in various circumstances, including when: (i) the estate received substantial consideration; (ii) the enjoined claims were channeled to a settlement fund rather than extinguished; (iii) the enjoined claims would indirectly impact the reorganization by way of indemnity or contribution; (iv) the plan otherwise provided for the full payment of the enjoined claims; or (v) the affected creditors consent to the release. *Id*. at 142.

27. The MSSH Entities played a unique role in this Bankruptcy Case which rendered the MSSH Releases an important part of the Plan, and which thereby justifies the MSSH Releases.

28. On the Petition Date, Cabrini had only $227,101 in cash. (Schedule A, Docket no. 84). This Chapter 11 case was funded by a debtor-in-possession loan provided by MSSH-IL and approved by this Court, and which was repaid pursuant to the Allocation Motion and the terms of the loan documents. A more favorable DIP loan was not obtainable for the Debtors and this was necessary and in the best interests of this Estate.

29. As such, the remaining funds available to pay creditors under the Plan come from the proceeds of the Sale Motion. The availability of these funds for the general creditor body comes solely from the compromise reached among the Debtor, the Creditors' Committee and the MSSH Entities.

30. The compromise set forth in the 9019 Motion and Settlement Order resulted in the MSSH Entities compromising their secured claims exceeding $50 million against the Debtor's real property. This compromise resulted in MSSH Entities agreeing to an allowed secured claim in the amount of $6,562,500 and an allowed subordi-

nated secured claim, which resulted in a sharing of available cash between the MSSH Entities and the general unsecured creditors as follows:

- General Unsecured Creditors: 59.615%;
- MSSH Entities: 40.385%.

31. A critical part of the settlement process was the agreement that the MSSH Releases be incorporated into any chapter 11 plan. As such, the MSSH Releases themselves are an important part of the Plan and are fully supported by the Creditors' Committee.

32. Absent the agreement approved by the Settlement Order, there would have been no funds for the general unsecured creditors over and above the MSSH Entities secured claims absent a final, non-appealable adverse decision against the MSSH Entities in the Creditors' Committee's Adversary Proceeding. The settlement of the adversary proceeding eliminated the uncertainties of a trial, along with the significant litigation costs and delay that would have ensued absent a settlement.

33. Clearly, the MSSH Entities' role in providing the DIP financing for this Bankruptcy Case and their role in compromising their secured claims so as to provide the very monies which will be distributed to creditors under the Plan, are unique circumstances which render the MSSH Releases an important part of the Plan.

34. Additionally, to the extent that the MSSH Releases protect the Debtor from the costs of participating in any litigation based on derivative claims brought against its former Employees, Directors or Officers, or from providing any indemnification or contribution relating to such claims, the MSSH Releases also satisfy the *Metromedia* standard. *In re Metromedia,* 416 F.3d at 142.

35. The Mannucci Parties make vague reference of "contemplating" potential future claims against present or past Employees, Officers or Directors of the Debtor and/or MSSH relating to the Mannucci Parties' claims asserted in the State Court Action. (Objection at pg. 12). To the extent that any such claims would either be based on derivative claims of the Debtor, or give rise to claims by potential defendants against the Debtor based upon theories of indemnification or contribution, the MSSH Releases also serve an important purpose under the Plan.[3]

36. By eliminating such claims, the MSSH Releases protect the Plan from both the direct indirect impact of such claims. For example, if the Mannucci Parties commence an action against the Debtor's former or present Employees, Officers and/or Directors, the Debtor's Estate would likely have to incur defense costs of participating in such litigation, thereby depleting funds available for distribution to the Creditors. Likewise, any adverse final judgment against such defendants would likely spawn additional claims against the Debtor based upon theories of indemnification and/or contribution, which would similarly deplete funds available to its Creditors.

37. Absent the MSSH Releases, the Mannucci Parties could thereby, in essence, use the State Court Action to impermissibly elevate their claims over other general unsecured creditors of this Bankruptcy Estate.

38. Consequently, the MSSH Releases are important to the Plan, in preventing the potential additional costs of litigation, indemnification and contribution associated with such "contemplated" claims, as well as, avoiding a potential improper recovery to the Mannucci Parties ahead of the remaining general unsecured creditors.

---

[3] Any direct claims against the Debtor's former Employees, Officers, and/or Directors, arising from the allegations set forth in the State Court Action, would also be barred pursuant to 11 U.S.C. § 502(e).

