KLESTADT & WINTERS, LLP
Tracy L. Klestadt
Sean C. Southard
Brendan M. Scott
570 Seventh Avenue, 17th Floor
New York, New York 10018
(212) 972-3000

*Counsel to Missionary Sisters of the Sacred Heart,
a not-for-profit corporation organized under the
laws of the State of New York and Missionary Sisters
of the Sacred Heart, a not-for-profit corporation
organized under the laws of the State of Illinois*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CABRINI MEDICAL CENTER, | : | Case No. 09-14398 (AJG) |
| | : | |
| Debtor. | : | |
| | : | |

**RESPONSE OF MISSIONARY SISTERS OF THE SACRED HEART,
A NOT-FOR-PROFIT CORPORATION ORGANIZED UNDER THE LAWS OF
THE STATE OF NEW YORK AND MISSIONARY SISTERS OF THE SACRED
HEART, A NOT-FOR-PROFIT CORPORATION ORGANIZED UNDER THE LAWS
OF THE STATE OF ILLINOIS TO THE OBJECTION OF MANNUCCIO MANNUCCI,
ANGELO TARANTA, GUIDO PADULA AND DILVA SALVONI TO
<u>CONFIRMATION OF THE DEBTOR'S PLAN</u>**

Missionary Sisters of the Sacred Heart, a not-for-profit corporation organized under the laws of the State of New York ("<u>MSSH-NY</u>"), and Missionary Sisters of the Sacred Heart, a not-for-profit corporation organized under the laws of the State of Illinois ("<u>MSSH-IL</u>", and together with MSSH-NY, the "<u>MSSH- Entities</u>"), each a creditor and party-in-interest in the above-captioned case, submit this response (the "<u>MSSH Entities' Response</u>") to the Objection of Mannucio Mannucci, Angelo Taranta, Guido Padula and Dilva Salvoni (the "<u>Mannucci Parties</u>")

to Confirmation of the Debtor's Plan, dated as of March 16, 2011 (the "Objection").  In support of the MSSH Entities' Response, the MSSH- Entities respectfully state as follows:

## PRELIMINARY STATEMENT

The Objection should be overruled because the proposed non-debtor injunction contained in the Debtor's Plan (as defined below) is appropriate in light of the unique circumstances of this case.  The injunction is necessary to protect the Debtor's assets and is in the best interests of the Debtor's creditors.  To the extent holders of claims in this case, such as the Mannucci Parties (as defined below) are allowed to share in a distribution under the Debtor's Plan and are then allowed to pursue the same or derivative claims against the beneficiaries of the proposed non-debtor injunction, including the MSSH Entities (as defined below), the Debtor's assets would be depleted because the Debtor would be forced to participate in such proceedings.  Indeed, one State Court has ruled that the Debtor is a necessary party to any viable cause of action against the MSSH-NY.  Consequently, a cause of action against the MSSH-NY would directly impact the Debtor's estate.  Enjoining such causes of action is entirely appropriate, particularly where the MSSH Entities have made a substantial contribution to the Debtor's reorganization efforts, the Debtor's creditors have voted overwhelmingly to accept the Plan and where such causes of action would subject the Debtor to claims for indemnification.

## BACKGROUND

1. On July 9, 2009 (the "Petition Date"), the Cabrini Medical Center  (the "CMC" or the "Debtor") commenced its case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. On July 20, 2009, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") to represent the interests of unsecured creditors in the Chapter 11 Case.

3. As of the Petition Date, MSSH-IL held secured claims against the Debtor in the amount of $33.033 million and MSSH-NY held secured claims against the Debtor in the amount of $18.74 million (collectively, the "MSSH Secured Claims"). In addition, the MSSH Entities held general unsecured claims against the Debtor in the amount of approximately $7.2 million.