39. Accordingly, the inclusion of the MSSH Releases in the Plan thereby satisfies the *Metromedia* standard, and they should be approved over the sole objection by the Mannucci Parties whose real claims lie against the Debtor and will be determined by this Court's Ruling on the Claims Motion.

### B. Additionally, This Court Should Deny the Mannucci Parties' Objection on Equitable Grounds.

40. The Mannucci Parties have already had the opportunity in this Bankruptcy Case to challenge the release and injunction contemplated by the MSSH Releases, but failed to do so. As such, the Mannucci Parties should not now, through the Objection, be allowed to challenge a central element of the very settlement which provides the monies to fund distributions under the Plan.

41. The gravamen of the Objection lies in the Mannucci Parties' desire to be able to continue to assert claims against MSSH-NY, which are: (i) derivative of the Mannucci Parties' ERISA claims against the Debtor; and (ii) the subject of the Claims Motion.

42. The Mannucci Parties were served with a copy of the 9019 Motion, upon which the Plan is founded, and they did not object to or otherwise reserve any rights regarding the matters set forth therein.

43. As set for the in detail above, the 9019 Motion sought approval of a settlement among Cabrini, the Creditors' Committee and the MSSH Entities whereby the MSSH Entities compromised their secured claims exceeding $50 million against the Debtor's property and accepted a reduced secured claim in the amount of $6,562,500 and an allowed subordinated secured claim of not less than $52 million, which results in a sharing of Available Cash between the MSSH Entities and the general unsecured creditors.

44. The inclusion of the MSSH Releases in the Plan was specifically contemplated and bargained for by the MSSH Entities as part of the settlement. The Creditors' Committee and the Debtor agreed to support a plan incorporating the MSSH Releases, and their inclusion in a contemplated plan was an integral provision of the Settlement Order.

45. Specifically, paragraph 10 of the Settlement Order provides, in relevant part, that:

> In connection with any Plan . . . the Committee agrees to support the inclusion of a Plan injunction preventing any creditors paid under the Plan from pursuing claims against MSSH Entities that arise out of the creditors' dealings with the Debtor.

46. Consequently, the Mannucci Parties had an opportunity to object to the contemplated MSSH Release at the time this Court considered the 9019 Motion. The MSSH Releases were at issue in the 9019 Motion. The Mannucci Parties had notice and failed to object at that time.

47. As such, it would be inequitable to now allow a challenge to the MSSH Releases which were part of the very settlement in which the MSSH Entities agreed to compromise their claims in exchange for, *inter alia,* the MSSH Releases, and which provided the monies to fund the Plan.

**C.      The Relief Sought in the Objection Is Overbroad.**

48. The Objection improperly attempts to modify the language of the Plan - as to all creditors - even though the MSSH Releases have been voted on and accepted by an overwhelming majority of the creditor body. As such, even if this Court were to grant the Mannucci Parties' Objection, any modification of the MSSH Releases should be limited solely to the Mannucci Parties.

49. Specifically, the Mannucci Parties' proposed modification to the Plan strikes the MSSH Releases in total. (Objection at pgs. 12-13).

50. In so doing, the relief sought improperly expands beyond the Mannucci Parties themselves. As discussed above, the Plan was overwhelming supported by the creditor body, and the Mannucci Parties are the sole objectors to Confirmation. The Mannucci Parties have no standing to assert the rights of the general creditor body. Moreover, the Creditors' Committee - which has such standing - supports and is a joint proponent of the Plan.

51. Consequently, even if this Court were to grant the Mannucci Parties' Objection, it should limit the relief sought to the Plans' sole objectors - the Mannucci Parties.

## IV. CONCLUSION

52. Based upon the foregoing, the Debtor respectfully requests that this Court overrule the Objection, enter an Order confirming the Plan and granting any further relief as is just and proper.

Dated: New York, New York  
March 28, 2011

CABRINI MEDICAL CENTER  
Debtor and Debtor in Possession  
By its Attorneys:  
TOGUT, SEGAL & SEGAL LLP  
By:

/s/Frank A. Oswald  
FRANK A. OSWALD  
A Member of the Firm  
One Penn Plaza, Suite 3335  
New York, New York 10019  
(212) 594-5000