4. The secured claims of the MSSH Entities were collateralized by mortgages on the portions of the improved real property of the Debtors known as Building "A", Building "B" and Building "C" (collectively, "Buildings A, B and C"), and by other property of the Debtor.

5. On October 28, 2009, the Committee filed a complaint (the "Committee Complaint") and commenced adversary proceeding number 09-01639 (AJG) against MSSH-IL and MSSH-NY (the "Committee Action").

6. In the Committee Complaint, the Committee sought to (i) recharacterize the secured and unsecured claims of the MSSH Entities as contributions or grants, (ii) subordinate the secured and unsecured claims of the MSSH Entities to the claims of all the general unsecured creditors of the Debtor and transfer the related liens of the MSSH Entities, including their mortgages on Buildings A, B and C, to the Debtor's estate pursuant to section 510(c) of the Bankruptcy Code, (iii) set aside the mortgages of the MSSH Entities on Buildings A, B and C as fraudulent conveyances and transfers under the New York Debtor and Creditor Law and sections 548 and 544 of the Bankruptcy Code, and recover from the MSSH Entities the full value of the avoided transfers, and (iv) avoid preferential transfers made by the Debtor to the MSSH Entities

pursuant to section 547 of the Bankruptcy Code and recover from the MSSH Entities the full value of the avoided transfers.

7. On November 19, 2009, the Mannucci Parties each filed the following proofs of claim ("POCs"):

- Claim # 388, in the amount of $771,843 filed by Mannucci;
- Claim # 389, in the amount of $1,298,724 filed by Taranta;
- Claim # 390, in the amount of $619,645 filed by Salvoni; and
- Claim # 391, in the amount of $265,962 filed by Padula.

8. On December 30, 2009 the Court entered the Order (A) Approving (I) Bidding Procedures, (II) the Time, Date, Place and Form of Notice for the Auction and Sale Hearing, and (III) Break-Up Fee, Termination Rights and Related Security Interest, and (B) Establishing the Date and Time for a Sale Hearing With Respect to the Debtor's Real Property and Related Assets (the "Bidding Procedures and Scheduling Order").

9. Pursuant to the Bidding Procedures and Scheduling Order, an auction was held on January 28, 2010, and by Order dated February 11, 2010, the Court approved the $83.1 million bid of S.K.I. Realty, Inc. as the highest and best bid for the Debtor's Assets.

10. On March 1, 2010, the Mannucci Parties filed an Amended Complaint (the "Amended Complaint") against Merrill Lynch, Pierce Fenner & Smith, Inc. and MSSH-NY (the "State Court Action") in the Supreme Court of the State of New York, County of New York. The Debtor was not named in the Amended Complaint.

11. In the Amended Complaint, the Mannucci Parties sought to recover against MSSH-NY for alleged wrongs committed by the Debtor, which the Mannucci Parties alleged was dominated and controlled by MSSH-NY. Notwithstanding the fact that (i) the Debtor entity was

a licensed and accredited hospital that had provided treatment to the New York public for decades, and (ii) the Debtor entity has been the subject of the Chapter 11 Case for approximately twenty (20) months, the Mannucci Parties alleged that the Debtor was a mere shell of a company and was in fact nothing more than the alter ego of MSSH-NY.

12. On September 22, 2010, the Debtor, together with the Committee and the MSSH Entities, filed a Motion (the "Settlement Motion") to approve a settlement among the Debtor, the Committee and the MSSH Entities (the "Settlement Agreement"). A copy of the Settlement Motion and the Settlement Agreement are respectively annexed hereto as **Exhibits "A"** and **"B"**. Notice of the Settlement Motion was served upon all parties in interest in the Chapter 11 Case, including the Mannucci Parties. The Mannucci Parties did not object to the Settlement Motion.

13. As set forth in the Settlement Motion, the Settlement Agreement provided as follows:

> The Committee, for itself and as a representative of the Debtor and the Debtor's estate, hereby fully and finally waives, releases, acquits and forever discharges MSSH-IL, MSSH-NY, any affiliates, predecessors or successors and their respective present and former members, officers, directors, trustees, employees , representatives, agents, attorneys, financial advisors and all other persons acting or purporting to act on their behalf (collectively, the "MSSH Parties") from any and all claims, demands, obligations, actions, causes of action, rights or damages which the Committee, the Debtor and/or the Debtor's estate, has against the MSSH Parties, and any of them, whether known or unknown, foreseen or unforeseen, whether or not asserted in this adversary proceeding arising prior to the date of execution of this stipulation; provided, however, that (a) the Committee reserves all rights with respect to the amount of interest, costs and fees asserted by the MSSH Entities as part of their claims arising after the Petition Date pursuant to the Final DIP Order and related post-petition financing documents and (b) this waiver and release will not affect the rights and claims of the Committee, the General Unsecured Creditors and the Debtor's estate as agreed under the terms of this stipulation and order.

See Exhibit A, ¶17(i) (the "Estate Release").The Estate Release is intentionally broad and covers all potential claims and causes of action that the Committee or the Debtor and its estate might

5

assert against the MSSH Entities.  In addition to the Estate Release, the Settlement Motion clearly indicated that a bargained for component of the Settlement Agreement, was the Committee's agreement to support a non-debtor injunction (the "Non-Debtor Injunction") to prevent any creditor, who received a distribution under a plan of liquidation or a plan of reorganization, including the Mannucci Parties, from seeking a further recovery from the MSSH-Entities on account of a claim that arose out of that creditor's dealings with the Debtor. See Exhibit A, ¶17(g).

14. Notably, the Mannucci Parties did not object to the Settlement Motion and the Court approved it by an Order entered on November 19, 2010.

15. On or about January 4, 2011, after MSSH-NY moved for the dismissal of the Amended Complaint, the Honorable Eileen Bransten (the "State Court") issued an order (the "State Court Order") whereby she dismissed the Amended Complaint against MSSH-NY and granted leave for the Mannucci Parties to replead their Complaint if they could add the Debtor as a Party.  A copy of the State Court Order is annexed hereto as **Exhibit "C"**.

16. On January 25, 2011, the Debtor filed the First Amended Plan of Liquidation of Cabrini Medical Center (the "Plan").

## ARGUMENT

17. The Second Circuit has held that a bankruptcy court has jurisdiction to enjoin third-party non-debtor claims that directly affect the *res* of the bankruptcy estate. Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.), 517 F.3d 52, 66 (2d Cir. N.Y. 2008).  "Related to jurisdiction to enjoin a third party dispute exists where the subject of the third party dispute is property of the estate, or the dispute would have an effect on the estate. In re

Dreier LLP, 429 B.R. 112, 131 (Bankr. S.D.N.Y. 2010); citing In re Johns-Manville Corp., 517 F.3d 52, 65 (2d Cir. 2008).

18. Where a court has jurisdiction, it may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan. Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 141 (2d Cir. N.Y. 2005). Although there is no black letter test for whether an injunction is important to a debtor's reorganization, courts have approved non-debtor releases and injunctions where the estate received substantial consideration, See e.g., Drexel Burnham Lambert Trading Corp. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 960 F.2d 285, 293 (2d Cir. 1992); or the enjoined claims were "channeled" to a settlement fund rather than extinguished, MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 93-94 (2d Cir. 1988); or the enjoined claims would indirectly impact the debtor's reorganization "by way of indemnity or contribution," In re Adelphia Communs. Corp., 368 B.R. 140, 268 (Bankr. S.D.N.Y. 2007).[1]

19. As set forth below, the Court has jurisdiction to enjoin third party claims through the Non-Debtor Injunction and the Non-Debtor Injunction is important to the Debtor's reorganization.

**I. The Court Has Jurisdiction To Issue the Non-Debtor Injunction.**

20. A review of the Mannucci Parties Complaint and the State Court Order, establish that the claims the Mannucci Parties seek to assert against MSSH-NY will directly affect the

---

[1] In support of their Objection, the Mannucci Parties cite to *In re Dow Corning Corp.,* 280 F. 3d 648 (6th Cir. 2002), wherein the Sixth Circuit identified seven factors courts have considered when analyzing whether unusual circumstances exist to justify a non-debtor release or injunction. Although *In re Dow Corning Corp.* is not controlling precedent, even if this Court were to consider the *Dow* factors, it is clear that at least four of those factors are present in the Chapter 11 Case and weigh in favor of the Non-Debtor Injunction.

7

Debtor's assets. In dismissing the Amended Complaint, the State Court granted leave for the Mannucci Parties to replead their causes of action only if they add the Debtor as a defendant. See State Court Order, page 7.  The State Court concluded that the Debtor performed all of the actions that give rise to the Mannucci Parties causes of action.  The Mannucci Parties have not asserted independent causes of action against MSSH-NY.  Rather, they have asserted derivative claims against MSSH-NY based on the Debtor's conduct.  As a matter of necessity, a determination of MSSH-NY's potential liability would require a determination of the Debtor's liability.  If the Debtor is made a party to the State Court Action, as required by the State Court Order, the Debtor would be required to use assets to defend and participate in discovery.  Such circumstances would directly impact the Debtor's estate by reducing the amount of assets available for distribution to the Debtor's creditors, including general unsecured creditors such as the Mannucci Parties.

21. Based on the foregoing, the Court has jurisdiction to issue the Non-Debtor Injunction.

## II. **The Non-Debtor Injunction Is An Integral Part of the Plan.**

  a. The Non-Debtor Injunction Provides the Debtor with the Protections
     Necessary to Effectuate the Plan.

22. Under New York State law, no creditor could assert a cause of action against the MSSH Entities which arises from such creditors dealings with the Debtor without negatively impacting the Debtor's ability to effectuate the Plan.

23. The State Court dismissed the Amended Complaint on the grounds that New York state law requires that the alleged controlled corporation (in this case, the Debtor) must be named as a defendant if a veil piercing or alter ego cause of action is asserted against the alleged controlling entity.  See State Court Order, pages 4-7.  In other words, since the Debtor was not

named as a defendant, the Mannucci Parties could not maintain a cause of action against MSSH-NY under a veil piercing or alter ego theory. See id.

24. The only theory of recovery asserted by the Mannucci Parties against MSSH-NY in the State Court Action was that MSSH-NY was allegedly the alter ego of the Debtor and is therefore liable for the alleged wrongs of CMC. The State Court has concluded that:

> the entity that actually performed the actions that give rise to [Mannucci Parties'] claims was [Debtor] not [MSSH-NY]. [Mannucci Parties] allege that [Debtor], not [MSSH-NY], withdrew the money from [Mannucci Parties'] plans without consent . [Mannucci Parties] contend that [Debtor] was dominated and controlled by Defendant [MSSH-NY] and therefore [MSSH-NY] is responsible. [Mannucci Parties'] thus assert that [Debtor] was [MSSH-NY']s alter ego. In so asserting, [Mannucci Parties'] ask the court to "pierce the corporate veil" under the alter ego theory and find [MSSH-NY] responsible for [Debtor's] actions.

Id. at page 5.

25. Notwithstanding the fact that the Mannucci Parties have alleged that the Debtor is a mere alter ego of MSSH-NY and not a true separate legal entity, the Mannucci Parties are willing to share in a distribution of the allegedly non-existent Debtor's assets on account of the POCs in the Chapter 11 Case.

26. After recovering as much as possible in the Chapter 11 Case, unless the Non-Debtor Injunction is approved, the Mannucci Parties presumably will seek to continue to pursue their derivative claims against MSSH-NY in the State Court Action. However, as discussed above, the State Court has already ruled that an alter ego cause of action against MSSH-NY may not be maintained without the Debtor being joined as a party. See id. at pages 4-7. This is precisely the type of derivative claim the Non-Debtor Injunction would enjoin.

27. Consequently, allowing the Mannucci Parties or any other similarly situated general unsecured creditor to pursue veil piercing or alter ego claims against the MSSH Entities would

9

necessarily impact the Debtor's estate since the Debtor would have to be named as a party to any such action even after such creditor already had enjoyed a recovery from the Debtor's estate.

28. The Non-Debtor Injunction is reasonably related to the protection of the estate and goes no further than necessary to protect those interests. The Non-Debtor Injunction prohibits claimants from pursuing claims that arise from or are derivative of claims they have asserted against the Debtor in the Chapter 11 Case. The Non-Debtor Injunction therefore only prohibits third parties from receiving a recovery on account of their claim in the Chapter 11 Case and then pursuing causes of action against the MSSH Entities, which arise from the very claims for which such third parties had already received a distribution.

29. As a separate, but related matter, if the Debtor truly was a mere alter ego of the Debtor, and viable veil piercing claims existed, such derivative claims would belong to the estate not individual creditors. See Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 133 (2d Cir. 1993) ("[G]ranting the bankruptcy trustee exclusive standing to assert alter ego claims furthers the bankruptcy policy of ensuring that all similarly situated creditors are treated fairly: the alter ego action is based upon allegations that if proven would benefit all the debtor's creditors, i.e., making more assets available to satisfy the debtor's debts.").[2]

30. Had there been a legitimate avenue to obtain an affirmative recovery against the MSSH Entities on a veil piercing or alter ego theory, either the Debtor or the Committee, who are both ably represented in this Chapter 11 Case, would no doubt have sought to pursue such a recovery against the MSSH Entities. Instead, after a thorough investigation of the history of the relationship between the MSSH Entities and CMC, the Committee and the Debtor agreed to the

---

[2] In fact, the MSSH Entities reserve all rights to argue that the Estate Release bars any recovery from the Mannucci Parties with respect to the subject matter being litigated in the State Court Action.

Estate Release covering any and all additional potential estate causes of action as part of the Settlement Agreement and agreed to support the corollary Non-Debtor Injunction.

b. The Injunction Was An Integral Part of the Settlement Agreement Through Which the <u>MSSH Entities Made a Substantial Contribution to the Debtor's Reorganization</u>.

31. It has not been disputed that there were between $42 and 47 million in senior claims ahead of the MSSH Secured Claims on Buildings A, B, and C and that the MSSH Secured Claims of approximately $51 million could never be satisfied from proceeds on account of Buildings A, B and C. Instead, there was a collateral deficiency for the MSSH Secured Claims of between $22.5 and 27.5 million.

32. As set forth in the Settlement Motion, at the time the parties to the Settlement Agreement were negotiating the Settlement Agreement, they estimated that there would be approximately $26,000,000 available for distribution on account of the MSSH Secured Claims after the aforementioned senior secured claims had been paid in full.

33. As also set forth in the Settlement Motion, as part of the Settlement Agreement, the MSSH Entities essentially agreed to fund a future plan of reorganization by agreeing to contribute 59.615% of any distribution the MSSH Entities would otherwise have been entitled to receive on account of the MSSH Secured Claims, to fund a distribution to general unsecured creditors in the Chapter 11 Case. The Settlement Agreement has been fully incorporated into the Plan.

34. Significantly, if the MSSH Entities had not agreed to the settlement and had successfully defended even half of the MSSH Secured Claims (which totaled more than $51 million), there would be no meaningful distribution to general unsecured creditors and the Debtor would undoubtedly have been unable to effect a reorganization.

35. During the negotiation of the Settlement Agreement, the MSSH Entities sought assurances from the Committee as the Debtor's representative, that if the MSSH Entities agreed to resolve the Committee Action by sharing any distribution the MSSH Entities would be entitled to receive on account of the MSSH Secured Claims, the MSSH Entities would not later be dragged into Court by any of the Debtor's creditors in an effort to recover more from the MSSH-Entities on account of the same claims asserted against the Debtor in the Chapter 11 Case.

36. As part of the Settlement Agreement, which was approved by this Court the Committee agreed to support the addition of the Non-Debtor Injunction. The Mannucci Parties were given notice of the Settlement Motion and the Settlement Agreement and did not object to any provision of the Settlement Agreement.

37. Now, long after the MSSH Entities obligations under the Settlement Agreement were written in stone, the Mannucci Parties, who stand to benefit from the terms of the Settlement Agreement as unsecured creditors in the Chapter 11 Case, seek to strip the MSSH Entities of the protection it bargained for as part of the Settlement Agreement.

c. The Debtor Would Be Subjected to Claims for Indemnification From its Members, Officers and Employees if the Non-Debtor Injunction is Not Issued.

38. Article IX of the Debtor's By-Laws (the "By-Laws") obligate the Debtor to indemnify members and officers in the event they are made a party to an action by reason of the fact that they served in such a role for the Debtor. See By-Laws of Cabrini Medical Center, at Article XI, a copy of which is annexed hereto as Exhibit "D". The By-Laws also provide that the Debtor may indemnify employees who are made a party to an action by reason of the fact that they were employees of the Debtor. See Exhibit "D", Article IX.

39. The Mannucci Parties stated in their Objection that they are contemplating an action against the "plan fiduciaries of their Deferred Compensation Plans". They do not offer any explanation of the basis for such an action, but they do allege that each such fiduciary is "a present or former employee, officer, or director of the Debtor or of [MSSH-NY]." The Mannucci Parties also alleged in the Amended Complaint that MSSH-NY is liable for the debts owed to the Mannucci Parties because MSSH-NY was a controlling member of the Debtor prior to the Petition Date. Although MSSH-NY disputes that it was a member of the Debtor, it does not dispute that certain individuals associated with MSSH-NY were members of the Debtor and/or served as officers or employees of the Debtor prior to the Petition Date.

40. If any individual who was a "plan fiduciar[y] of [the Mannucci Parties'] Deferred Compensation Plans" or any individual who was a member or employee of MSSH-NY and who also served as a member or officer of the Debtor, was named as a party in an action based on such individuals conduct in his/her role with the Debtor, the Debtor would be obligated to indemnify those individuals. Any such actions obligating the Debtor to honor indemnification claims would obviously have a direct impact on the assets of the Debtor's estate and therefore would interfere with the Debtor's ability to make distributions as proposed under the Plan.

### III. The Debtor's Creditors Have Voted Overwhelmingly to Accept the Plan as Proposed.

41. The MSSH Entities understand that the Debtor's creditors voted overwhelmingly to accept the Debtor's plan, which contains the Non-Debtor Injunction. In addition, the Committee has agreed to support the Non-Debtor Injunction. Notably, no creditor other than the Mannucci Parties has objected to the Plan.

42. Based on the foregoing, the MSSH Entities respectfully submit that the Non-Debtor Injunction is appropriate and should be approved by the Court.

**WHEREFORE**, the MSSH Entities respectfully request that the Court overrule the Objection, and grant such other and further relief as the Court deems appropriate.

Dated: New York, New York
        March 28, 2011

Respectfully Submitted,

**KLESTADT & WINTERS LLP**

By:   /s/Sean C. Southard
Tracy L. Klestadt
Sean C. Southard
Brendan M. Scott
292 Madison Avenue, 17th floor
New York, NY 10017
(212) 972-3000

*Counsel for the Missionary Sisters of the Sacred Heart, an Illinois not-for-profit corporation, and Missionary Sisters of the Sacred Heart, a New York not-for-profit corporation*